## Docket No. 21-35637

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

FIRST AND STEWART HOTEL OWNER, LLC,

*Plaintiff-Appellant,*

v.

FIREMAN'S FUND INSURANCE COMPANY,

*Defendant-Appellee.*

*Appeal from a Decision of the United States District Court for the Western District of Washington (Seattle)*
*No. 2:21-cv-00344-BJR · Honorable Barbara J. Rothstein*

## APPELLANT'S OPENING BRIEF

CHRISTOPHER S. MARKS
MALIKA JOHNSON
ALICE C. SERKO
TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle, Washington 98101
Telephone: (206) 889-5150
cmarks@tktrial.com
mjohnson@tktrial.com
aserko@tktrial.com

JOSEPH D. JEAN
SCOTT D. GREENSPAN
BENJAMIN D. TIEVSKY
PILLSBURY WINTHROP
SHAW PITTMAN LLP
31 West 52nd Street
New York, New York 10019-6131
Telephone: (212) 858-1000
joseph.jean@pillsburylaw.com
scott.greenspan@pillsburylaw.com
benjamin.tievsky@pillsburylaw.com

*Attorneys for Appellant First and Stewart Hotel Owner, LLC*



## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant First and Stewart Hotel Owner, LLC is not publicly traded, has no parent corporation, and no publicly held corporation owns 10% or more of any of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION ........................................... 5

QUESTIONS PRESENTED ...................................................... 5

STATEMENT OF THE CASE ................................................... 7

    I.    FACTUAL BACKGROUND ....................................... 7

        A.    First and Stewart Purchased High-End "All-Risk" Policies ............................................... 7

        B.    The Hotel was Rendered Unsafe and Unfit for its Intended Uses from the Presence of Coronavirus and COVID-19 ............................ 10

    II.    PROCEDURAL BACKGROUND ............................. 13

        A.    First and Stewart's Claims ............................. 13

        B.    The *Nguyen* Order ......................................... 14

        C.    The *Vita Coffee* Order .................................... 15

        D.    The Order Dismissing First and Stewart's Claims ........................................................... 16

SUMMARY OF ARGUMENT ................................................. 18

STANDARD OF REVIEW ...................................................... 23

ARGUMENT ........................................................................... 23

    I.    THE DISTRICT COURT DISREGARDED STATE SUBSTANTIVE LAW BY IMPOSING A PHYSICAL ALTERATION OR PERMANENT DISPOSSESSION REQUIREMENT ON THE COVERAGE TRIGGER "DIRECT PHYSICAL LOSS OR DAMAGE" ................................................................. 23

i

# TABLE OF CONTENTS
## (continued)

Page

A.  Washington Principles of Insurance Policy
    Interpretation Favor Coverage ........................................24

B.  The District Court Incorrectly Imposed a
    Physical Alteration or Permanent
    Dispossession Requirement on the "Direct
    Physical Loss or Damage" Coverage Trigger
    and Rejected the Policyholder's Reasonable
    Interpretation of the Terms ..............................................26

C.  Washington Courts Have Held that
    Government Orders Restricting the Physical
    Use of a Policyholder's Property in Recognition
    of the Unsafe Property Conditions Created by
    the Presence of Coronavirus Cause Property to
    Lose its Functional Use, Thus Resulting in
    "Direct Physical Loss or Damage" to Property ...............32

D.  The District Court Erred When It Relied
    Instead on Federal Common Law and Couch's
    Discredited Physical Alteration Test ...............................39

II.  THE DISTRICT COURT ERRED IN NOT FINDING
     THE "DIRECT PHYSICAL LOSS OR DAMAGE"
     COVERAGE TRIGGER SATISFIED BY THE
     PRESENCE OF CORONAVIRUS AND COVID-19
     AT THE HOTEL, WHICH, ALONG WITH THE
     GOVERNMENT ORDERS, CAUSED A LOSS OF
     ITS FUNCTIONAL USE ..........................................................45

A.  The District Court Erred When It Ignored that
    the Presence of Coronavirus and COVID-19 at
    the Hotel Caused it to Lose its Functional Use ...............46

# TABLE OF CONTENTS
## (continued)

Page

1.  In alleging "direct physical loss or damage" to the Hotel, First and Stewart reasonably relied on the decades of caselaw finding that the presence of toxic/hazardous/noxious substances can cause physical loss or damage to property.........................46

    a.  The district court relied on inapposite caselaw in finding that Washington courts would reject decades of caselaw finding direct physical loss due to the presence of a dangerous substance or condition on the insured premises ...........................................49

    b.  The district court improperly interpreted the decades of caselaw cited by First and Stewart as requiring an "all-encompassing loss" of the insured property .........................................................51

2.  The court's finding that First and Stewart must allege an "all-encompassing loss," cannot be reconciled with the Policies' explicit coverage for a "slowdown" of First and Stewart's operations and constitutes reversible error............53

3.  The court erred when it refused to apply the reasoning of the toxic/hazardous/noxious substance cases to Coronavirus and COVID-19 .....55

4.  The district court misinterpreted other provisions in the Policies, and likewise misconstrued First and Stewart's argument that Coronavirus and COVID-19 are "covered causes of loss"...........................................59

# TABLE OF CONTENTS
## (continued)

**Page**

        a.    The district court misinterpreted the Policies' carve out of air from the scope of "covered property" as a policy exclusion for loss arising from damage to the air ............... 59

        b.    The district court misunderstood First and Stewart's argument that the Policies recognized losses caused by Communicable Disease were a "Covered Cause of Loss" ........ 61

   B.    The District Court Erred When It Found that Shutdown Orders Cannot Cause "Direct Physical Loss or Damage" to the Hotel ........................... 64

III.  THE DISTRICT COURT FAILED TO ACCEPT THE PLAUSIBLE, WELL-PLED ALLEGATIONS IN THE COMPLAINT AS TRUE AND MADE FACTUAL FINDINGS INAPPROPRIATE ON A MJOP ....................................................... 67

   A.    The District Court Erred Because It Failed to Accept as True the Complaint's Factual Allegations and to Draw all Reasonable Inferences in First and Stewart's Favor ......................... 68

IV.  THIS COURT SHOULD EXERCISE ITS SOUND DISCRETION AND CERTIFY FIRST AND STEWART'S CONTROLLING, UNSETTLED STATE LAW QUESTIONS TO THE WASHINGTON SUPREME COURT ....................... 73

CONCLUSION ....................................................................... 74

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*,
    513 F. Supp. 3d 623 (W.D. Pa. 2021) .......................................... 44, 45

*Ainsworth v. Progressive Cas. Ins. Co.*,
    322 P.3d 6 (Wash. Ct. App. 2014) ....................................................... 25

*Am. All. Ins. Co. v. Keleket X-Ray Corp.*,
    248 F.2d 920 (6th Cir. 1957) ............................................................... 47

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) ............................................................ 68

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................... passim

*Bd. of Educ. v. Int'l Ins. Co.*,
    720 N.E.2d 622 (Ill. App. Ct. 1999) ................................................... 48

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................... passim

*Boardwalk Ventures CA, LLC v. Century-Nat'l Ins. Co., et al.*,
    No. 20STCV27359, 2021 WL 1215892
    (Cal. Super. Ct. L.A. Cnty. Mar. 18, 2021) ....................................... 56

*Boeing Co. v. Aetna Cas. & Sur. Co.*,
    784 P.2d 507 (Wash. 1990) ......................................................... 25, 63

*Bogomolov v. Lake Villas Condo. Ass'n of Apartment Owners*,
    127 P.3d 762 (Wash. Ct. App. 2006) .................................................. 30

*Brown's Gym, Inc. v. Cincinnati Ins. Co., et al.*,
    No. 20 CV 3113, 2021 WL 3036545
    (Pa. Ct. Comm. Pl. Lackawanna Cnty. July 13, 2021) ...................... 56

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases**

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
500 F. Supp. 3d 565 (E.D. Tex. May 5, 2021) ............................. 57, 63

*Cle Elum Bowl, Inc. v. N. Pac. Ins. Co., Inc.*,
981 P.2d 872 (Wash. Ct. App. 1999) ................................................. 50

*Cook v. Allstate Ins. Co.*,
No. 48D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32
(Ind. Super. Ct. Madison Cnty. Nov. 30, 2007) ................................ 52

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
875 F.3d 1241 (9th Cir. 2017) ........................................................... 23

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
506 F. Supp. 3d 360 (E.D. Va. 2020) .......................................... 52, 61

*Essex Ins. Co. v. BloomSouth Flooring Corp.*,
562 F.3d 399 (1st Cir. 2009) ............................................................. 47

*Farmers Ins. Co. of Ore. v. Trutanich*,
858 P.2d 1332 (Or. Ct. App. 1993) .................................................... 48

*Feenix Parkside LLC v. Berkley N. Pac.*,
438 P.3d 597 (Wash. Ct. App. 2019) ................................................. 25

*Fujii v. State Farm Fire & Cas. Co.*,
857 P.2d 1051 (Wash. Ct. App. 1993) .......................................... 37, 39

*Goodwill Indus. of Orange Cnty., Cal. v. Phila. Indem. Ins. Co.*,
No. 30-2020-01169032-CU-IC-CXC, 2021 WL 476268
(Cal. Super. Ct. Orange Cnty. Jan. 28, 2021) .................................. 56

*Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*,
793 F. Supp. 259 (D. Or. 1990) ......................................................... 50

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

## Cases

*Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*,
  953 F.2d 1387 (9th Cir. 1992) ............................................... 49

*Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*,
  No. 20-cv-2171, 2021 WL 1945712 (E.D. Pa. May 14, 2021) ............ 66

*Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*,
  No. 20-2-07925 SEA, 2020 WL 6784271
  (Wash. Super. Ct. King Cnty. Nov. 13, 2020) .......................... passim

*Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*,
  No. 20-2-07925-1 SEA, 2021 WL 4189778
  (Wash. Super Ct. King Cnty. Sept. 9, 2021) ........................ 28, 34, 65

*Holden v. Farmers Ins. Co.*,
  239 P.3d 344 (Wash. 2010) ................................................. 26

*In re Chinese Mfg. Drywall Prods. Liab. Litig.*,
  759 F. Supp. 2d 822 (E.D. La. 2010) ...................................... 47

*In re Fulkrod*,
  126 B.R. 584 (B.A.P. 9th Cir. 1991) ...................................... 29

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................. 69

*In re: Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*,
  521 F. Supp. 3d 729 (N.D. Ill. Feb. 22, 2021) ........................ 65, 66

*Jack v. Standard Marine Ins. Co.*,
  205 P.2d 351 (Wash. 1949) ................................................. 24

*JDS Constr. Grp. LLC et al. v. Continental Cas. Co.*,
  Case No. 2020 CH 5678
  (Ill. Cir. Ct. Cook Cnty. Oct. 25, 2021) ............................. 57, 72

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

## Cases

*JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*,
No. A-20-816628-B, 2020 WL 7190023
(Nev. Dist. Ct. Clark Cnty. Nov. 30, 2020).......................................56

*Johnson v. Hartford Fin. Servs. Grp., Inc.*,
No. 1:20-CV-02000-SDG, 2021 WL 37573
(N.D. Ga. Jan. 4, 2021) ......................................................................40

*Judd v. Weinstein*,
967 F.3d 952 (9th Cir. 2020)..............................................................24

*K.C. Hopps, Ltd. v. Cincinnati Ins. Co., Inc.*,
No. 20-cv-00437-SRB, 2021 WL 4302834
(W.D. Mo. Sept. 21, 2021) ................................................................67

*Kingray Inc. v. Farmers Grp. Inc.*,
523 F. Supp. 3d 1163 (C.D. Cal. 2021) .............................................57

*Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*,
98 So. 3d 74 (Fla. Dist. Ct. App. 2012) .............................................63

*LeGras v. AETNA Life Ins. Co.*,
786 F.3d 1233 (9th Cir. 2015).............................................................23

*Life Time, Inc., et al. v. Zurich Am. Ins. Co.*,
No. 27-CV-20-10599, 2021 WL 4768307
(Minn. Dist. Ct. Hennepin Cnty. Oct. 7, 2021) .................................57

*Matzner v. Seaco Ins. Co.*,
No. CIV. A. 96-0498-B, 1998 WL 566658
(Mass. Super. Aug. 12, 1998)............................................................48

*McDonald v. State Farm Fire & Cas. Co.*,
837 P.2d 1000 (Wash. 1992) .............................................................24

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases**

*McLaughlin v. Travelers Com. Ins. Co.*,
  476 P.3d 1032 (Wash. 2020) .................................................. 25, 29, 31

*Mellin v. N. Sec. Ins. Co., Inc.*,
  115 A.3d 799 (N.H. 2015) ........................................................... 48, 52

*Mudpie, Inc. v. Travelers Cas. Co. Ins. Co. of Am.*,
  15 F.4th 885 (9th Cir. 2021) .............................................................. 58

*Muscogee (Creek) Nation d/b/a Muscogee (Creek)*
  *Nation Casinos et al. v. Lexington Insurance Co., et al.*,
  No. CJ-20-159 (Okla. Dist. Ct. Muskogee Cnty. June 9, 2021) ........ 57

*Nat'l Mfg. Co., Inc. v. Citizens Ins. Co. of Am.*,
  No. 13-314, 2016 WL 7491805 (D.N.J. Dec. 30, 2016) ...................... 54

*Nautilus Grp., Inc. v. Allianz Glob. Risks US*,
  No. C11-5281BHS, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012) .... 30

*Nayab v. Cap. One Bank (USA), N.A.*,
  942 F.3d 480 (9th Cir. 2019) ............................................................ 68

*Nevada Property 1 LLC v. Factory Mut. Ins. Co.*,
  No. A-21-831049-B (Nev. Dist. Ct. Clark Cnty. Aug. 16, 2021) ........ 56

*Newmont USA Ltd. v. Am. Home Assur. Co.*,
  676 F. Supp. 2d 1146 (E.D. Wash. 2009) .......................................... 29

*Novant Health Inc. v. Am. Guar. & Liab. Ins. Co.*,
  -- F. Supp. 3d --, 2021 WL 4340006 (M.D.N.C. 2021) ................. 57, 73

*Ocasio-Hernandez v. Fortuno-Burset*,
  640 F.3d 1 (1st Cir. 2011) ................................................................ 69

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

## Cases

*Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
  No. 15-cv-01932, 2016 WL 3267247 (D. Or. June 7, 2016) .............. 47

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
  2 F.4th 1141 (8th Cir. 2021) ............................................................ 58

*P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London*,
  No. 20STCV17169, 2021 WL 818659
  (Cal. Super. Ct. L.A. Cnty. Feb. 4, 2021) ................................... 56, 65

*Perry St. Brewing Co., LLC v. Mut. of Enumclaw Ins. Co.*,
  No. 20-2-02212-32, 2020 WL 7258116
  (Wash. Super. Ct. Spokane Cnty. Nov. 23, 2020) ........... 34, 35, 36, 64

*Port Auth. of N.Y. & N.J. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3d Cir. 2002) ........................................................ 50, 51

*Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*,
  882 P.2d 703 (Wash. 1994) .............................................................. 55

*Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*,
  800 N.Y.S.2d 356 (N.Y. Sup. Ct. N.Y. Cnty. 2005) ..................... 48, 52

*Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Co., et al.*,
  No. 217-2020-CV-00309, 2021 WL 4029204 (N.H. Super. Ct. Merrimack Cnty. June 15, 2021) .................................................... 56

*Seifert v. IMT Ins. Co.*,
  -- F. Supp. 3d --, 2021 WL 2228158 (D. Minn. 2021) ........................ 65

*Selane Prods., Inc. v. Cont'l Cas. Co.*,
  No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021) .................. 58

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases**

*Select Hosp., LLC v. Strathmore Ins. Co.*,
No. CV 20-11414-NMG, 2021 WL 1293407
(D. Mass. Apr. 7, 2021) ....................................................... 40

*Sentinel Mgmt. Co. v. Aetna Cas. & Sur. Co.*,
615 N.W.2d 819 (Minn. 2000) ............................................ 48

*Serendipitous, LLC/Melt, et al. v. Cincinnati Ins. Co.*,
-- F. Supp. 3d --, 2021 WL 1816960 (N.D. Ala. 2021) ........................ 57

*Snoqualmie Ent. Auth. v. Affiliated FM Ins. Co.*,
No. 21-2-03194-0 SEA, 2021 WL 4098938
(Wash. Super. Ct. King Cnty. Sept. 2, 2021) ................... 35, 36, 39, 65

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co.*,
No. 05-1315, 2007 WL 464715 (D. Or. Feb. 7, 2007) ................. 47, 52

*Star Buick GMC v. Sentry Ins. Grp.*,
No. 20-cv-03023, 2021 WL 2134289 (E.D. Pa. May 26, 2021) .......... 66

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
478 F. Supp. 3d 794 (W.D. Mo. 2020) ............................... 57

*T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*,
908 F.3d 581 (9th Cir. 2018) .............................................. 24

*Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*,
522 F. Supp. 3d 1216 (S.D. Fla. 2021) ............................... 41

*Trautman v. Union Ins. Co.*,
No. 5-09-34, 2010 WL 1267217 (Ohio Ct. App. Apr. 5, 2010) .......... 63

*TRAVCO Ins. Co. v. Ward*,
715 F. Supp. 2d 699 (E.D. Va. 2010) ............................... 47

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

## Cases

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*,
   916 F.2d 267 (5th Cir. 1990)........................................................38, 39

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
   498 F. Supp. 3d 878 (S.D.W. Va. 2020) .............................................40

*Vision One, LLC v. Phila. Indem. Ins. Co.*,
   276 P.3d 300 (Wash. 2012) ................................................................28

*W. Fire Ins. Co. v. First Presbyterian Church*,
   437 P.2d 52 (Colo. 1968) ....................................................................48

*Widder v. La. Citizens Prop. Ins. Corp.*,
   82 So.3d 294 (La. Ct. App. 2011)........................................................48

*Wolstein v. Yorkshire Ins. Co., Ltd.*,
   985 P.2d 400 (Wash Ct. App. 1999).......................................37, 38, 39

*Woolworth LLC v. Cincinnati Ins. Co.*,
   No. 2:20-CV-01084-CLM, 2021 WL 1424356
   (N.D. Ala. Apr. 15, 2021) ...................................................................40

*Wyoming Sawmills, Inc. v. Transp. Ins. Co.*,
   578 P.2d 1253 (Or. 1978) ....................................................................49

## Statutes

28 U.S.C. § 1291 .......................................................................................5

28 U.S.C. § 1332 .......................................................................................5

## Rules

Fed R. Civ. P. 12(b)(6) ............................................................................67

Fed. R. Civ. P. 12(c) ..........................................................................6, 23

xii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Other Authorities**

10A Steven Plitt et al.,
    *Couch on Ins.* § 148:46 (3d ed. 2021) ......................................... 41, 43

Cambridge Advanced Learner's Dictionary
    (4th ed. 2013) ................................................................................ 32

Merriam-Webster
    (https://www.merriam-webster.com/dictionary/loss) ................. 27, 29

Oxford English Dictionary
    (2d ed. 1989) ................................................................................. 32

Richard P. Lewis, et al.,
    *Couch's "Physical Alteration" Fallacy: Its Origins and*
    *Consequences*, 56 TORT, TRIAL & INS. PRAC. L.J. (2021) ................. 42

Steven Plitt,
    *Direct Physical Loss in All-Risk Policies:*
    *The Modern Trend Does Not Require Specific Physical Damage*,
    Alteration, CLAIMS J. (Apr. 15, 2013),
    https://amp.claimsjournal.com/magazines/idea-
    exchange/2013/04/15/226666.htm ................................................... 43

**INTRODUCTION**

First and Stewart Hotel Owner, LLC ("First and Stewart"), owner of the Thompson Seattle Hotel (the "Hotel"), comes before this Court for relief following the summary dismissal of its Amended Complaint ("Complaint") against Fireman's Fund Insurance Company ("FFIC"), subsidiary of the global insurance giant, Allianz, for business interruption losses following the presence of SARS-CoV-2 ("Coronavirus") and the disease it causes, COVID-19, at the Hotel. Coronavirus and COVID-19 physically altered the insured premises and rendered them dangerous and, along with the government orders that recognized these effects on property and shuttered the Hotel, resulted in the loss of functional use of the property. The Hotel was closed for months and reopened only with severe restrictions, causing First and Stewart to suffer catastrophic losses.

First and Stewart sought relief for its losses under two high-end "all-risk" commercial property insurance policies (the "Policies") that it had purchased from FFIC to protect the Hotel and its business income (i.e., the stream of income that flows from the property). The Policies, requiring hefty premiums, covered all risks of "direct physical loss or

damage," not otherwise "excluded or limited" by the Policies, including losses for the "Suspension," i.e., the "slowdown" of the Hotel's operations. The Policies also contained Communicable Disease Coverage that expressly recognized that virus is a "covered cause of loss" that can satisfy the "direct physical loss or damage" coverage trigger.

But FFIC turned its back on its policyholder and denied coverage, forcing First and Stewart to bring this action. First and Stewart initially sued in Washington state court, but FFIC removed to the Western District of Washington, where First and Stewart filed its operative Complaint. FFIC moved for judgment on the pleadings and, without oral argument, the district court granted that motion.

In dismissing the Complaint, the district court ignored then existing state law in Washington and found that Coronavirus and COVID-19 can never cause "direct physical loss or damage" to trigger coverage under the Policies. The district court improperly imposed a "physical alteration" requirement, neither defined in nor supported by the Policies, and further imposed a "permanent dispossession" requirement that is directly contrary to and would nullify the express

2

"slowdown" coverage in the Policies. The district court violated Washington principles of insurance contract interpretation that required the court to accept First and Stewart's reasonable interpretation of the "direct physical loss or damage" coverage trigger (then recognized by Washington state cases and six decades of national caselaw): that the trigger is satisfied by a quantifiable loss of functional use of the property caused by the presence at the premises of toxic/hazardous/noxious substances, such as Coronavirus and COVID-19, and the government orders that recognized the dangers they presented and the physical loss or damage to property they caused.

The district court failed to accept the Complaint's plausible, well-pled allegations as true and instead made factual findings (including that Coronavirus dissipates over time and can be cleaned) that flatly contradicted explicit allegations in the Complaint supported by dozens of peer-reviewed scientific authorities. In short, the district court overstepped its bounds on a motion for judgment on the pleadings ("MJOP") and turned the *Twombly*/*Iqbal* pleading standard (applicable to both motions to dismiss and MJOPs) on its head.

As a result and as set forth more fully below, this Court should reverse the district court's judgment and order, and permit First and Stewart its day in court to submit evidence—including expert scientific discovery—demonstrating the direct physical loss or damage to its property caused by Coronavirus and COVID-19.

Alternatively, as set forth in First and Stewart's separately filed motion, *see* Dkt. No. 11, this Court may certify to the Washington Supreme Court the critical questions in this case: the interpretation of the "direct physical loss or damage" coverage trigger in the context of the presence of a toxic/hazardous/noxious substance, like Coronavirus and COVID-19, at an insured premises, and government orders relating thereto, that deprive a policyholder of the functional use of its property. Some iteration of the "direct physical loss or damage" coverage trigger appears in virtually every commercial property insurance policy. Its interpretation affects thousands of businesses in Washington and billions of dollars in losses resulting from Coronavirus and COVID-19. Should this Court choose to certify, this appeal should be stayed pending decision by the Washington Supreme Court.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff-Appellant First and Stewart is a limited liability company organized under Delaware law with its principal place of business in Seattle, Washington, and Defendant-Appellee FFIC is a California Corporation with its principal place of business in that state, 3-ER-314 ¶¶ 51, 52, and because the amount in controversy exceeds $75,000, 3-ER-314-15 ¶ 53. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this appeal is from a final judgment entered on July 22, 2021, 1-ER-2, and First and Stewart timely noticed an appeal on August 5, 2021, 3-ER-361.

## QUESTIONS PRESENTED

1.  Did the district court err in construing the meaning of the undefined coverage trigger, "direct physical loss or damage," by requiring a physical alteration to, or permanent dispossession of, the insured property when Washington courts have reasonably construed the phrase to require only a loss of the property's functional use?

2.  Did the district court err when it found that the coverage trigger "direct physical loss or damage" was not satisfied despite the

presence of Coronavirus and COVID-19 at the Hotel, which along with Washington's shutdown orders that were issued in response, caused a loss of the Hotel's functional use?

3.     Did the district court err in dismissing the Complaint under FRCP 12(c) when, contrary to the Supreme Court's standards in *Twombly*/*Iqbal*, it failed to accept the Complaint's plausible allegations as true, failed to draw all reasonable inferences in First and Stewart's favor, and made factual findings of its own?

4.     Should the Court certify to the Washington Supreme Court questions regarding the interpretation of the coverage trigger "direct physical loss or damage" in the context of Coronavirus/COVID-19, given that these questions are unsettled under state law and determinative of key legal issues in this case and in countless others?

## STATEMENT OF THE CASE

## I.  FACTUAL BACKGROUND

### A.  First and Stewart Purchased High-End "All-Risk" Policies

Lauded as "[a]n architectural and design lover's dream,"[1] the

Hotel is an award-winning boutique hotel located near the waterfront in

downtown Seattle, within blocks from the city's central business

district. 3-ER-300 ¶ 1; 3-ER-308 ¶ 27; 3-ER-315-16 ¶¶ 57, 59.[2] The

Hotel has 150 rooms, a fitness center, meeting spaces, and two

restaurants. 3-ER-308 ¶ 27; 3-ER-316 ¶ 58. It attracts travelers from all

over the world, 3-ER-316 ¶ 59, and employs approximately 115 people.

*Id.* ¶ 58

To protect the Hotel and its income stream, First and Stewart

purchased two high-end, all-risk commercial property insurance policies

from FFIC. 3-ER-300-01 ¶ 1; 3-ER-307-08 ¶ 26. The Policies spanned

the periods April 8, 2019 to April 8, 2020, and April 8, 2020 to April 8,

---

[1] 3-ER-315 ¶ 57.

[2] Other than the limits and sublimits, the Policies are identical. Citations are to the 2019-2020 Policy. 1-ER-5 n.2.

2021, each providing approximately $130 million in coverage. 3-ER-300-01 ¶ 1.

The Policies, which were issued on a form drafted by FFIC's parent, global insurance conglomerate Allianz, contain "Business Income and Extra Expense Coverage" ("Business Interruption Coverage"). 2-ER-43. The Business Interruption Coverage provision states that FFIC "will pay for the actual loss of business income and necessary extra expense" that First and Stewart "sustain[s] due to the necessary suspension of [its] operations during the period of restoration arising from direct physical loss or damage to" the Hotel, "or within 1,000 feet of" it "caused by or resulting from a covered cause of loss." 2-ER-43.[3]

Under the Policies, a "Suspension" means either "the slowdown or cessation" of the Hotel's operations, "or that a part or all of" the Hotel "is rendered untenable [sic]." 2-ER-98. Coverage "begins immediately after the time of the direct physical loss or damage caused by or resulting from a covered cause of loss" to the Hotel and its property.

---

[3] Terms defined in the Policies are bolded. 2-ER-42. For ease of reading, this brief omits the bolding.

2-ER-95. A "covered cause of loss" is any "risk[] of direct physical loss or damage not excluded or limited" by the Policies. 2-ER-89. Although several of the Business Interruption Coverage provision's other terms are also defined, 2-ER-88, 98, the critical coverage trigger, "direct physical loss or damage," is not. *See* 2-ER-87-100.

Besides its main insuring provisions, the Policies also contain several "Extensions of Coverage," including "Communicable Disease Coverage," pursuant to which FFIC will pay for "costs incurred to: . . . [r]epair or rebuild Property Insured *which has been damaged or destroyed by the communicable disease,*" 2-ER-58-59 (emphasis added), which is defined to include a "virus that may be transmitted directly or indirectly from human or animal to a human," 2-ER-89. The presence of this Communicable Disease Coverage in the Policies demonstrates that a virus or disease is a "covered cause of loss" sufficient to cause "direct physical loss or damage" to the Hotel, and that virus and disease are not excluded from coverage. *See* 2-ER-58-59, 89.

The extensions of coverage also include "Dependent Property Coverage," which extends the Business Interruption Coverage to suspensions caused by "direct physical loss or damage" to property

9

operated by other businesses upon whom First and Stewart relies.

2-ER-55-56.

## B. The Hotel was Rendered Unsafe and Unfit for its Intended Uses from the Presence of Coronavirus and COVID-19

Coronavirus and COVID-19 were present at the Hotel. 3-ER-309-10 ¶ 31; 3-ER-312-13 ¶ 43; 3-ER-330-31 ¶¶ 99-103; 3-ER-332-33 ¶¶ 106, 109; 3-ER-344-45 ¶ 161. The first confirmed COVID-19 case in the United States was in the Seattle area, and by March 2020, the disease had pervaded the community. 3-ER-308 ¶ 29; 3-ER-332 ¶ 107. At least four Hotel employees are known to have contracted COVID-19, 3-ER-312 ¶ 42; 3-ER-330-31 ¶ 99. However, given that around forty percent of individuals infected with COVID-19 are asymptomatic, 3-ER-317 ¶ 61, it is certain that *many* more Hotel employees were COVID-19-positive, 3-ER-330-31 ¶ 99.

Coronavirus is highly contagious and is spread mainly through tiny droplets and even smaller respiratory particles, which are exhaled as infected individuals breathe or talk. 3-ER-318 ¶ 64; 3-ER-320-22 ¶¶ 72-73; 3-ER-330-31 ¶¶ 96, 101. Scientific studies have shown that, once airborne, these particles can travel twenty feet or more and remain

10

suspended for *indefinite periods of time*. 3-ER-320-22 ¶¶ 72-75. Coronavirus particles may also be deposited on and adhere to many different inanimate objects and surfaces (i.e., fomites). 3-ER-323-25 ¶¶ 77-80; 3-ER-329-30 ¶¶ 94, 97-98. Physical contact with fomites can be unsafe because fomites can be vehicles for viral transmission to humans. 3-ER-323-25 ¶¶ 77-80, 83-85.

Coronavirus is also highly resilient. 3-ER-318 ¶ 64. Aerosolized particles can remain suspended for indefinite periods; air conditioning itself can spread the virus through a building over 183 feet. 3-ER-321-22 ¶¶ 73-75. As a result, Coronavirus cannot be removed from the air. 3-ER-305 ¶ 20; 3-ER-323 ¶ 76. Routine cleaning also does not eliminate Coronavirus fomites from surfaces or aerosolized Coronavirus particles from the air. 3-ER-305 ¶ 20; 3-ER-327-29 ¶¶ 87-94; 3-ER-330 ¶¶ 97-98.

Recognizing the dangers that Coronavirus and COVID-19 pose, state and local governments issued orders to restrict the Hotel's operations. 3-ER-335-37 ¶¶ 117-19, 122. On March 16, 2020, three days after First and Stewart closed the Hotel's restaurants, Washington Governor Jay Inslee issued an order requiring the closure of

11

restaurants and limiting the size of gatherings. 3-ER-333 ¶ 110;

3-ER-335 ¶ 118. In so doing, Governor Inslee found the emergence of

Coronavirus was a "public disaster affecting, among other things,

"property." 3-ER-336 ¶ 118. A week later, based on a similar finding,

Governor Inslee issued a shutdown order requiring Washingtonians to

stay home except for essential activities, banning social gatherings, and

closing non-essential businesses. *Id.* ¶ 119. As a result of the presence of

Coronavirus and the government orders, the Hotel was closed for

months. 3-ER-311-12 ¶¶ 38-40; 3-ER-333 ¶ 110.

Because of safety concerns, First and Stewart could not resume

normal operations of the Hotel and could only reopen it months later,

with reduced operations, hours, and occupant capacity. 3-ER-312 ¶ 40,

3-ER-333 ¶ 110; 3-ER-337-38 ¶¶ 122, 124. First and Stewart also had to

adopt expensive safety procedures, such as designing, engineering, and

installing barriers to hamper transmission and foster social distancing,

as well as intensified cleaning procedures. 3-ER-337 ¶ 123.

As a result of the initial shutdown and subsequent reduced

operations necessitated by the presence of Coronavirus at the Hotel,

First and Stewart was deprived of the property's normal functional use

12

from March 2020 through April 2021 and suffered millions of dollars in losses. 3-ER-333 ¶ 110; 3-ER-336-37 ¶ 121. It also incurred significant costs and extra expenses to attempt to minimize the presence of Coronavirus onsite and ensure safety. 3-ER-337 ¶ 123.

## II.    PROCEDURAL BACKGROUND

### A.    First and Stewart's Claims

First and Stewart submitted timely coverage claims to FFIC under the Policies for lost business income and extra expenses based on, among other things, the Policies' Business Interruption Coverage and Dependent Property Coverage extension. 3-ER-313 ¶ 46; 3-ER-338 ¶ 125; 3-ER-344 ¶ 158; 3-ER-346-47 ¶ 171. FFIC denied both claims. 3-ER-344-45 ¶¶ 159-64; 3-ER-346-47 ¶ 171.

First and Stewart subsequently sued FFIC in King County Superior Court, asserting claims for breach of contract and for a declaration of coverage. *See* 3-ER-355-56 ¶¶ 1, 3. FFIC removed to the Western District of Washington, which invited First and Stewart to consolidate its case with a group of Washington plaintiffs, 3-ER-369, but First and Stewart declined. 3-ER-352. On April 26, 2021, First and Stewart filed the operative Complaint. 3-ER-300.

13

## B.    The *Nguyen* Order

On May 28, 2021, the district court dismissed multiple cases, including those with which it had invited First and Stewart to consolidate. *See* RJN-1.[4] Relying on what it described as the "overwhelming consensus" *of the federal courts*, RJN-1-9; RJN-1-8 n.4— albeit in cases *not* applying Washington law—the district court held that the "direct physical loss or damage" requirement is clear and unambiguous and does not cover damages from COVID-19. RJN-1-23. The court so held despite acknowledging that two Washington state courts ruled government orders triggered all-risk coverage. RJN-1-23-31. Noting that "loss" is defined as "the act of losing possession," the court reasoned that a "direct physical loss" requires "the inability to physically own or manipulate the property, such as theft or total destruction" or "an inability to interact with the property because of an alteration to its physical status." RJN-1-25-28.

The court thereby imposed (i) a permanent dispossession requirement that is unsupported by Washington law; and (ii) a physical

---

[4] First and Stewart is also filing a Request for Judicial Notice. References to the proposed record additions are made as "RJN-[Exhibit]-[Page]."

14

alteration requirement based on its prediction as to how the

Washington Supreme Court would rule in light of two Washington

intermediate appellate decisions that the court conceded "do not

address the specific types of losses COVID-19 causes." RJN-1-30-33.

The court ruled that because "COVID-19 hurts people, not property,"

and can be wiped from surfaces with disinfectant, it does not cause

"physical damage." RJN-1-9, 24-25.

### C.  The *Vita Coffee* Order

The plaintiffs in several of the consolidated cases moved for

reconsideration, asserting that the district court had ignored other,

more favorable definitions of the word "loss." RJN-2-88. Although not

disputing the existence of other definitions more favorable to

policyholders, the court denied the motion. RJN-2-88-90. It again

pointed to the "physical" loss requirement and noted that its

interpretation fit its understanding of the purpose of *property*

*insurance*, which it described as "to insure … the business's physical

property." RJN-2-90.

### D. The Order Dismissing First and Stewart's Claims

On July 22, 2021, a day after issuing the *Vita Coffee* order, the district court granted FFIC's MJOP and dismissed First and Stewart's claims. 1-ER-3. The court relied on its rulings in the *Nguyen* and *Vita Coffee* orders to reject most of First and Stewart's arguments. 1-ER-6 n.4. It held that all the applicable coverage provisions require that coverage be triggered by "direct physical loss or damage" to covered property and that "COVID-19 does not cause physical loss or damage." 1-ER-5.

First, the district court ruled that the Policies' Communicable Disease Coverage did not distinguish this case from the court's prior rulings. 1-ER-6-7. First and Stewart alleged that, by providing coverage for "direct physical loss or damage" caused by a "communicable disease event" and defining "communicable disease" to include virus and disease, the Policies thereby expressly acknowledged that virus is a "covered cause of loss" and, thus, viruses cause direct physical loss or damage, triggering coverage under the Policies' main insuring provisions (including Business Interruption). 3-ER-314 ¶¶ 47-48; 3-ER-340 ¶¶ 143-44. The district court did not address this analysis,

but misconstrued First and Stewart's argument, finding instead that the Communicable Disease coverage did not apply because the physical loss or damage coverage trigger was not satisfied. 1-ER-7.

Second, the district court ruled the "voluminous medical and academic literature" over COVID-19's transmissibility through the air cited in First and Stewart's pleadings did not distinguish its claims. 1-ER-8. First and Stewart had alleged Coronavirus causes physical changes to air and surfaces that damage property and cause a loss of its functional use. 3-ER-302 ¶ 9; 3-ER-304-05 ¶¶ 14-15, 17-20; 3-ER-327 ¶ 87. Misconstruing this argument, the court instead found, *sua sponte*, with no briefing on the issue, that air is not covered property under the Policies and therefore its alteration cannot constitute physical loss or damage. 1-ER-8.

Additionally, although it acknowledged that many jurisdictions had held that hazardous airborne substances may cause direct physical loss or damage, it denied that Washington courts would accept those rulings based on what it described as the "nearly uniform[]" rulings of federal courts. 1-ER-9-10. The court also followed other district court opinions, finding, notwithstanding express contrary allegations in the

17

Complaint, Coronavirus presented only a "temporary health hazard" because it "dissipates with the passage of time." *Compare* 1-ER-10, *with* 3-ER-321-23 ¶¶ 73-76. It also summarily concluded that the Hotel could return to "full working order" once Washington simply lifted its restrictions. 1-ER-11. In support of its ruling, the court again relied on what it described as the "nearly uniform[]" rulings of federal courts and its understanding of the purpose of property insurance. 1-ER-10.

The district court entered judgment the same day that it dismissed First and Stewart's claims, 1-ER-2. First and Stewart noticed an appeal two weeks later, 3-ER-361, and subsequently moved this Court to certify questions to the Washington Supreme Court on October 18, 2021, Dkt. No. 11, which is pending.

## SUMMARY OF ARGUMENT

1.      The interpretation of insurance policies is governed by state law, and under Washington law, insurance policies must be interpreted liberally in favor of the policyholder. Thus, when a term in an insurance policy is subject to multiple, reasonable interpretations, the court must accept the reasonable interpretation advanced by the policyholder. The district court violated these principles by interpreting the undefined

18

terms in the Policies' coverage trigger, "direct physical loss or damage," to require a "distinct, demonstrable, physical alteration" to, or "permanent dispossession" of, insured property. Further, the district court's imposition of a "physical alteration" requirement is unsupported by Washington law, and its imposition of a "permanent dispossession" requirement contravenes express language in the Policies providing coverage for a "slowdown" of operations. The court erred when it improperly rejected the policyholder's reasonable interpretation of the coverage trigger.

Indeed, the phrase "direct physical loss or damage" is more correctly and reasonably interpreted to mean a loss of the insured property's functional use. This interpretation is consistent with the plain text and with the other provisions of the Policies and has been adopted by other Washington courts in COVID-19 insurance coverage disputes. Although the district court declined to adopt First and Stewart's interpretation, it did not—and could not—find the interpretation unreasonable. Accordingly, the district court erred in its failure to construe the Policies in First and Stewart's favor.

19

2.     Decades of caselaw shows that courts across the country have found that the presence of a toxic/hazardous/noxious substance can cause "direct physical loss or damage to property" when that substance leads to a loss, in whole or in part, of the insured property's functional use.

First and Stewart reasonably relied on these decisions and, as a result, plausibly alleged that the presence of Coronavirus and COVID-19 at the Hotel rendered the premises unsafe and caused a loss of the functional use of the property, thereby satisfying the "direct physical loss or damage" trigger for Business Interruption Coverage as well as other coverages. The district court, however, improperly disregarded First and Stewart's reliance on the toxic/hazardous/noxious substance cases.

For the purposes of triggering all-risk commercial property coverage, Coronavirus and COVID-19 are no different than other toxic/hazardous/noxious substances, and many state and federal courts have applied the reasoning of those pre-COVID substance cases to current, COVID-19 business interruption coverage disputes to determine that Coronavirus and COVID-19 cause "direct physical loss

20

or damage" to property. Nevertheless, the district court wrongly asserted that courts have uniformly rejected the comparison.

Relatedly, the district court's *sua sponte* finding that the line of toxic/hazardous/noxious substance caselaw is inapplicable because air is not "covered property" under the Policies misconstrues First and Stewart's argument. First and Stewart contends that the presence of Coronavirus caused "direct physical loss or damage" because it physically changed the indoor air and surfaces at the property, rendering the *insured property itself* unsafe and unfit for its intended purposes, thereby depriving First and Stewart of the functional use of its insured property (i.e., the Hotel). It also misconstrued First and Stewart's argument regarding the Policies' Communicable Disease Coverage: that its presence in the Policies is a direct acknowledgment that Coronavirus and COVID-19 are covered causes of loss that can result in "direct physical loss or damage" to the Hotel.

The Washington government orders that impacted the Hotel and imposed severe restrictions on the physical use of the property upon its reopening were a recognition of the harm caused by the presence of

Coronavirus and COVID-19 on the property and were a separate cause of "direct physical loss or damage" to the Hotel.

3.    The district court erred when it departed from the fundamental principles governing the review of a defendant's MJOP. It failed to accept as true both the Complaint's plausible, well-pled factual allegations and the dozens of peer-reviewed scientific studies referenced in the Complaint supporting them. It failed to draw all reasonable inferences from those factual allegations in First and Stewart's favor. It erred when it made fact-intensive determinations at the MJOP stage, including that Coronavirus and COVID-19 cannot cause "direct physical loss or damage" because Coronavirus "dissipates with the passage of time" and that Coronavirus can be removed by routine disinfection and cleaning—all of which contradicted express allegations in the Complaint. Each of these errors is an independent basis for reversal.

4.    Because the Complaint raises unsettled questions of state law that are determinative of key issues in the case, including the interpretation of the coverage trigger, "direct physical loss or damage," this Court may certify those questions to the Washington Supreme Court. The prerequisites for certification are satisfied, and there are

compelling reasons for this Court to exercise its discretion to certify the questions, as set out in First and Stewart's separate motion for certification pending before this Court. Should this Court certify questions to the Washington Supreme Court, this appeal should be stayed pending a decision from that court.

## STANDARD OF REVIEW

This Court reviews de novo district court rulings on MJOPs under FRCP 12(c). *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017). Just as with Rule 12(b)(6) motions, the Court "accept[s] the factual allegations in the complaint as true, and view[s] them in a light most favorable to the plaintiff." *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015).

## ARGUMENT

## I. THE DISTRICT COURT DISREGARDED STATE SUBSTANTIVE LAW BY IMPOSING A PHYSICAL ALTERATION OR PERMANENT DISPOSSESSION REQUIREMENT ON THE COVERAGE TRIGGER "DIRECT PHYSICAL LOSS OR DAMAGE"

The interpretation of insurance policies is governed by state law under which federal courts must follow the rulings of the relevant state supreme court. *See, e.g., T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*,

908 F.3d 581, 585-86 (9th Cir. 2018). Where, as here, the state supreme court has not squarely addressed the legal question at issue, the federal court must forecast how that state supreme court would rule. *See Judd v. Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020). Here, the district court acknowledged that Washington law applies to this case but then failed to apply it. RJN-1-21.

### A. Washington Principles of Insurance Policy Interpretation Favor Coverage

Washington courts use a two-pronged approach when determining insurance coverage under all-risk property policies. The policyholder first must show that its claimed loss falls within the scope of the policy's coverage. Upon such a showing, the burden shifts to the insurer to show that an exclusion bars coverage. *See McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003-04 (Wash. 1992).

Washington law requires insurance policies be "liberally construed in favor of the object to be accomplished and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms prepared by experts at the instance of the insurer, in the preparation of which the insured has no voice." *Jack v. Standard Marine Ins. Co.*, 205 P.2d 351, 354 (Wash. 1949). Washington courts

"strictly and narrowly construe exclusions" against the insurer. *Feenix Parkside LLC v. Berkley N. Pac.*, 438 P.3d 597, 605, *review denied*, 447 P.3d 162 (Wash. Ct. App. 2019)

In construing undefined terms in insurance policies, Washington courts follow "their ordinary and common meaning, not their technical, legal meaning," *Ainsworth v. Progressive Cas. Ins. Co.*, 322 P.3d 6, 11 (Wash. Ct. App. 2014) (quotation omitted), interpreting the terms the way an "average lay person" would understand them. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 510 (Wash. 1990). Courts also examine "the entire contract" and construe the provisions of the contract "together so as to give force and effect to each clause." *Id.* at 511.

If the terms of an insurance policy are ambiguous, the ambiguity "must be resolved in favor of the insured," and "the definition that most favors the insured" must be adopted. *McLaughlin v. Travelers Com. Ins. Co.*, 476 P.3d 1032, 1037 (Wash. 2020). Thus, if a term is subject to multiple, reasonable definitions, the court is bound under Washington law to adopt the policyholder's "reasonable interpretation of the policy."

*Holden v. Farmers Ins. Co.*, 239 P.3d 344, 349 (Wash. 2010). The district court disregarded these principles.

**B.    The District Court Incorrectly Imposed a Physical Alteration or Permanent Dispossession Requirement on the "Direct Physical Loss or Damage" Coverage Trigger and Rejected the Policyholder's Reasonable Interpretation of the Terms**

The district court recognized that the term "direct physical loss or damage" is undefined in the Policies, that "[n]o Washington State appellate court … addressed whether COVID-19, in concert with the Governor's Proclamations, causes direct physical loss or damage" but that "[t]wo Washington trial courts … examined this question and determined that the term is at least ambiguous as to COVID-19-related losses, and, thus, coverage applies." RJN-1-23. Nonetheless, the district court concluded that "COVID-19 does not cause physical loss or damage." 1-ER-5. The court examined each of the two prongs of the coverage trigger in turn. RJN-1-24-29.

Reasoning that "COVID-19 hurts people, not property" and that "all that is needed to decontaminate is to 'wipe[] [the virus] off the surface with disinfectant,'" the district court concluded that "COVID-19" does not cause physical damage to property." RJN-1-25.

26

Similarly, the district court found that losses from COVID-19 do not constitute "physical loss" under the Policies. RJN-1-28. Relying on a dictionary definition that it selected, the court defined the word "loss" to mean "the act or fact of being unable to keep or maintain something" or "the act of losing possession." RJN-1-26 (quoting *Merriam-Webster* (https://www.merriam-webster.com/dictionary/loss)). The court then found that "loss" should be interpreted to mean the inability to own or control property and "direct physical loss" to mean "the inability to physically own or manipulate property, such as theft or total destruction." RJN-1-26; *see also* RJN-1-33 (predicting "[T]he Washington Supreme Court would decide that the term 'physical loss' requires dispossession of property.") The court then observed that its interpretation of "direct physical loss" aligned with other federal district courts that had determined that "physical loss of" required "tangible, material, discernable, or corporeal dispossession" of the insured property, or some variation of the phrase. RJN-1-26-27; *see also id.* (listing variants of the phrase).

The court concluded by finding that to trigger coverage under an all-risk first-party commercial property insurance policy, the peril must

27

cause "an inability to interact with the property because of an alteration to its physical status." RJN-1-28.

The district court's interpretation of direct physical loss or damage is fatally flawed. While not bound by Washington trial court decisions, the district court should have—at a minimum—treated the two then-existing Washington trial court opinions as expressing a *reasonable interpretation* of the phrase "physical loss or damage" in the context of Coronavirus and COVID-19—that they cause a loss of functional use of covered property that satisfies the "direct physical loss or damage" trigger. *See infra* Section C.[5]

Indeed, a reasonable interpretation is all that is needed to meet the policyholder's minimal burden of bringing its claim within the ambit of coverage. *See, e.g.*, *Vision One, LLC v. Phila. Indem. Ins. Co.*, 276 P.3d 300, 306 (Wash. 2012) ("All-risk policies . . . provide coverage

---

[5] *See Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*, No. 20-2-07925-1 SEA, 2020 WL 6784271 (Wash. Super. Ct. King Cnty. Nov. 13, 2020); *Perry St. Brewing Co., LLC v. Mut. of Enumclaw Ins. Co.*, No. 20-2-02212-32, 2020 WL 7258116 (Wash. Super. Ct. Spokane Cnty. Nov. 23, 2020). *But cf. Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*, No. 20-2-07925-1 SEA, 2021 WL 4189778 (Wash. Super Ct. King Cnty. Sept. 9, 2021) (subsequent conflicting trial court ruling).

for all risks unless the specific risk is excluded."); *McLaughlin*, 476 P.3d at 1037-38. Thus, these interpretations should have been adopted under Washington law. *Id*. Those cases precluded the district court's finding that its interpretation was the *only* reasonable one. This is because divergent judicial interpretation of disputed policy or statutory language supports a finding of ambiguity. *See, e.g.*, *In re Fulkrod*, 126 B.R. 584, 587 (B.A.P. 9th Cir. 1991) (statutory language); *Newmont USA Ltd. v. Am. Home Assur. Co.*, 676 F. Supp. 2d 1146, 1160 (E.D. Wash. 2009) (insurance policy language).

Further, the district court's definition of the word "loss" was not only arbitrarily selected, but also subsequently withdrawn from the dictionary upon which the court relied.[6] And having found that each part of the trigger, "loss" and "damage," had to be given a distinct meaning, RJN-1-24, the district court then conflated the terms by

---

[6] After the court issued the *Nguyen* opinion, Merriam-Webster revised its definition to read "the act or fact or being unable to keep or maintain something or someone" with no reference to losing possession. *Compare Loss*, *Merriam-Webster* (https://web.archive.org/web/20210505204353/https://www.merriam-webster.com/dictionary/loss) (previous definition), *with id.* (https://www.merriam-webster.com/dictionary/loss) (current definition).

finding that physical loss requires a distinct, physical alteration. But a physical alteration is tantamount to physical damage. By interpreting physical loss as requiring a physical alteration, the district court deprived the term "physical loss" of any independent meaning in contravention of the court's prior decision in *Nautilus Grp., Inc. v. Allianz Glob. Risks US*, No. C11-5281BHS, 2012 WL 760940, at \*7 (W.D. Wash. Mar. 8, 2012) ("[I]f 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous. The fact that they are both included in the grant of coverage evidences an understanding that physical loss means something other than damage."). This violated Washington's insurance contract interpretation principle that each term must be given an independent meaning that does not render any other term "superfluous or meaningless." *Bogomolov v. Lake Villas Condo. Ass'n of Apartment Owners*, 127 P.3d 762, 766 (Wash. Ct. App. 2006).

Then, when the plaintiffs in the consolidated cases moved for reconsideration and argued that the court was bound to adopt a definition of "loss" that favored the policyholders, the court rejected the request, stating that dictionary definitions were not "'controlling,'" and that the court's definition "squared" with the context of the terms and

30

with the court's understanding of the purpose of property insurance (i.e., to protect property). RJN-2-90. Putting aside that the court's "understanding" of property insurance coverage ignores the existence and purpose of business interruption coverage (i.e., to protect the stream of income from property when a policyholder's business operations are suspended due to a loss of functional use of insured property), the court violated Washington law when it favored its own interpretation of "physical loss" over the insured's reasonable one. *See McLaughlin*, 476 P.3d at 1037 (courts must "adopt the definition that most favors the insured"). The phrase "direct physical loss or damage," as First and Stewart has urged, is reasonably interpreted to mean that something tangible has caused either a deprivation or injury to the

31

insured property, resulting in an impairment of its functional use, whether in whole or in part.[7, 8, 9, 10]

In sum, the district court made fatal errors in interpreting the Policies' coverage trigger (i.e., "direct physical loss or damage"), which require reversal.

**C.    Washington Courts Have Held that Government Orders Restricting the Physical Use of a Policyholder's Property in Recognition of the Unsafe Property Conditions Created by the Presence of Coronavirus Cause Property to Lose its Functional Use, Thus Resulting in "Direct Physical Loss or Damage" to Property**

While no Washington state appellate courts have yet interpreted the "direct physical loss or damage" coverage trigger in a COVID-19 business interruption coverage dispute, multiple state trial courts had

---

[7] *"Direct," Oxford English Dictionary* (2d ed. 1989) ("Effected or existing without intermediation or intervening agency; immediate").

[8] *"Physical," Oxford English Dictionary* (2d ed. 1989 ("[O]f or relating to matter or the material world; natural; tangible, concrete").

[9] *"Loss," Oxford English Dictionary* (2d ed. 1989 ("The being deprived of, or the failure to keep (a possession, appurtenance, right, quality, faculty, or the like)"); *Cambridge Advanced Learner's Dictionary* (4th ed. 2013) ("the fact that you no longer have something or have less of something").

[10] *"Damage," Oxford English Dictionary* (2d ed. 1989) ("Injury, harm; esp. physical injury to a thing, such as impairs its value or usefulness").

32

done so at the time of the district court's decision. The district court erred in failing to consider those decisions when it refused to accept that a loss of the insured property's functional use was a reasonable interpretation of "direct physical loss or damage."

In the first case to interpret this trigger language, a dental practice sought coverage of income lost while an order from Washington's governor barred non-emergency procedures under a policy requiring "'direct physical loss of or damage to' the covered property." *Hill and Stout*, 2020 WL 6784271, at *1-2. When the insurer moved to dismiss, a King County Superior Court judge denied the motion because "direct physical loss" is reasonably interpreted to cover loss of the covered property's use. *Id.*, at *2-3. "Loss," the court reasoned, is defined to mean "deprivation" as well as destruction and ruin, and it is reasonable to interpret "physical loss" to include the inability to treat patients on the insured property. *Id.*, at *2. The court considered, *and rejected*, the proposition that "physical loss" requires physical alteration to property, reasoning that such a requirement would render either "physical loss" or "damage" meaningless surplusage in violation of

33

Washington law. *Id.*, at *3. *But cf. Hill and Stout*, 2021 WL 4189778, at *3 (subsequent conflicting trial court ruling).[11]

Several weeks later, a Spokane County court independently adopted a similar interpretation. In *Perry St.*, 2020 WL 7258116, a brewery sought coverage for losses caused by COVID-19 orders restricting gatherings, closing bars, and limiting the capacity of restaurants under a business property insurance policy requiring "direct physical loss of or damage to" covered property. *Id.*, at *1-2. Like the King County court, the Spokane County court noted that "loss" is defined to mean deprivation as well as destruction or ruin, *id.*, at *2, and that "physical loss" should be given a different meaning than "damage" to avoid rendering a term superfluous. *Id.*, at *3. Accordingly, the court, granting partial summary judgment to the policyholder, found that the brewery had suffered a direct physical loss of its property

---

[11] In September 2021, *Hill and Stout* was subsequently dismissed on summary judgment after a new judge was assigned the case, holding that the policy required "some external physical force that causes direct physical change to the properties." *Hill and Stout*, 2021 WL 4189778, at *3.

because that property "could not be physically used for its intended purpose." *Id.*, at *3.

Recently, a third Washington court adopted a similar interpretation. In *Snoqualmie Ent. Auth. v. Affiliated FM Ins. Co.*, No. 21-2-03194-0 SEA, 2021 WL 4098938 (Wash. Super. Ct. King Cnty. Sept. 2, 2021), the policyholder sought coverage under an all-risk policy for losses resulting from state and tribal COVID-19 closure orders. *Id.*, at *1-2. Much like the Policies here, the policy there included a business interruption provision requiring "physical loss or damage" to the covered property. *Id.*, at *2. The court denied the insurer's motion for partial summary judgment, reasoning that the policy's "physical loss" requirement was triggered when the policyholder was "deprived of the ability to physically use, operate, or manipulate its property." *Id.*, at *5.

Here again, the court reasoned that "loss" may be defined to mean deprivation, and this definition should be adopted because "the phrase 'all risks of physical loss or damage' is stated in the disjunctive" and thus "the term 'physical loss' must mean something other than 'damage.'" *Id.* The court recognized that the district court, here, reached a different conclusion but declined to follow its conclusion:

35

> This Court is not persuaded by *Nguyen's* reliance on the opinions of other federal district court opinions across the country that applied the laws of other states, nor its holding that the undefined phrase 'all-risks of physical loss or damage' cannot be reasonably interpreted by the average lay person to include the insured's inability to physically use, control, or manipulate its property as a result of the COVID-19 closure orders and Tribal resolutions.

*Id.*, at \*6.

In *Nguyen*, the district court rejected *Hill and Stout* and *Perry St.* on the ground that those courts' reasoning (finding the trigger satisfied by "deprivation of use") "discounts the preceding term 'physical,'" and reiterated the "physical alteration" requirement it imposed. RJN-1-31. But the district court failed to acknowledge that deprivation of the functional use of the insured premises *is* a deprivation of the physical premises. The reasonable interpretations of those courts, like First and Stewart's interpretation—that Coronavirus invaded the air and surfaces at the Hotel, resulting in a loss of functional use of the Hotel— should have been accepted in favor of coverage under the well-settled principles of Washington law. *See supra* pp. 24-26.

Instead, in support of its interpretation of the coverage trigger, the district court relied on two inapposite Washington intermediate appellate decisions, *Fujii v. State Farm Fire & Cas. Co.*, 857 P.2d 1051 (Wash. Ct. App. 1993), and *Wolstein v. Yorkshire Ins. Co., Ltd.*, 985 P.2d 400 (Wash Ct. App. 1999). RJN-1-31-33. These cases differ materially from First and Stewart's claim. Most importantly, neither involved either the presence of a toxic/hazardous/noxious substance or government orders restricting the functionality/use of a business and, as such, they have no application to COVID-19 business interruption cases.

In *Fujii*, two homeowners brought a claim under a residential insurance policy, not an all-risk commercial property insurance policy. 857 P.2d at 1051. The claim was based on the instability of a slope above a house, which was likely to damage the house unless preventative measures were taken. *Id.* It was undisputed, however, there was no discernible physical damage to the house, and the Washington Court of Appeals found no physical loss, although it did not interpret the precise meaning of that term. *See id*.

37

Similarly, in *Wolstein*, after a boat builder declared bankruptcy and abandoned the construction of a yacht, the yacht's owner made a claim under a hull risk insurance policy for lost charter income and costs from delay. 985 P.2d at 403. Although this policy covered "all risks of physical loss of or damage to" the yacht, *id.* at 407, the Washington Court of Appeals held that the claim was not covered. *Id.* at 408. Recognizing that there was no controlling authority under Washington law, the court found persuasive two cases, one from the Fifth Circuit and one from an intermediate Texas appellate court. *Id.* at 407. Adopting the Fifth Circuit's reasoning that "'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state," the *Wolstein* court ruled that the builder's "financial difficulties … did not inflict physical damage to the [the yacht] or result in the physical loss of the yacht." *Id.* at 408 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990)). Notably, *Trinity Indus.*, the Fifth Circuit case on which the *Wolstein* court relied, did not impose a structural alteration or permanent dispossession requirement to satisfy "direct physical loss or damage but merely held that a vessel's "faulty

38

initial construction" did not constitute "physical loss or damage." *Id.* at 270-72. Thus, *Wolstein* is inapposite to COVID-19 claims. *See Snoqualaimie*, 2021 WL 4098938, at \*5 (finding *Fujii* and *Wolstein* uninformative and distinguishable).

### D. The District Court Erred When It Relied Instead on Federal Common Law and Couch's Discredited Physical Alteration Test

The district court erred when it disregarded Washington state court decisions and instead adopted federal common law, "join[ing] the numerous [federal] courts across the country that have held that COVID-19 does not trigger direct physical loss or damage." RJN-1-29. Based on the University of Pennsylvania's "Covid Coverage Litigation Tracker" website, the district court noted that over ninety percent of all coverage claims had been dismissed. RJN-1-16; RJN-1-16 n.4. The proper role of the district judge was to decide this action by applying Washington state law to the language of the Policies—not by applying statistics.

Moreover, the figure is misleading because it includes many cases concerning policies that, unlike the Policies here, contained broad virus exclusions, *see, e.g.*, RJN-1-36, or complaints that did not allege the

presence of Coronavirus at insured premises (or did so in conclusory fashion). *See, e.g.*, RJN-1-27-28. Even more importantly, far from suggesting that the Washington Supreme Court would find First and Stewart's interpretation unreasonable and reject it, the twenty or so decisions cited by the district court lack any compelling rationale for their rulings. Nor is "follow the herd" a principle of Washington law.

None of the cases that the district court cited in support of its "direct physical damage" interpretation is instructive. Each makes a factual determination inappropriate for adjudicating a MJOP, *see infra* Point III pp. 68-69, and in at least one of the cases, dismissal was granted because, unlike here, the policyholder simply did not allege that Coronavirus damaged the insured property. RJN-1-25.[12]

---

[12] The district court relied on the following cases, distinguishable as noted: *Johnson v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-CV-02000-SDG, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) (plaintiffs did not allege actual physical damage to insured property, only the mere presence of Coronavirus); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878 (S.D.W. Va. 2020) (same); *Select Hosp., LLC v. Strathmore Ins. Co.*, No. CV 20-11414-NMG, 2021 WL 1293407 (D. Mass. Apr. 7, 2021) (imposing physical alteration requirement and making factual determinations to dismiss the complaint); *Woolworth LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-01084-CLM, 2021 WL 1424356 (N.D. Ala. Apr. 15, 2021), *appeal dismissed*, No. 21-11847-CC, 2021 WL 3870691 (11th Cir.

The cases on which the district court relied to support its "direct physical loss" finding are no more persuasive.

*First*, nearly every case cited by the district court adopted a physical alteration requirement in direct or indirect reliance on Section 148.46 of the treatise *Couch on Insurance 3d*. Indeed, the court even noted that its interpretation of "direct physical loss" aligned with *Couch*, which it described as "insurance law doctrine." RJN-1-28. The court added: "Numerous federal courts have followed *Couch* in finding that damages resulting from COVID-19 are not covered by the policies at issue in these COVID cases." RJN-1-29. That is because *Couch* states that the physical loss or damage requirement has been "widely held" to "preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Steven Plitt et al., *Couch on Ins.* § 148:46 (3d ed. 2021) (the "*Couch* test").

But the *Couch* test, self-described in *Couch* as "widely held," was anything but that. *See id.* In fact, when *Couch* created the test and

---

June 16, 2021) (same); *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, 522 F. Supp. 3d 1216 (S.D. Fla. 2021) (same).

proclaimed it as a "widely held" rule in the mid-to-late 1990's, only a *single* court decision supported the test while thirteen other courts supported the same loss of use test advanced here by First and Stewart. *See* Richard P. Lewis, et al., *Couch's "Physical Alteration" Fallacy: Its Origins and Consequences*, 56 TORT, TRIAL & INS. PRAC. L.J. 621, 622-23 (2021) (discussing the history and development of the "physical loss" rule, *Couch*'s distortion of it, and the *Couch* test's impact on contemporary litigation, as well as the correct rule, as explained in pre- and post-*Couch* precedent).[13] And then, the treatise failed to cite, in its supplements, substantially all the cases that continued to refuse to apply the *Couch* test, giving the courts relying on the treatise the false impression that its test was the majority rule when, in fact, it was a thinly-supported outlier. *Id.* at 632.

Simply put, the *Couch* test relied on by the COVID-19 dismissals cited by the district court to determine "direct physical loss or damage" is based on misstatements of law and cannot be considered "insurance

---

[13] Scott Greenspan, Esq., current co-counsel for First and Stewart, is a co-author of this article.

law doctrine." These dismissals are the unwitting fruits of *Couch's* poisonous tree.

To be sure, in an article titled, *Direct Physical Loss in All-Risk Policies: The Modern Trend Does Not Require Specific Physical Damage, Alteration*, *Couch*'s lead author later conceded that "[t]he modern trend signals that courts are *not* looking for physical alteration, *but for loss of use. This is the trend of where the law is going*." Steven Plitt, *Direct Physical Loss in All-Risk Policies: The Modern Trend Does Not Require Specific Physical Damage*, Alteration, CLAIMS J. (Apr. 15, 2013), https://amp.claimsjournal.com/magazines/idea-exchange/2013/04/15/226666.htm (emphasis added). Yet, the section of *Couch* containing the *Couch* test from the treatise's current 2021 edition lacks any reference to the "trend" away from the *Couch* test toward the loss of use test referenced in the Plitt article. *See* Steven Plitt et al., *supra*, at 41.

This Court should thus rigorously scrutinize any decision that directly cites or indirectly relies on the *Couch* test—including the district court's decision, which heavily relied on *Couch*.

43

*Second*, the district court cited ten cases to support its ruling that "direct physical loss or damage" does not include "purely economic losses." RJN-1-27-28 (collecting cases). These cases, however, do not cast any doubt on First and Stewart's interpretation because First and Stewart's interpretation does not call for recovery for purely economic losses. On the contrary, it requires a prohibition of physical access, reduction in capacity, or other deprivation of physical or functional use independent of any purely economic loss. *See supra* p. 32. Here again, the cases cited by the district court—non-binding federal caselaw applying other states' substantive laws—offered no basis to conclude that the Washington Supreme Court would find First and Stewart's interpretation unreasonable.

*Third*, only a handful of the twenty cases cited by the district court actually address the text of the term "direct physical loss." These cases are no more persuasive than the district court's analysis here. For example, in *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 513 F. Supp. 3d 623 (W.D. Pa. 2021), the Western District of Pennsylvania, after quoting definitions for "physical," "loss," and "damage," simply asserted without explanation that "the Policy language presupposes that the

44

request for coverage stems from an *actual impact* to the property's structure," *id.* at 630, and then relied on the "growing body of case law," which it concluded represents the "*more reasonable* interpretation of the policy language," *id.* (emphasis added).

But the "*more reasonable*" interpretation would not suffice under Washington law—the interpretation of the coverage trigger must be the *only reasonable interpretation to deny coverage;* otherwise the language must be construed in favor of coverage for First and Stewart. *See, e.g.*, *McLaughlin*, 476 P.3d at 1037.

## II. THE DISTRICT COURT ERRED IN NOT FINDING THE "DIRECT PHYSICAL LOSS OR DAMAGE" COVERAGE TRIGGER SATISFIED BY THE PRESENCE OF CORONAVIRUS AND COVID-19 AT THE HOTEL, WHICH, ALONG WITH THE GOVERNMENT ORDERS, CAUSED A LOSS OF ITS FUNCTIONAL USE

The district court erred when it disregarded decades of caselaw that found, *in circumstances analogous to those here*, that when the presence of a toxic/hazardous/noxious substance causes insured property to lose its functional use, that property has suffered "direct physical loss or damage."

45

**A.     The District Court Erred When It Ignored that the Presence of Coronavirus and COVID-19 at the Hotel Caused it to Lose its Functional Use**

For decades, toxic/hazardous/noxious substances in a property's indoor air, such as asbestos, ammonia, gases, fumes, and odors—have been held to cause "direct physical loss or damage" by federal and state courts alike because the presence of the substance at the property renders the policyholder's premises unfit, in whole or in part, for its intended uses. As such, they contradict the district court's holding that COVID-19 cannot cause physical loss or damage because "COVID-19 hurts people, not property." RJN-1-25. Indeed, these cases all hold that that because the presence of toxic/hazardous/noxious substances at a property harms people, they cause physical loss or damage to the property by impairing its habitability and/or functional use.

**1.     In alleging "direct physical loss or damage" to the Hotel, First and Stewart reasonably relied on the decades of caselaw finding that the presence of toxic/hazardous/noxious substances can cause physical loss or damage to property**

In determining coverage for losses to insured property caused by toxic/hazardous/noxious substances, courts have found direct physical

46

loss or damage to the property when the substance impairs the property's habitability or functional use.

Indeed, as set forth in First and Stewart's Opposition before the district court, federal courts—including several within the Ninth Circuit—applying numerous states' laws have concluded that the presence of toxic/hazardous/noxious substances can constitute physical loss or damage to property. *See, e.g.*, *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 405-06 (1st Cir. 2009) (unpleasant odor); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010) ("toxic gases" released by defective drywall), *aff'd*, 504 F. App'x 251 (4th Cir. 2013); *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-cv-01932, 2016 WL 3267247, at *4-9 (D. Or. June 7, 2016) ("poor air quality caused by the wildfire smoke"), *vacated pursuant to settlement*, No. 15-cv-01932, 2017 WL 1034203 (D. Or. Mar. 6, 2017); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co.*, No. 05-1315, 2007 WL 464715, at *4-10 (D. Or. Feb. 7, 2007) (lead contamination).[14]

---

[14] *See also Am. All. Ins. Co. v. Keleket X-Ray Corp.*, 248 F.2d 920, 925, 930 (6th Cir. 1957) (radium exposure); *In re Chinese Mfg. Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010) (release of sulfur gas from drywall).

Numerous state courts have come to the same conclusion, finding that the presence of toxic/hazardous/noxious substances caused physical loss or damage to property. *See, e.g.*, *Mellin v. N. Sec. Ins. Co., Inc.*, 115 A.3d 799, 805 (N.H. 2015) (cat urine odor from nearby property); *Sentinel Mgmt. Co. v. Aetna Cas. & Sur. Co.*, 615 N.W.2d 819, 825-26 (Minn. 2000) (presence of asbestos); *Farmers Ins. Co. of Ore. v. Trutanich*, 858 P.2d 1332, 1334-36 (Or. Ct. App. 1993) (methamphetamine odor); *Matzner v. Seaco Ins. Co.*, No. CIV. A. 96-0498-B, 1998 WL 566658, at *3-4 (Mass. Super. Aug. 12, 1998) (carbon monoxide gas).[15]

Despite this plethora of caselaw supporting First and Stewart's allegations that the presence of Coronavirus in the air and on surfaces causes physical loss or damage to property, the district court held—*as a matter of law*—that the presence of a virus (such as Coronavirus)

---

[15] *See also W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968) (gasoline fumes); *Widder v. La. Citizens Prop. Ins. Corp.*, 82 So. 3d 294, 296 (La. Ct. App. 2011) (lead-paint dust); *Bd. of Educ. v. Int'l Ins. Co.*, 720 N.E.2d 622, 624-25 (Ill. App. Ct. 1999) (asbestos); *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, 800 N.Y.S.2d 356 (N.Y. Sup. Ct. N.Y. Cnty. 2005) (noxious particles from 9/11 attack).

cannot constitute such physical loss or damage. The district court's holding was based on a crucial misinterpretation of relevant caselaw.

> **a. The district court relied on inapposite caselaw in finding that Washington courts would reject decades of caselaw finding direct physical loss due to the presence of a dangerous substance or condition on the insured premises**

The district court was unpersuaded that this Court or Washington would "accept[] the view that a 'source[ ] unnoticeable to the naked eye' . . . may cause physical loss of covered property," 1-ER-9 (relying on *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 953 F.2d 1387 (9th Cir. 1992)).

But the district court's reliance on *Benjamin Franklin* was misplaced. While *Benjamin Franklin* construed the phrase "direct physical loss," that case, decided under Oregon law, in turn, relied on the Oregon Supreme Court's decision in *Wyoming Sawmills, Inc. v. Transp. Ins. Co.*, 578 P.2d 1253 (Or. 1978). *Benjamin Franklin*, 953 F.2d at 1387. That case involved a different type of policy (i.e., a comprehensive general liability policy) and different policy language, to wit, the phrase "physical injury to . . . tangible property." *Benjamin Franklin*, 953 F.2d at 1387.

While the district court in *Benjamin Franklin* found the difference in policy types "meaningless," *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990), Washington courts (and other authorities) have repeatedly recognized the important distinction between first-party property policies and third-party liability policies. *See, e.g.*, *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co., Inc.*, 981 P.2d 872, 875 (Wash. Ct. App. 1999) (distinguishing "the aim of a comprehensive general liability policy" from first-party property policies, which are designed to "provide coverage for the insureds' damages to their own or rented property").

Moreover, the policyholder in *Benjamin Franklin* sought coverage due to the presence of asbestos *within the materials and insulation* used in the construction of the building and did not allege the asbestos had been released into the air. *Benjamin Franklin*, 793 F. Supp. at 261.

This fact—standing alone—distinguishes First and Stewart's case from *Benjamin Franklin*, as well as from other cases relied upon by the district court in this case. *Compare Port Auth. of N.Y. & N.J. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (noting that a harmful substance "in the air of a building" can cause loss, but reasoning that if

the harmful substance is merely "present in components of a structure," then there has been no "loss."), *with* 3-ER-304 ¶ 15; 3-ER-305 ¶ 20; 3-ER-309-10 ¶¶ 31, 34; 3-ER-311 ¶ 38 (alleging the presence of Coronavirus in the air at the Hotel, rendering the property "unsafe and unfit for its intended uses at its normal capacities"). Accordingly, the district court's finding that Washington courts would not adopt this long-standing theory of coverage was in error.

> **b. The district court improperly interpreted the decades of caselaw cited by First and Stewart as requiring an "all-encompassing loss" of the insured property**

With respect to its determination that COVID-19 was distinguishable from other toxic substances, the district court chose to follow a line of out-of-state federal trial court cases applying the laws of different jurisdictions, holding that "the majority of courts looking at this question have held COVID-19 does not cause the sort of all-encompassing loss *Port Authority* equated with physical damage." 1-ER-10-11 ("Plaintiff has not demonstrated a contamination rendering the property's function 'nearly eliminated or destroyed, or the structure . . . made useless or uninhabitable. . . .") (citing *Port Auth.*, 311 F.3d at 236).

But the district court erred. The cases before the district court (and reiterated, *supra*) did not impose this "all-encompassing loss" standard in the context of the presence of toxic/hazardous/noxious substances. Nor did the courts focus on whether the loss was "permanent" or "temporary."

Indeed, many of these courts held that—*despite the policyholder's ability to have a limited use of the property*—there was still a "direct physical loss" to the property. *See, e.g.*, *Mellin*, 115 A.3d at 805; *Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32, at *9-10 (Ind. Super. Ct. Madison Cnty. Nov. 30, 2007) (collecting cases); *Stack Metallurgical*, 2007 WL 464715; *Schlamm*, 800 N.Y.S.3d at 356; *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 373 (E.D. Va. 2020).

Accordingly, the district court's finding that Coronavirus cannot—as a matter of law—constitute physical loss or damage to property because the virus differs from "the hazardous airborne substances on which this line of cases focuses" was an error. 1-ER-10.

52

2. **The court's finding that First and Stewart must allege an "all-encompassing loss," cannot be reconciled with the Policies' explicit coverage for a "slowdown" of First and Stewart's operations and constitutes reversible error**

The district court's requirement for a *total* or *complete* loss of the property required that, as a precondition for the Policies' Business Interruption Coverage, the property's business operations must be shut down. That, however, nullifies the Policies' broad Business Interruption Coverage for a mere "slowdown" of First and Stewart's business activities. *See* 2-ER-98.[16]

Indeed, as First and Stewart argued below—but the district court ignored—the Policies expressly cover First and Stewart's loss of business income sustained "due to the necessary Suspension of" its operations. *See* 2-ER-43. The Policies define "Suspension" to include

---

[16] Even still, and as discussed *supra* pp. 11-12, First and Stewart *did* allege that its Hotel was completely closed from March 19, 2020 to August 11, 2020 as a result of the presence of Coronavirus. *See* 3-ER-313 ¶ 45; 3-ER-333 ¶ 110 (alleging that First and Stewart closed its Hotel due to the loss or damage caused by Coronavirus and COVID-19). Indeed, First and Stewart alleged that its Hotel was closed *prior to the issuance of the Government shutdown orders. Compare* 3-ER-313 ¶ 45, *with* 3-ER-336 ¶¶ 118-19. The district court's failure to credit this allegation in its analysis is another basis for reversal (discussed *infra* Part III).

53

"the *slowdown or* cessation of [] operations, *or that a part or* all of the described premises is rendered untenable [sic]." 2-ER-98 (emphasis added). Simply put, the Policies provide Business Interruption Coverage for operating while impaired by physical loss or damage and do not require a complete shutdown of operations.

Courts have recognized the importance of the definition of "suspension" in first-party property policies, reasoning that where, as here, a policy provides coverage for a "slowdown" of the policyholder's operations, a *partial interruption of business* is sufficient to trigger business interruption coverage *See Nat'l Mfg. Co., Inc. v. Citizens Ins. Co. of Am.*, No. 13-314, 2016 WL 7491805, at *14 (D.N.J. Dec. 30, 2016) (policyholder entitled to coverage where its operations continued, albeit at a reduced level of productivity).

The same result is warranted here. The district court's holding that the premises be *completely* uninhabitable to trigger coverage (i.e., that no staff could even enter the Hotel) renders as meaningless surplusage the Policies' slowdown coverage. Even when the Hotel was not completely closed (as it was for several months), it suffered a "slowdown" in its business activities due to the presence of Coronavirus

54

on its premises—including operating at reduced capacity, among other things. *See* 3-ER-304-05 ¶¶ 15, 17; 3-ER-311-12 ¶ 38, 40; 3-ER-338 ¶ 124.

Thus, the district court's holding that First and Stewart had to allege an "all-encompassing" and permanent loss of its property nullified and rendered illusory First and Stewart's coverage for a "slowdown" of its operations—a result proscribed by Washington law. *See, e.g., Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 727 (Wash. 1994).

### 3. The court erred when it refused to apply the reasoning of the toxic/hazardous/noxious substance cases to Coronavirus and COVID-19

In refusing to follow the decades of toxic/hazardous/noxious substance caselaw finding physical loss or damage, the district court claimed that "courts across the country examining COVID-19 . . . have nearly uniformly rejected the comparison" to the toxic/hazardous/noxious substance line of cases. This claim was incorrect. 1-ER-9.

To the contrary, multiple state courts across the country have widely applied the holdings of the toxic/hazardous/noxious substance

caselaw to policyholders' Coronavirus and COVID-19 business interruption claims alleging, just as the Complaint does, the presence of the virus on premises. *See, e.g., Nevada Property 1 LLC v. Factory Mut. Ins. Co.*, No. A-21-831049-B (Nev. Dist. Ct. Clark Cnty. Aug. 16, 2021); *P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London*, No. 20STCV17169, 2021 WL 818659, at *1 (Cal. Super. Ct. L.A. Cnty. Feb. 4, 2021); *Boardwalk Ventures CA, LLC v. Century-Nat'l Ins. Co., et al.*, No. 20STCV27359, 2021 WL 1215892, at *3-4 (Cal. Super. Ct. L.A. Cnty. Mar. 18, 2021); *Goodwill Indus. of Orange Cnty., Cal. v. Phila. Indem. Ins. Co.*, No. 30-2020-01169032-CU-IC-CXC, 2021 WL 476268, at *2-3 (Cal. Super. Ct. Orange Cnty. Jan. 28, 2021); *JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*, No. A-20-816628-B, 2020 WL 7190023, at *2-4 (Nev. Dist. Ct. Clark Cnty. Nov. 30, 2020); *Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Co., et al.*, No. 217-2020-CV-00309, 2021 WL 4029204, at *10-11 (N.H. Super. Ct. Merrimack Cnty. June 15, 2021); *Brown's Gym, Inc. v. Cincinnati Ins. Co., et al.*, No. 20 CV 3113, 2021 WL 3036545, at *1-2, *15-20 (Pa. Ct. Comm. Pl. Lackawanna Cnty. July 13, 2021); *Life Time, Inc., et al. v. Zurich Am. Ins. Co.*, No. 27-CV-20-10599, 2021 WL

4768307, at *6 (Minn. Dist. Ct. Hennepin Cnty. Oct. 7, 2021); *Muscogee (Creek) Nation d/b/a Muscogee (Creek) Nation Casinos et al. v. Lexington Insurance Co., et al.*, No. CJ-20-159 (Okla. Dist. Ct. Muskogee Cnty. June 9, 2021); *JDS Constr. Grp. LLC et al. v. Continental Cas. Co.*, Case No. 2020 CH 5678, 3-4 (Ill. Cir. Ct. Cook Cnty. Oct. 25, 2021).

Federal courts have reached the same conclusion, finding potential coverage where, as here, the policyholder plausibly alleged that Coronavirus and COVID-19 caused a loss of the insured property's functional use. *See Novant Health Inc. v. Am. Guar. & Liab. Ins. Co.*, -- F. Supp. 3d --, 2021 WL 4340006, at *2-3 (M.D.N.C. 2021); *Serendipitous, LLC/Melt, et al. v. Cincinnati Ins. Co.*, -- F. Supp. 3d --, 2021 WL 1816960, at *5 (N.D. Ala. 2021); *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565, 568-69 (E.D. Tex. May 5, 2021); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800-801 (W.D. Mo. 2020).[17]

This result makes sense. Accordingly, both this Court and the Eighth Circuit have recognized that the presence of Coronavirus on

---

[17] *See also Kingray Inc. v. Farmers Grp. Inc.*, 523 F. Supp. 3d 1163, 1174 (C.D. Cal. 2021).

insured property could trigger coverage under an all-risk policy. In *Selane Prods., Inc. v. Cont'l Cas. Co.*, No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021), this Court, applying California law, found that there was no coverage because the policyholder "*did not allege that SARS-CoV-2 was present on its property to cause any damage.*" *Id.*, at *1 (emphasis added), suggesting that if it had, coverage would have been triggered.

Similarly, in *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021), the Eighth Circuit recognized that "*physical contamination*" of insured property may trigger coverage under a property policy. *Id.* at 1144 (emphasis added). This Court adopted and quoted this passage from *Oral Surgeons* verbatim in *Mudpie, Inc. v. Travelers Cas. Co. Ins. Co. of Am.*, 15 F.4th 885, 892-93 (9th Cir. 2021), when it held there was no coverage in the orders-only case before it under California law—indicating that, just as in *Selane*, which it decided the same day as *Mudpie*, the presence of Coronavirus on premises can cause physical loss or damage and trigger coverage.

The Complaint fits squarely within these cases because it alleges a direct invasion of the Hotel by Coronavirus and COVID-19, causing

direct physical loss or damage. This triggered the Policies. The district court's failure to recognize that is reversible error.

**4.   The district court misinterpreted other provisions in the Policies, and likewise misconstrued First and Stewart's argument that Coronavirus and COVID-19 are "covered causes of loss"**

**a.   The district court misinterpreted the Policies' carve out of air from the scope of "covered property" as a policy exclusion for loss arising from damage to the air**

The district court misconstrued the Policies' "Property Not Insured" provision by its finding, *sua sponte*, that because air is not covered property, loss or damage arising from its alteration cannot constitute "direct physical loss or damage," 1-ER-8 ("To make this even more explicit, the [P]olicies exclude air as covered property."). The court improperly treated the provision as a policy exclusion from coverage rather than what it is—a provision that simply states that the air itself is not covered property, which is no obstacle to coverage here.

First and Stewart is not seeking recovery for damage to air. It is seeking recovery because the presence of Coronavirus and COVID-19 at the insured premises, both in the air and on surfaces, damaged the *Hotel* (i.e., the building, which is indisputably the "covered property")

and created a dangerous condition that deprived First and Stewart of the functional use of the Hotel, thus causing "direct physical loss or damage" to the Hotel. *See* 3-ER-304-05 ¶ 15, 18-19; 3-ER-311-12 ¶ 38-39.

In focusing solely on the Policies' purported exclusion of "air" from "Covered Property," and ignoring the impact on the premises as a whole and on the loss of functional use of the premises because of the presence of Coronavirus and COVID-19, the district court misconstrued the Policies and disregarded the Complaint's allegations. 3-ER-309-10 ¶ 31; 3-ER-312 ¶ 43; 3-ER-323 ¶ 77; 3-ER-326-27 ¶¶ 81-85. Coverage under the Policies is triggered by a "covered cause of loss"; whether or not certain types of property are insured is a separate question from trigger of coverage and one not before the court given that it is undisputed that the Hotel is insured property.

Indeed, none of the toxic/hazardous/noxious substance cases discussed herein hinged on whether "air" was "covered property" under the policy. Rather, they all found that the presence of the substance on/in the premises (usually in the indoor air) rendered the covered property (i.e., the building) unfit/unsafe, in whole or in part, for its

intended use. *See, e.g.*, *Elegant Massage*, 506 F. Supp. 3d at 373 (finding that the phrase "direct physical loss' has been subject to a spectrum of interpretations" including "*impacts from intangible noxious gases or toxic air particles that make the property* uninhabitable *or dangerous to use*.") (emphasis added).

To the extent the provision is ambiguous, First and Stewart is entitled to discovery on the provision's intent. Moreover, First and Stewart is entitled to an inference in its favor and supporting coverage. This the district court failed to do.

Finally, if FFIC intended the "Property Not Insured" provision to exclude the Hotel's indoor air, as the court construed it to mean, then FFIC, part of one of the world's largest insurance carriers, would have advanced that argument in its MJOP. That it did not is telling.

Accordingly, this part of the court's holding was reversible error.

> **b.  The district court misunderstood First and Stewart's argument that the Policies recognized losses caused by Communicable Disease were a "Covered Cause of Loss"**

In finding that the Policies' Communicable Disease Coverage did not apply because there was no direct physical loss or damage, 1-ER-7, the district court misconstrued the significance of this coverage in the

Policies. That is, the presence of Communicable Disease Coverage in the Policies is an express recognition that virus is a "covered cause of loss" that can satisfy the "direct physical loss or damage" coverage trigger under the Business Interruption Coverage. *See* 2-ER-58-59, 89.

The Policies' coverage provisions (e.g., Business Interruption Coverage) are triggered by physical loss of or damage to property "caused by or resulting from a *covered cause of loss*." 2-ER-43. The Policies broadly define "covered cause of loss" as "risks of direct physical loss or damage not excluded or limited in this Coverage Form." 2-ER-89.

The Communicable Disease Coverage provides coverage for "costs incurred to: . . . [r]epair or rebuild Property Insured *which has been damaged or destroyed by the communicable disease*." 2-ER-58-59 (emphasis added). "Communicable disease" is defined as including "*any disease . . . or virus* that may be transmitted directly or as including from human or animal to a human." 2-ER-89 (emphasis added). The Policies thus *expressly contemplate* that "any disease . . . or virus" can "damage or destroy" property. Thus, the district court's central holding—that a virus such as Coronavirus cannot cause direct physical loss or damage—contradicts the Policies' language and renders it

62

superfluous in violation of Washington law. *Boeing Co.*, 784 P.2d at 521 (Callow, C.J., dissenting).

The court's decision completely ignored several relevant decisions, cited in First and Stewart's brief, providing that an affirmative grant of coverage for a specific peril renders that peril a "covered cause of loss" under a commercial property policy. *See, e.g.*, *Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So. 3d 74, 75-76 (Fla. Dist. Ct. App. 2012) (construing the term "covered cause of loss" as including "collapse" where collapse was included under the "Additional Coverages" section of the policy); *Trautman v. Union Ins. Co.*, No. 5-09-34, 2010 WL 1267217, at *5 (Ohio Ct. App. Apr. 5, 2010).

Indeed, recent COVID-19 insurance decisions have adopted this argument where, as here, the policyholder alleged the presence of virus on its premises, and the policy provided an additional coverage for "communicable disease." *See, e.g.*, *Cinemark Holdings*, 500 F. Supp. 3d at 569 (finding coverage where policyholder alleged that "COVID-19 was actually present and actually damaged the property by changing the content of the air," where policy "expressly covers loss and damage caused by 'communicable disease'").

63

Accordingly, the district court's failure to consider the Policies'
terms and the caselaw in support of First and Stewart's argument was
reversible error.

### B. The District Court Erred When It Found that Shutdown Orders Cannot Cause "Direct Physical Loss or Damage" to the Hotel

The district court also erred when it determined that
Washington's shutdown orders did not trigger coverage under the
Policies. 1-ER-11.

Contrary to the district court's decision, courts around the
country—including multiple Washington trial courts—have found the
existence of "direct physical loss" from government-mandated closures
where, as here, those orders were issued in response to the dangerous
property conditions caused by Coronavirus and COVID-19 and caused a
loss of the insured property's functional use.

In *Perry St.,* the court found that the policyholder's proffered
interpretation of "direct physical loss" was reasonable and, thus,
granted partial summary judgment to the policyholder for losses
suffered as a result of government-mandated closures. 2020 WL
7258116, at *3.

The *Perry St.* court was not alone in its holding under Washington law, as two other trial courts have come to the same conclusion, reasoning that "to interpret the undefined phrase 'all risks of physical loss or damage' as strictly requiring physical alteration, damage or destruction" would render the term "physical loss" superfluous. *See Snoqualmie*, 2021 WL 4098938, at *5; *Hill and Stout*, 2020 WL 6784271, at *3; *but cf. Hill and Stout*, 2021 WL 4189778, at *3 (subsequent conflicting trial court ruling).

Various other state and federal courts have come to the same conclusion, reasoning that the government orders themselves restricted the *physical use* of policyholders' premises, causing their direct physical loss, triggering coverage. *See, e.g., In re: Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729, 742 (N.D. Ill. Feb. 22, 2021); *P.F. Chang's*, 2021 WL 818659, at *1; *Seifert v. IMT Ins. Co.*, -- F. Supp. 3d --, 2021 WL 2228158, at *5 (D. Minn. 2021). At a minimum, these cases set out a reasonable interpretation of "direct physical loss or damage" that must be accepted in favor of coverage.

The district court's reliance on out-of-state authorities, such as *Star Buick GMC v. Sentry Ins. Grp.*, No. 20-cv-03023, 2021 WL 2134289

(E.D. Pa. May 26, 2021) and *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-2171, 2021 WL 1945712 (E.D. Pa. May 14, 2021), was misplaced. *See* 1-ER-11 (collecting cases). Both of these cases—applying Pennsylvania law—construed the policy's "period of restoration" provision as imposing a limitation on coverage for the policyholder's claims. *See, e.g.*, *Star Buick*, 2021 WL 2134289, at *6; *Hair Studio 1208*, 2021 WL 1945712, at *9.

But the Period of Restoration provision does not impose any limitation on coverage. Instead, the provision is merely a *time limitation* used to calculate the quantum of covered loss when the damage is of a type that can be repaired—it does not modify or condition trigger of coverage in the first instance. Many courts interpreting this provision have found as much, holding that this provision "describes a *time* period during which loss of business income will be covered, rather than an explicit definition of coverage." *In re Soc'y*, 521 F. Supp. 3d at 742; *accord K.C. Hopps, Ltd. v. Cincinnati Ins.*

66

*Co., Inc.*, No. 20-cv-00437-SRB, 2021 WL 4302834, at *7 (W.D. Mo.
Sept. 21, 2021).[18]

Accordingly, the district court's holding that government
shutdown orders did not constitute a "direct physical loss" of the Hotel
was incorrect as a matter of law and is grounds for reversal.

## III. THE DISTRICT COURT FAILED TO ACCEPT THE PLAUSIBLE, WELL-PLED ALLEGATIONS IN THE COMPLAINT AS TRUE AND MADE FACTUAL FINDINGS INAPPROPRIATE ON A MJOP

The district court erred when it departed from the axiomatic
principles governing the review of a defendant's motion to dismiss
under FRCP 12(b)(6)—which applies here to a MJOP. Rather than
accepting the truth of the Complaint's factual allegations—and leaving
their proof to scientific experts during discovery—the district court
rejected those allegations (despite being supported by dozens of peer-
reviewed scientific studies); failed to draw all reasonable inferences
from those factual allegations in First and Stewart's favor; and made
factual findings of its own, all in defiance of the U.S. Supreme Court
cases that govern the resolution of a motion to dismiss/MJOP. These

---

[18] A jury ultimately rendered a verdict for the insurer but the
period of restoration issue was not before the jury.

stark departures from the court's limited review of the Complaint's allegations in a MJOP constitute reversible error.

### A. The District Court Erred Because It Failed to Accept as True the Complaint's Factual Allegations and to Draw all Reasonable Inferences in First and Stewart's Favor

To survive a motion to dismiss/MJOP, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019). That showing merely requires the complaint to contain enough factual material "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In analyzing the sufficiency of a complaint, the reviewing court must accept as true all factual allegations that are not legal conclusions or "[t]hreadbare recitals of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and it must construe them in the light most favorable to the plaintiff. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021). That is true whether or not the Court believes the allegations, finds them incredible or believes that proof of the facts is improbable. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

1057 (9th Cir. 2008). That is because the plausibility standard is not akin to a "probability requirement," *Iqbal*, 556 U.S. at 678, and because "a district court ruling on a motion to dismiss is not sitting as a trier of fact." *In re Gilead Scis.*, 536 F.3d at 1057.

Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556). To that end, a reviewing court is also not permitted "to forecast a plaintiff's likelihood of success on the merits." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011).

Had the court applied these principles, it would have accepted as true the Complaint's richly detailed, plausible, factual/scientific allegations, supported by dozens of peer-reviewing scientific studies cited by and incorporated into the Complaint, including the following:

- Coronavirus, which was present at the Hotel, 3-ER-330-31 ¶¶ 99-103, and causes COVID-19, renders indoor air, objects, surfaces, and other areas exposed to the virus dangerous and potentially fatal, 3-ER-309-10 ¶ 31; 3-ER-319-27 ¶ 68-69, 71-86;

- Coronavirus actually physically alters the air, thereby damaging the property, 3-ER-304-05 ¶¶ 14-15, 19; 3-ER-320-27 ¶ 71-86,; 3-ER-335 ¶ 117, as supported by *over three dozen* recent peer-reviewed scientific studies demonstrating the

69

physical loss or damage caused by Coronavirus, 3-ER-317-30 ¶¶ 62-96, nn.29-83;

- Coronavirus can remain airborne "for indefinite periods unless removed by air currents or dilution ventilation," 3-ER-321-22 ¶¶ 73-75, although ventilation systems can also be transmission vectors by spreading the airborne particles up to 183 feet from an infected person, 3-ER-322 ¶ 74;

- removing airborne Coronavirus particles *cannot be achieved by routine surface cleaning*; surface cleaning may in fact cause virus particles to become airborne and spread more widely, 3-ER-304-05 ¶¶ 15, 20; 3-ER-310-12 ¶¶ 35-39; 3-ER-327-30 ¶¶ 87-98;

- decontamination measures include making changes to air filtration systems, though the only surefire method is to shutter the property, as no amount of cleaning can remove Coronavirus from the air or prevent reintroduction by an infected person, 3-ER-304 ¶ 15; 3-ER-329-30 ¶¶ 94, 97-98;

- Coronavirus fomites (inanimate objects that transfer disease to a new host after contamination, such as plastics, glass, metals, and fabrics that are prevalent at the Hotel and have been documented as fomites) can remain infectious for hours or even days after exposure, 3-ER-323-25 ¶¶ 77, 79-80; 3-ER-329 ¶¶ 94-95;

- the CDC has found little evidence to suggest that disinfectants can prevent the transmission of Coronavirus and that Coronavirus is "much more resilient to cleaning than other respiratory viruses," 3-ER-305 ¶ 20; 3-ER-327-30 ¶¶ 87-98; and

Ignoring its obligations on a MJOP, the district court rejected these allegations, instead concluding as a matter of law without the

benefit of discovery that "COVID-19 does not cause physical loss or damage." 1-ER-5.

Moreover, the district court made its own factual findings as follows:

- "'coronavirus poses a temporary health hazard to the occupants of a building, whose threat to human health dissipates with the passage of time,'" 1-ER-10;

- "COVID-19 'can be disinfected and cleaned' without resort to abatement efforts akin to asbestos[,]" *id.*;

- "the presence of COVID-19 on Plaintiff's property did not cause damage to the property necessitating rehabilitation or restoration efforts similar to those required to abate asbestos or remove poisonous fumes which permeate property[,]" 1-ER-11; and

- "all that is required for Plaintiff to return to full working order is for the Governor to lift the decrees and restrictions[,]" *id.*

These factual findings are directly contrary to the allegations of the Complaint, including Coronavirus is persistent, it does not dissipate, it cannot be disinfected and cleaned, and its presence required the closing of the Hotel to prevent infection and permitted re-opening only with severe restrictions. Simply put, the court exceeded its limited role in reviewing the Complaint's factual allegations in a

MJOP and made findings of fact that are the province of scientific experts and, ultimately, a jury.

As one court recently noted when confronted with virtually identical arguments by an insurance carrier:

> Defendant's counsel argues that it does not matter what Plaintiffs alleged in their complaint because a virus like SARS-CoV-2 can never trigger coverage since it can just be wiped off. How do I know that? . . . Hard to imagine that emerging 'facts' about a *novel* coronavirus would satisfy that standard. There is far from universal agreement on how the virus attaches to surfaces and the effectiveness of efforts to remove the virus. More importantly, it is procedurally improper to introduce facts from outside the complaint in a motion to dismiss . . . . Indeed, the complaint alleges that '[m]erely cleaning surfaces may reduce but does not altogether eliminate the risk of transmission' and that 'disinfection is temporary at best.' On a motion to dismiss, that allegation must be accepted as true. Introducing a 'fact' that contradicts an allegation of a complaint is never a basis for dismissal. Resolving such a fact conflict is what trials are for.

*JDS Constr.*, No. 2020 CH 5678, at 3-4 (citations omitted).

Other courts have come to the same conclusion in COVID-19 insurance cases, holding that the effects Coronavirus has on property

present "questions better evaluated on a developed factual record." *Novant Health*, 2021 WL 4340006, at *3.

In dismissing the Complaint on a MJOP, without an evidentiary record, without affording the parties the opportunity for oral argument, without accepting the allegations as true, and without drawing inferences in the Plaintiff's favor, the district court ignored the bedrock principles enunciated in *Twombly* and *Iqbal*. An affirmance here would violate Supreme Court precedent and transform pleading standards throughout the federal courts of this Circuit. First and Stewart's obligation was simply to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" that its claim was covered. *Twombly*, 550 U.S. at 556. The Complaint's allegations amply satisfied this standard.

## IV.   THIS COURT SHOULD EXERCISE ITS SOUND DISCRETION AND CERTIFY FIRST AND STEWART'S CONTROLLING, UNSETTLED STATE LAW QUESTIONS TO THE WASHINGTON SUPREME COURT

The Complaint raises unsettled questions of state law. If this Court is uncertain as to how the Washington Supreme Court would interpret the key coverage trigger language, "direct physical loss or damage," then this Court may certify that question to the Washington

73

Supreme Court. On October 18, 2021, First and Stewart filed a motion seeking such certification. Dkt. No. 11. As set forth in that motion, the prerequisites for certification are satisfied, and there are compelling reasons for exercising the Court's discretion to certify in order to dispel any uncertainty over the term "direct physical loss or damage."

## CONCLUSION

The judgment below should be vacated, the order dismissing First and Stewart's claims reversed, and this case remanded for further proceedings on those claims.

Date: November 8, 2021

<u>/s/ Christopher S. Marks</u>

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Joseph D. Jean, Esq.
Scott D. Greenspan, Esq.
Benjamin D. Tievsky, Esq.
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000

TANENBAUM KEALE, LLP
Christopher S. Marks, Esq.
Malika Johnson, Esq.
Alice C. Serko, Esq.
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
Telephone: (206) 889-5150

*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** _21-35637_____

I am the attorney or self-represented party.

**This brief contains_____13,999_____words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　　[ ] it is a joint brief submitted by separately represented parties;


　　[ ] a party or parties are filing a single brief in response to multiple briefs; or [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**_ */s/ Christopher S. Marks*　　**Date**_ November 8, 2021

75

## STATEMENT OF RELATED CASES

I am the attorney for Appellants in this action. Pursuant to Circuit Rule 28-2.6, I state the following:

Although there are a number of cases involving COVID-19 business interruption claims pending before the Court, only the following case raises claims under the same Allianz policy form:

- *ES Restaurant Group, Inc., et al v. Fireman's Fund Ins. Co, et al.* (Case No. 21-35646)

In addition, the Western District of Washington relied on its decision dismissing the following consolidated cases that are now on appeal:

- *Jennifer Nguyen, et al v. Travelers Cas. Ins., et al.* (Case No. 21-35496)

- *Wade Marler, et al v. Aspen American Ins. Co.* (Case No. 21-35492)

- *Pacific Endodontics, PS, et al v. Ohio Cas. Ins. Co., et al.* (Case No. 21-35500)

- *Seattle Bakery, LLC, et al v. Sentinel Ins. Co. Ltd, et al.* (Case No. 21-35479)

76

- *Mark Germack v. The Dentists Ins. Co.* (Case No. 21-35491)

- *Kara McCulloch, DMD, MSD, PLLC, et al v. Valley Forge Ins. Co., et al.* (Case No. 21-35520)

- *Aspen Lodging Group LLC, et al., and Vancouver Clinic Ins., PS v. Affiliated FM Ins. Co.* (Case No. 21-35472)

- *La Cocina de Oaxaca, LLC v. Tri-State Ins. Co.* (Case No. 21-35493)

Date: November 8, 2021

/s/ Christopher S. Marks

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Joseph D. Jean, Esq.
Scott D. Greenspan, Esq.
Benjamin D. Tievsky, Esq.
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000

TANENBAUM KEALE, LLP
Christopher S. Marks, Esq.
Malika Johnson, Esq.
Alice C. Serko, Esq.
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
Telephone: (206) 889-5150

*Attorneys for Plaintiff-Appellant*

77

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system:

Date: November 8, 2021

/s/ Christopher S. Marks

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Joseph D. Jean, Esq.
Scott D. Greenspan, Esq.
Benjamin D. Tievsky, Esq.
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000

TANENBAUM KEALE, LLP
Christopher S. Marks, Esq.
Malika Johnson, Esq.
Alice C. Serko, Esq.
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
Telephone: (206) 889-5150

*Attorneys for Plaintiff-Appellant*