No. 21-35637

# United States Court of Appeals
# for the Ninth Circuit

FIRST AND STEWART HOTEL OWNER, LLC,

Plaintiff – Appellant,

v.

FIREMAN'S FUND INSURANCE COMPANY,

Defendant – Appellee.

_____

On appeal from the United States District Court
for the Western District of Washington, No. 2:21-cv-00344-BJR
The Honorable Barbara J. Rothstein, Judge Presiding
_____

## APPELLEE'S ANSWERING BRIEF
_____

Anthony Todaro
Joseph Davison
**DLA Piper LLP (US)**
701 Fifth Ave, Suite 6900
Seattle, Washington 98104
(206) 839-4800
anthony.todaro@dlapiper.com
joseph.davison@dlapiper.com

Brett Solberg
**DLA Piper LLP (US)**
1000 Louisiana, Suite 2800
Houston, TX 77002
(713) 425-8482
brett.solberg@dlapiper.com

**CORPORATE DISCLOSURE STATEMENT**

Fireman's Fund Insurance Company's direct and indirect corporate parents are Allianz Global Risks US Insurance Company, Allianz of America, Inc., AGCS International Holding B.V., and Allianz SE.

Allianz SE is the only publicly held company that holds more than 10% of Fireman's Fund Insurance Company's stock.

# TABLE OF CONTENTS

**Page**

I.    Introduction..................................................................1

II.   Statement on First and Stewart's Issues ..............................1

III.  Statement of the Case ......................................................2

    A.    First and Stewart's allegations. ...............................2

    B.    The relevant Policy provisions.................................5

IV.  Summary of the Argument ..............................................11

V.   Argument and Authorities ...............................................13

    A.    Applicable legal standards. ....................................13

        1.   De novo review. ..........................................13

        2.   The Policy must be construed as a matter of law. ....................14

        3.   First and Stewart bore the burden to plead facts demonstrating coverage. ...................................15

    B.    First and Stewart's allegations do not plausibly establish direct physical loss or damage to property...................................16

        1.   Direct physical loss or damage requires "actual" or "discernable" physical damage or that property become "physically lost."......................................16

            a.   The "period of restoration" reinforces the conclusion that any loss or damage must be "physical.".................18

        2.   First and Stewart's well-pleaded facts do not establish direct physical loss or damage. ..........................................21

            a.   First and Stewart has failed to identify direct physical loss or damage. ...............................................21

            b.   Courts nationwide have dismissed the same allegations under the same and materially similar Fireman's Fund insurance contract. ........................................22

            c.   Courts nationwide have overwhelmingly rejected allegations like First and Stewart's................................25

        3.   First and Stewart's arguments to the contrary are unavailing. .26

a.  Temporary loss of patronage is not direct physical loss or damage. ...........................................................27

b.  The presence of COVID-19 does not cause direct physical loss or damage to property. ...........................34

    (1)  Risk of infection to humans is not property damage...................................................................35

    (2)  Property that merely needs to be cleaned has not been damaged because cleaning is not repair, rebuilding, or restoration. .....................................38

c.  First and Stewart's communicable-disease argument is irrelevant. .......................................................40

d.  The language is not ambiguous. .....................................41

e.  First and Stewart's remaining arguments are meritless..41

C.  There are other, independent grounds to affirm on certain coverages. ..........................................................................43

    1.  There is no Civil Authority coverage here because there is no causal link and because no civil authority has "prohibited" access to the hotel. ........................................................43

        a.  There is no causal link. ................................................43

        b.  Access was not prohibited. ...........................................44

    2.  Business Access coverage does not apply because there is no causal link and because access to the hotel was not impaired or obstructed. ...........................................................45

        a.  No causal link. .............................................................45

        b.  Access was not impaired or obstructed. ........................45

    3.  Communicable Disease coverage does not apply because there was no communicable disease event and because First and Stewart alleges no covered damages.................................46

        a.  No communicable disease event. ..................................46

        b.  No covered damages.....................................................47

D.  The Policy's virus exclusion bars all loss or damage caused by a virus. .....................................................................................47

VI.  Conclusion ........................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100 Orchard St. LLC v. Travelers Indem. Ins. Co. of Am.*,
    No. 20-CV-8452 (JMF), 2021 WL 2333244 (S.D.N.Y. June 8,
    2021) .........................................................................................................35, 36

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
    67 F. App'x 248, 2003 WL 21145725 (5th Cir. 2003)......................................44

*Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*,
    530 F. Supp. 3d. 74 (D. Mass. 2021).................................................................23

*Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.*,
    SCV-268104, Slip. Op. (Sup. Ct. Ca. Sept. 8, 2021) ........................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................12, 13, 14, 36, 40

*Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*,
    No. 2:20-cv-171, 2021 WL 1976404 (D. Vt. May 18, 2021)............................35

*Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*,
    No. RDB-20-2892, 2021 WL 1400891 (D. Md. Apr. 14, 2021).......................39

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................12, 13, 14, 36, 37

*Bluegrass Oral Health Center, PLLC v. Cincinnati Ins. Co.*,
    No. 1:20-cv-00120, 2021 WL 1069038 (W.D. Ky. Mar. 18, 2021)..................33

*Boffo Cinemas LLC v. Fireman's Fund Ins. Co.*,
    37-2021-5179, Slip Op. (Sup. Ct. Ca. Aug. 27, 2021) ......................................22

*Borton & Sons, Inc. v. Travelers Ins. Co.*,
    99 Wn. App. 1010, 2000 WL 60028 (2000) (unpublished) ..............................18

*Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*,
    CV2011771SDWLDW, 2020 WL 7338081 (D.N.J. Dec. 14, 2020)...........24, 48

iv

*Bridal Expressions LLC v. Owners Ins. Co.*,
  __ F. 4th __, No. 21-3381, 2021 WL 5575753 (6th Cir. Nov. 30,
  2021) (per curiam) ............................................................... 29

*Churchill v. Factory Mut. Ins. Co.*,
  234 F. Supp. 2d 1182 (W.D. Wash. 2002) ......................................... 15

*Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*,
  No. 1:20-cv-02512, 2021 WL 3187521 (S.D. Ind. July 27, 2021) .............. 23, 34

*Cook v. Allstate Ins. Co.*,
  No. 48D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32 (Ind.
  Super. Nov. 30, 2007) ............................................................ 33

*Crescent Hotels & Resorts, LLC v. Zurich Am. Ins. Co. and Fireman's
  Fund Ins. Co.*,
  No. 2021-02974 (Va. Cir. Ct. Fairfax County July 2, 2021) ..................... 23

*DeHoog v. Anheuser-Busch InBev SA/NV*,
  899 F.3d 758 (9th Cir. 2018) ..................................................... 14

*Dickie Brennan & Co., Inc. v. Lexington Insurance Co.*,
  636 F.3d 683 (5th Cir. 2011) ............................................... 43, 44, 45

*Dino Drop, Inc. v. Cincinnati Ins. Co.*,
  2021 WL 2529817 (E.D. Mich. June 21, 2021) ............................... 36, 40

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
  506 F. Supp. 3d 360 (E.D. Va. 2020) ............................................. 34

*Equity Planning Corp. v. Westfield Ins. Co.*,
  522 F. Supp. 3d 308 (N.D. Ohio 2021) ............................................ 33

*First & Stewart Hotel Owner, LLC v. Fireman's Fund Ins. Co.*,
  2:21-CV-00344-BJR, 2021 WL 3109724 (W.D. Wash. July 22,
  2021) ...................................................................... 5, 22, 28

*Fleming v. Pickard*,
  581 F.3d 922 (9th Cir. 2009) ..................................................... 13

*Fujii v. State Farm Fire & Cas. Co.*,
  71 Wn. App. 248, 249 (1993) ................................................. 17, 18

*George Gordon Enterps., Inc. v. AGCS Marine Ins. Co.*,
  No. 21STCV02950, Slip Op. (Cal. Super. Ct. L.A. Cnty. June 1,
  2021) ...........................................................................................38

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
  __ Fed. Appx. __, 2021 WL 3870697 (11th Cir. Aug. 31, 2021)
  (per curiam)...........................................................................26, 34

*Gregg v. Haw. Dep't of Pub. Safety*,
  870 F.3d 883 (9th Cir. 2017) ...........................................................13

*Hampshire House Corp. v. Fireman's Fund Ins. Co.*,
  CV 20-11409-FDS, 2021 WL 3812535 (D. Mass. Aug. 26, 2021) .................23

*Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*,
  2021 WL 4189778 (Wash. Super. Ct. King Cnty. Sept. 9, 2021) ..........30, 31, 41

*Island Hotel Properties, Inc. v. Fireman's Fund Ins. Co.*,
  512 F. Supp. 3d 1323 (S.D. Fla. Jan. 11, 2021)...................................24

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
  __ F. Supp. 3d __, No. 1:20-cv-1136, 2021 WL 1600831
  (W.D.N.Y. Apr. 22, 2021) .................................................................39

*Lafayette Bone & Joint Clinic*,
  2021 WL 1740466 ...........................................................................44

*Malaube, LLC v. Greenwich Ins. Co.*,
  No. 20-22615-Civ, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020)....................24

*Mama Jo's Inc. v. Sparta Ins. Co.*,
  823 F. App'x 868 (11th Cir. 2020) ....................................................38

*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*,
  20SMCV00952, Slip Op. (Sup. Ct. Ca. Oct. 5, 2021).................................22, 48

*McMahan & Baker, Inc. v. Continental Cas. Co. (CNA)*,
  68 Wn. App. 573 (1993) ...................................................................15

*McQuillion v. Schwarzenegger*,
  369 F.3d 1091 (9th Cir. 2004) ..........................................................43

*Mellin v. N. Sec. Ins. Co.*,
115 A.3d 799 (N.H. 2015) .................................................................33

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
20 CIV. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020).................30

*Mid-Century Ins. Co. v. Zanco*,
456 F. Supp. 3d 1213 (E.D. Wash. 2020).........................................15

*Moody v. Hartford Fin. Grp., Inc.*,
No. 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021) ...................................39

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
15 F.4th 885 (9th Cir. 2021) ........................................................1, 11, 20, 25, 28

*Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*,
CV 20-2295, __ F. Supp. 3d __, 2021 WL 1614812 (E.D. La. Apr.
26, 2021) ...........................................................................................44

*Nautilus Group, Inc. v. Allianz Glob. Risks US*,
C11-5281BHS, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012)...................31, 32

*Nevers v. Aetna Ins. Co.*,
14 Wn. App. 906 (1976) ...................................................................18

*Nguyen v. Travelers Cas. Ins. Co.*,
No. 20-cv-00597, 2021 WL 2184878 (W.D. Wash. May 28, 2021).5, 22, 23, 31,
32

*Nw. Selecta, Inc. v. Guardian Ins. Co., Inc.*,
CV 20-1745, 2021 WL 2072613 (D.P.R. May 24, 2021) ...................................44

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
2 F.4th 1141 (8th Cir. 2021) ...........................................................20, 26, 28, 39

*Overton v. Consolidated Ins. Co.*,
145 Wn.2d 417 (2002) ......................................................................14

*Panorama Village v. Allstate Ins. Co.*,
144 Wn.2d 130 (2001) ......................................................................15

*Park 101 LLC v. Am. Fire & Cas. Co.*,
No. 20-cv-00972-AJB-BLM, 2021 WL 2685188 (S.D. Cal. June
30, 2021) ...................................................................................29

*Perry St. Brewing Co., LLC v. Mut. of Enumclaw Ins. Co.*,
No. 20-2-02212-32, 2020 WL 7258116 (Wash. Super. Ct. Spokane
Cnty. Nov. 23, 2020) ................................................................30, 31

*Port Authority of New York and New Jersey v. Affiliate FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002) ......................................................28, 42

*PS Business Management v. Fireman's Fund Ins. Co.*,
Civil Action 21-1229, 2021 WL 4989870 (E.D. La. Oct. 27, 2021).................22

*Quadrant Corp. v. American States Ins. Co.*,
154 Wn.2d 165 (2005) (en banc).............................................15, 41

*R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*,
8:20-CV-2323-T-30AEP, 2021 WL 686864 (M.D. Fla. Jan. 22,
2021) ...................................................................................39

*Saddle Ranch Sunset, LLC v. Fireman's Fund Ins. Co.*,
No. 20STCV36531, Minute Order (Cal. Sup. Ct. Feb. 8, 2021).......................24

*Santo's Italian Cafe LLC v. Acuity Ins. Co.*,
15 F.4th 398 (6th Cir. 2021) ................................. 20, 26, 28, 29, 31, 37

*Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*,
2005 WL 600021 (N.Y. Sup. Ct. Mar. 4, 2004)..................................34

*Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*,
18 Wn. App. 2d 600, 621, 492 P.3d 843 (2021)....................................16, 17, 27

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010)................................................................14

*Snoqualmie Ent. Auth. v. Affiliated FM Ins. Co.*,
No. 21-2-03194-0 SEA, 2021 WL 4098938 (Wash. Super. Ct.
King Cnty. Sept. 2, 2021) ............................................................30, 31

*Spaghettini v. Fireman's Fund Ins. Co.*,
SCV-266378, Slip Op. (Sup. Ct. Ca. Aug. 11, 2021).........................23

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co.*,
 2007 WL 464715 (D. Or. Feb. 7, 2007) ............................................................34

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
 947 F.3d 464 (7th Cir. 2020) ................................................................14

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
 498 F. Supp. 3d 878 (S.D. W. Va. 2020)........................................................34, 38

*Universal Image Productions, Inc. v. Fed. Ins. Co.*,
 475 Fed. App'x 569 (6th Cir. 2012) ..................................................38

*Villella v. Pub. Employees Mut. Ins. Co*.,
 106 Wn.2d 806 (1986) ...........................................................18

*Vision One, LLC v. Philadelphia Indem. Ins. Co*.,
 174 Wn.2d 501 (2012) ...........................................................18

*Vita Coffee LLC v. Fireman's Fund Ins. Co.*,
 2:20-CV-01079-BJR, 2021 WL 3077922 (W.D. Wash. July 21,
 2021) ................................................................................5

*Washington Mut. Bank v. Commonwealth Ins. Co*.,
 133 Wn. App. 1031, 2006 WL 1731318 (2006) (unpublished) .........................18

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
 20-CV-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020)..................24

*Wolstein v. Yorkshire Ins. Co., Ltd.*,
 97 Wn. App. 201 (1999) ...........................................................16, 17, 27

**Statutes**

Fed. R. Civ. P. 8 ..........................................................................14

Fed. R. Civ. P. 12(b)(6).................................................................13, 14

Fed. R. Civ. P. 12(c)......................................................................4, 13

**Other Authorities**

10A Couch on Ins. § 148:1 ...........................................................16

Covid Coverage Litigation Tracker, University of Pennsylvania
    School of Law, *available at* https://cclt.law.upenn.edu/ ...................................25

## I.  INTRODUCTION

The district court's thorough, careful, and correct analysis accords with Washington precedent and this Court's recent decision in *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.,* 15 F.4th 885 (9th Cir. 2021), which interpreted the same Policy language. There is nothing unique about First and Stewart's allegations or the Policy here that compels a different result.

The commercial property insurance policy First and Stewart bought from Fireman's Fund, like virtually all such policies, insured against direct physical loss or damage to property. It provided coverage for business interruption only while the physically lost or damaged property was being repaired or rebuilt (if physically damaged) or replaced (if physically lost). First and Stewart makes no allegation that its hotel or any covered personal property was broken, torn, dented, discolored, or destroyed by COVID-19 or any government restriction. Its property is as sound now as before the pandemic. Thus, as the district court correctly concluded, there is no coverage here because there was no direct physical loss or damage to property. Even if First and Stewart could establish coverage, it would be excluded under the Policy's virus exclusion. This Court should affirm.

## II.  STATEMENT ON FIRST AND STEWART'S ISSUES

Fireman's Fund respectfully submits that the only issue presented by First and Stewart's appeal is whether the trial court erred in determining that First and

Stewart's well-pleaded facts, taken as true, failed to state a basis for coverage under the Policy.

## III.    STATEMENT OF THE CASE

### A.    First and Stewart's allegations.

Because the Motion to Dismiss below turned on the sufficiency of First and Stewart's Amended Complaint, Fireman's Fund will summarize the key allegations below.

First and Stewart owns the Thompson Seattle Hotel. 3-ER-300. First and Stewart alleged that it suffered economic harm as a result of the COVID-19 pandemic. 3-ER-301. It pleaded that the COVID-19 virus was widespread in King County, Washington and nationwide by early 2020. 3-ER-303. It alleged that due to the incidence and prevalence of COVID-19 generally, its hotel had "consistently high risks for the presence of the airborne Coronavirus from infected patrons and employees . . . ." 3-ER-304; 3-ER-317-18. First and Stewart pleaded that, as a result of the pandemic, its hotel (and the hotel industry generally) has "had to curtail operations" as "many of their would-be customers are unwilling to risk traveling to patronize" hotels. 3-ER-304.

First and Stewart also made various allegations about the nature of the COVID-19 virus. *See, e.g.*, 3-ER-316-20. In sum, it alleged that COVID-19 should be "presumed to be present or imminently present everywhere," 3-ER-317, is a

contagious virus, *id.*, can be spread by asymptomatic people, *id.*, can be transmitted person-to-person or via fomites (i.e., surfaces), 3-ER-323, and can survive on surfaces for up to 28 days, 3-ER-319. It also pleaded in conclusory fashion that the virus "adheres to surfaces and objects, harming and physically changing and physically altering those objects by becoming part of their surface and making physical contact with them unsafe for their ordinary and customary use." 3-ER-326. First and Stewart did not, however, identify any specific surface or object that it claimed had been harmed or physically altered by COVID-19. First and Stewart also alleged that "routine cleaning" is insufficient to remove COVID-19 and that more frequent cleaning is needed. 3-ER-305, *see also* 3-ER-327-28.

First and Stewart alleged that at least four of its employees tested positive for COVID-19 and speculates that others may have been asymptomatic carriers. 3-ER-331. It noted that Seattle was an "early epicenter" for the virus in the US. *Id.* And it alleged that epidemiological forecasts would lead to the conclusion that COVID-19 virus particles were present at its hotel and within 1,000 feet of it. 3-ER-332.

First and Stewart alleged that it closed its bars and restaurants on March 13, 2020 and the hotel itself on March 19, 2020. 3-ER-333. First and Stewart does not contest that its hotel and restaurant were essential businesses exempt from the various government closure orders it referenced in its Amended Complaint. 3-ER-336. In other words, First and Stewart does not contest that it voluntarily chose to

close the hotel. The hotel reopened to overnight guests in August 2020, and the restaurants at the hotel opened for various periods prior to and after that date. 3-ER-337.

First and Stewart alleged that it has suffered economic harm from the various effects of the pandemic. 3-ER-336-37. It also alleged that it sustained additional "costs/extra expenses" related to cleaning, installing barriers, erecting signage, and providing extra sanitation facilities and equipment for staff and guests. 3-ER-337-38.

First and Stewart asserted a claim under its commercial property insurance policy, which Fireman's Fund denied due to a lack of direct physical loss or damage, which is necessary to trigger coverage. 3-ER-344-48. First and Stewart thereafter sued for breach of contract for denial of coverage and also sought a redundant declaration of coverage. 3-ER-347-48. Fireman's Fund removed to federal court, after which First and Stewart amended its complaint. 3-ER-300. The Western District of Washington assigned this matter to Judge Barbara Rothstein as she had charge of the consolidated COVID-19 coverage lawsuits, which included seven other similar lawsuits under the same or materially similar Fireman's Fund policies. First and Stewart objected to consolidation, and so the district court considered this matter separately but consistently with the consolidated matters. 3-ER-352. Fireman's Fund moved to dismiss under Rule 12(c). The district court granted the

motion concluding, among other things, that "COVID-19 does not cause physical loss or damage . . . ." *First & Stewart Hotel Owner, LLC v. Fireman's Fund Ins. Co.*, 2:21-CV-00344-BJR, 2021 WL 3109724, at *2 (W.D. Wash. July 22, 2021). Because of the close parallels between this case and the consolidated matters, the district court's order incorporated its holding in those matters. *Id.* at *1-2 (citing *Nguyen v. Travelers Cas. Ins. Co.*, No. 20-cv-00597, 2021 WL 2184878 (W.D. Wash. May 28, 2021) (order on consolidated cases) and *Vita Coffee LLC v. Fireman's Fund Ins. Co.*, 2:20-CV-01079-BJR, 2021 WL 3077922, at *1 (W.D. Wash. July 21, 2021) (denying motions for reconsideration in consolidated cases)). First and Stewart filed this appeal.

**B.      The relevant Policy provisions.**

First and Stewart seeks to recover its financial losses under Policy provisions concerning (1) business income and extra expense coverage (and extensions of the same), (2) business access coverage, (3) dependent property coverage, (4) communicable disease coverage, (5) civil authority coverage, and (6) loss avoidance or mitigation coverage. 3-ER-338-44. Relevant excerpts of the Policy are below. Each of these provisions requires "direct physical loss or damage" to property either as a prerequisite to coverage or as a limitation on the scope of coverage.

| Business Income and Extra Expense Coverage | If a Limit of Insurance for Business Income and Extra Expense is shown in the Declarations, then we will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension** of |
|---|---|

5

your **operations** during the **period of restoration** arising from *direct physical loss or damage* to property at a **location**, or within 1,000 feet of such **location**, caused by or resulting from a **covered cause of loss**.

2-ER-43 (**bold**[1] in original; *underline italics* added).

Applicable definitions include:

13. **Covered cause of loss** means risks of direct physical loss or damage not excluded or limited in this Coverage Form.

2-ER-89 (**bold** in original).

50. a. **Period of restoration** means the period of time that begins immediately after the time of direct physical loss or damage caused by or resulting from a **covered cause of loss** to property at the **location** and ends on the earlier of:

   (1) The date when such property at the **location** should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality; or

   (2) The date when the business is resumed at a new permanent location.

b. **Period of restoration** does not include any increased period due to the enforcement of any **ordinance or law**, including any **ordinance or law** that requires any insured or other to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**.

c. The expiration date of this Policy will not cut short the **period of restoration**.

---

[1] Bold indicates a defined term.

| | |
|---|---|
| | 2-ER-95 (**bold** in original).<br>69. **Suspension** means the slowdown or cessation of your **operations**, or that a part or all of the described **premises** is rendered untenable.<br><br>2-ER-98 (**bold** in original). |
| Business Access Coverage | a. We will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension** of **operations** at a **location** if access to such location is impaired or obstructed. Such impairment or obstruction must:<br><br>(1) Arise from _direct physical loss or damage to property_ other than at such location; and<br><br>(2) Be caused by or result from a **covered cause of loss**; and<br><br>(3) Occur within the number of miles stated in the Declarations from such **location**.<br><br>b. We will not pay under Business Access Coverage for **business income** loss or **extra expense** incurred caused by or resulting from action of civil authority or military authority.<br><br>c. The most we will pay under this Extension of Coverage in any one occurrence or **loss event** is the Limit of Insurance shown in the Declarations applicable to Business Access Coverage.<br><br>2-ER-55 (**bold** in original; _underline italics_ added). |
| Dependent Property Coverage | a. Dependent Property Coverage<br><br>    (1) We will pay for the actual loss of **business income** and necessary **extra expense** you sustain due |

7

| | |
|---|---|
| | to the necessary **suspension** of **operations** during the period of restoration at a **location**.<br><br>(2) The **suspension** must be due *to direct physical loss or damage* at the location of a **dependent property**, situated inside or outside of the Coverage Territory, caused by or resulting from a **covered cause of loss**.. . .<br><br>d. With respect to Dependent Property Coverage the **period of restoration** begins immediately after the time that *direct physical loss or damage* occurs at the **location** of the **dependent property** caused by or resulting from a **covered cause of loss**.<br><br>2-ER-197-98 (**bold** in original; *underline italics* added). |
| Communicable Disease Coverage | 1. Communicable Disease Coverage<br><br>a. (1) We will pay for *direct physical loss or damage* to **Property Insured** caused by or resulting from a covered **communicable disease event** at a location including the following necessary costs incurred to:<br><br>(a) Tear out and replace any part of **Property Insured** in order to gain access to the **communicable disease;**<br><br>(b) Repair or rebuild **Property Insured** which has been damaged or destroyed by the **communicable disease;** and<br><br>(c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the **communicable disease.**<br><br>2-ER-58-59 (**bold** in original; *underline italics* added).<br><br>Applicable definitions include: |

8

| | |
|---|---|
| | 10. **Communicable disease** means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human.<br><br>11. **Communicable disease event** means an event in which a **public health authority** has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a **communicable disease** at such location.<br><br>2-ER-89 (**bold** in original)<br><br>59. **Public health authority** means the governmental authority having jurisdiction over your operations relative to health and hygiene standards necessary for the protection of the public.<br><br>2-ER-96 (**bold** in original). |
| Civil Authority Coverage | We will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension** of your **operations** caused by action of civil authority that prohibits access to a **location**. Such prohibition of access to such **location** by a civil authority must:<br><br>(1) Arise from *direct physical loss or damage* to property other than at such **location**; and<br><br>(2) Be caused by or result from a **covered cause of loss**; and<br><br>(3) Occur within the number of miles stated in the Declarations from such **location**.<br><br>2-ER-55 (**bold** in original; *underline italics* added). |

| Loss Avoidance or Mitigation Coverage | We will pay the necessary expense you incur to protect, avoid, or significantly mitigate potential covered loss or damage that is actually and imminently threatening **Property Insured**, including:<br><br>(1) Removal of ice or snow from the roof or balconies of business real property that has accumulated during and due to a storm;<br><br>(2) Pumping of standing water away from business real property that has accumulated during and due to a flood, hurricane, named storm, or storm;<br><br>(3) Application of fire retardant foam or similar fire suppression or extinguishing material to business real property as protection against an approaching fire; and<br><br>(4) Boarding up or sandbagging of doors, windows, or other external openings in business real property as protection against an approaching flood, hurricane, named storm, or storm.<br><br>However, we will not pay for any loss, damage, or expense caused by or resulting from such loss prevention actions.<br><br>2-ER-52 (**bold** in original). |
|---|---|
| Virus Exclusion | A. Exclusions Applicable to All Coverages: We will not pay [for any coverage] for any loss, damage, or expense caused directly or indirectly by or resulting from any of the following excluded causes of loss. . .<br><br>   h. Mortality and Disease<br><br>   Mortality, death by natural causes, disease, sickness, any condition of health, bacteria, or virus.<br><br>2-ER-44-45. |

10

| Scope of Coverage | This Coverage Form does not insure any of the following property: . . . air . . . .<br><br>2-ER-43. |
|---|---|

## IV. SUMMARY OF THE ARGUMENT

The district court correctly dismissed First and Stewart's Amended Complaint because First and Stewart's covered property has not suffered any direct physical loss or damage. The court's carefully considered decision agrees with decades of Washington authority, this Court's analysis in *Mudpie*, and decisions from more than 500 cases from 37 other states, the District of Columbia, and every other federal circuit to have addressed this issue.

This Court should affirm here because the well-pleaded portions of First and Stewart's Amended Complaint do not plausibly allege that it suffered any direct physical loss or damage to property. At best, First and Stewart alleges intangible economic harm because its customers traveled less during the pandemic, which resulted in reduced demand for its hotel and restaurants. Endorsing First and Stewart's claim that loss of use gives rise to coverage would require the Court to ignore Washington law, insert "of use" into "direct physical loss or damage," and ignore the period of restoration and its requirement that lost or damage property be repaired, rebuilt, or replaced. Doing so would also result in an expansion of coverage

11

to include all manner of non-physical, intangible losses of use which Washington precedent expressly forbids.

Further, common sense and judicial experience, which are the touchstones of the *Twombly*/*Iqbal* analysis, show that COVID-19 does not cause physical loss or damage to property. COVID-19 harms people, not inanimate objects that cannot be host to a virus. This almost universal holding is not an impermissible conclusion of fact. It is an undeniable, self-evident, common-sense observation borne out by experience and logic. If First and Stewart's arguments here were true, then virtually every piece of property in the world has been physically lost or damaged—including homes, clothes, phones, computers, books, cars, pharmacies, hospitals, and courthouses. But First and Stewart's property (like everyone else's) remains as sound today as it was before the pandemic without repair or replacement.

Further, First and Stewart's arguments fail to meaningfully address the Policy's period of recovery. As hundreds of courts have already concluded, the fact that the Policy only provides coverage during the time needed to repair or replace damaged or lost property reinforces the fact that the loss or damage must be tangible. The most that First and Stewart can allege is that it had to clean its premises more frequently. Cleaning is neither repair nor replacement. Also, under First and Stewart's interpretation, the duration of the period of restoration would be defined not by how long it takes to replace or repair the lost or damaged property, but by the

prevalence of the virus in the community and efforts, like mass vaccination, to prevent the virus from infecting human beings. That interpretation makes no sense.

Finally, as detailed below, First and Stewart also fails to establish a basis for several ancillary coverages for additional, alternative reasons. And the Policy's virus exclusion applies, in any event, even if there were coverage. For all these reasons, this Court should affirm.

## V. ARGUMENT AND AUTHORITIES

### A. Applicable legal standards.

#### 1. De novo review.

This Court reviews an order granting a Rule 12(c) motion for judgment on the pleadings de novo. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Courts apply the same standard of review under Rule 12(c) as under Rule 12(b)(6). *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). Under that standard, dismissal is appropriate if a plaintiff has failed to plead a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. When, however, a complaint's facts "do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 557. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

Thus, because a complaint must assert well-pleaded *facts*, the court can and should reject mere "speculative conclusion[s]." *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018); *accord Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, [courts] may reject sheer speculation, bald assertions, and unsupported conclusory statements."); *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.").

### 2.   The Policy must be construed as a matter of law.

In Washington, "[i]nterpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 424 (2002). A "policy should be

14

given a practical and reasonable interpretation that fulfills the intent of the parties, that is, a construction such as would be given by the average person purchasing insurance." *McMahan & Baker, Inc. v. Continental Cas. Co. (CNA)*, 68 Wn. App. 573, 578 (1993). "The contract should not be given a strained or forced construction that would lead to absurd results." *Id*. Undefined terms are given their plain, ordinary, and popular meanings. *Panorama Village v. Allstate Ins. Co.*, 144 Wn.2d 130, 131 (2001). "[I]f the policy language is clear and unambiguous, [courts] must enforce it as written; [courts] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. American States Ins. Co*., 154 Wn.2d 165, 171 (2005) (en banc).

### 3. First and Stewart bore the burden to plead facts demonstrating coverage.

Under Washington law, "[a]n insured bears the burden of showing that its loss falls within the scope of the policy's insured losses." *Churchill v. Factory Mut. Ins. Co*., 234 F. Supp. 2d 1182, 1187 (W.D. Wash. 2002). To determine whether a policy covers a claim, the court must make two determinations: (1) whether the insured has established the claim falls within the scope of coverage; and (2) whether any exclusions bar the claim. *Mid-Century Ins. Co. v. Zanco*, 456 F. Supp. 3d 1213, 1224 (E.D. Wash. 2020).

**B.** **First and Stewart's allegations do not plausibly establish direct physical loss or damage to property.**

    **1.** **Direct physical loss or damage requires "actual" or "discernable" physical damage or that property become "physically lost."**

As set forth in the table in Section IV(B) above, *all* of the Policy coverages sought by First and Stewart require "direct physical loss or damage to property" either as a prerequisite to coverage or, in the case of communicable disease coverage, as a limitation on relief.

The phrase "direct physical loss or damage to property" (or similar language) has served as the cornerstone of coverage in modern commercial property policies for decades. *See generally* 10A Couch on Ins. § 148:1 (historical development of property insurance). Although, as First and Stewart notes, the phrase is not defined in the Policy (nor indeed in any commercial property policy) it is unambiguous and has a well-understood meaning under Washington law.

To establish direct physical loss or damage to property under Washington law, an insured must demonstrate that the property suffered "actual" or "discernible" physical damage or was "physically lost." *Wolstein v. Yorkshire Ins. Co., Ltd.*, 97 Wn. App. 201, 204 (1999). Mere economic harm or loss of use is insufficient. *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 18 Wn. App. 2d 600, 621, 492 P.3d 843, 855 (2021).

Washington authorities on this point are both clear and numerous. For example, earlier this year, the Court of Appeals rejected claims for loss of use of a highway tunnel in Seattle caused by construction delays. *Id.* As the court explained, "Washington case law shows that if a policy provides coverage for 'physical' loss, it does not provide coverage for loss of use unless that loss of use arises out of or as a result of the physical loss." *Id.*

Similarly, in *Wolstein*, the insurance policy covered all risks of "physical loss of or damage to" a yacht under construction. 97 Wn. App. at 204. After the yacht builder "shut its doors," delaying production of the yacht, the buyer submitted an insurance claim under the policy for harm stemming from the delay. *Id*. at 204-05. The Court of Appeals held there was no coverage, explaining that "the insured object must sustain actual damage or be physically lost to invoke . . . coverage." *Id*. at 212. The court explained that the builder's "financial difficulties, while prolonging completion of the [yacht] and increasing the costs of her completion, did not inflict physical damage to the [yacht] or result in the physical loss of the yacht." *Id.*

And in *Fujii v. State Farm Fire & Cas. Co.*, a landslide destabilized a house foundation. 71 Wn. App. 248, 249 (1993). The insured argued that the costs to stabilize the foundation were covered "because the landslide undermined the lateral support of the covered dwelling." *Id.* The Washington Court of Appeals disagreed. It found no coverage because it was "undisputed that there was no discernible

physical damage to the dwelling" regardless of the foundation's instability. *Id*. at 249-51.

Many other Washington authorities concur. *See, e.g.*,

- *Vision One, LLC v. Philadelphia Indem. Ins. Co*., 174 Wn.2d 501 (2012) (economic losses resulting from a floor collapse were not "physical" loss or damage);

- *Washington Mut. Bank v. Commonwealth Ins. Co*., 133 Wn. App. 1031, 2006 WL 1731318 (2006) (unpublished) (economic loss from evacuation insufficient: "The plain language . . . requires a direct physical loss of or damage to insured property. . . . The clause does not use the word 'loss' in the abstract. . . . Because no actual 'peril insured against' arose, coverage under the Policies was not triggered by that clause.");

- *Borton & Sons, Inc. v. Travelers Ins. Co.*, 99 Wn. App. 1010, 2000 WL 60028 (2000) (unpublished) (economic loss from "loss of confidence" insufficient: roof collapse damaged some apples, not others; court rejected coverage for undamaged apples because they "were not damaged physically by the roof collapse," explaining that "physical loss" cannot occur "in the absence of any physical damage to the property");

- *Villella v. Pub. Employees Mut. Ins. Co*., 106 Wn.2d 806, 811-12 (1986): (wet and destabilized soil under a house was not, itself, "physical damage" to the house despite later causing a landslide; house was damaged in the landslide, but damage occurred after the policy expired);

- *Nevers v. Aetna Ins. Co*., 14 Wn. App. 906, 907 (1976) (economic loss from purchase of stolen boat not covered because "[d]efective title is clearly not a 'physical loss or damage'").

### a.     The "period of restoration" reinforces the conclusion that any loss or damage must be "physical."

Further, as First and Stewart concedes, the Policy's Business Income and

Extra Expense coverage and its Dependent Property coverage only provide coverage

during the "period of restoration." Brief at 8. As noted above in Section III(B), the period of restoration is defined as:

> the period of time that begins immediately after the time of direct physical loss or damage caused by or resulting from a **covered cause of loss** to property at the **location** and ends on the earlier of:
>
> (1)    The date when such property at the **location** should be *repaired, rebuilt, or replaced* with reasonable speed and like kind and quality; or
>
> (2)    The date when business is resumed at a new permanent location.

2-ER-95 (**bold** in original, *italics* added). A similar clause appears in virtually every commercial property insurance policy. Thus, the Policy provides coverage for lost business income, but only to the extent the policyholder can establish that the lost income (i) was the direct result of physical loss or damage to specific property, and (ii) the physically damaged property had to be repaired or rebuilt or the physically lost property had to be replaced.

Indeed, the Policy must be construed this way. Interpreting "physical loss or damage to property" to include loss or damage that is neither actual nor discernable, as First and Stewart urges, would render the Policy language relating to "repair[], rebuil[ding], or replace[ment]" mere surplusage. As this Court recently explained:

> Interpreting the phrase "direct physical loss of or damage to" property as requiring physical alteration of property is consistent with other provisions of Mudpie's Policy. For example, the Policy provides coverage for Business Income and Extra Expense only during the "period of restoration," and it defines the "period of restoration" as ending on "[t]he date when the property at the described premises

19

should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location." That this coverage extends only until covered property is repaired, rebuilt, or replaced, or the business moves to a new permanent location suggests the Policy contemplates providing coverage only if there are physical alterations to the property. To interpret the Policy to provide coverage absent physical damage would render the "period of restoration" clause superfluous.

*Mudpie, Inc.*, 15 F.4th at 892. The Eighth Circuit agrees.

The unambiguous requirement that the loss or damage be physical in nature accords with the policy's coverage of lost business income and incurred extra expense during the "period of restoration." . . . Property that has suffered physical loss or physical damage requires restoration. That the policy provides coverage until property "should be repaired, rebuilt or replaced" or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use.

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021).

First and Stewart argues that this provision merely imposes a "time limitation," *see* Brief at 66, but that fails to acknowledge the necessary implications of the provision. As the Sixth Circuit explained:

Baked into this timing provision is the understanding that any covered "direct physical loss of or damage to" property could be remedied by repairing, rebuilding, or replacing the property or relocating the business. But what would that mean under Santo's Café's interpretation of the policy? It has not alleged any problem with the building. There is nothing to repair, rebuild, or replace that would allow the resumption of in-person dining operations.

*Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403 (6th Cir. 2021).

Hundreds of other courts nationwide agree.

20

2. **First and Stewart's well-pleaded facts do not establish direct physical loss or damage.**

   a. **First and Stewart has failed to identify direct physical loss or damage.**

As the district court correctly concluded, First and Stewart failed to plead facts showing that it suffered any direct physical loss or damage to property. First and Stewart alleged only intangible, economic harm caused by the pandemic and the government's response to it. Although its 60-page Amended Complaint is replete with conclusory statements reciting "direct physical loss or damage," First and Stewart never plausibly alleged *facts* that, if true, would demonstrate that its hotel or any other property suffered "actual" or "discernible" physical damage or was "physically lost." Nor did it allege that any of its property had to be repaired, rebuilt, or replaced. And, of course, it did not allege that the period of restoration ever began or ended.

As summarized above, its allegations are merely that COVID-19 was present on surfaces and in the air of its premises, that COVID-19 infects people, that a pandemic was raging, that government stay-at-home orders were issued to control the pandemic, and that First and Stewart suffered economic loss from a reduction in patronage at its hotel caused by the pandemic and the government's response to it. These allegations do not establish actual or discernable physical damage, nor do they show that property was physically lost. Accordingly, as the district court concluded,

21

First and Stewart did not allege facts sufficient to trigger coverage. *See First and Stewart*, 2021 WL 3109724, at *2; *Nguyen*, 2021 WL 2184878, at 10-13 (holding that "COVID-19 does not trigger direct physical loss or damage").

> **b.    Courts nationwide have dismissed the same allegations under the same and materially similar Fireman's Fund insurance contract.**

Courts in Massachusetts, Florida, California, Louisiana, Indiana, New York, New Jersey, and Virginia have considered these same allegations under the same Fireman's Policy insurance contract. In the process, they have dismissed at least 21 similar complaints against Fireman's Fund.

- *PS Business Management v. Fireman's Fund Ins. Co.*, Civil Action 21-1229, 2021 WL 4989870, at *1 (E.D. La. Oct. 27, 2021) (granting dismissal with prejudice: "The Court finds that this language is not ambiguous on its face. 'Direct physical loss or damage' requires corporeal effect.");

- *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, 20SMCV00952, Slip Op., at *7 (Sup. Ct. Ca. Oct. 5, 2021) (granting demurrer: "That the loss needs to be 'physical,' given the ordinary meaning of the term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.");

- *Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.*, SCV-268104, Slip. Op. (Sup. Ct. Ca. Sept. 8, 2021) (granting demurrer: "[T]his Court finds that the presence of COVID-19 particles does not amount to a 'distinct, demonstrable, physical alternation of the property.'");

- *Boffo Cinemas LLC v. Fireman's Fund Ins. Co.*, 37-2021-5179, Slip Op. at *1 (Sup. Ct. Ca. Aug. 27, 2021) (granting demurrer: "'direct physical

loss' is understood to mean 'a distinct, demonstrable, physical alteration of the property'");

- *Hampshire House Corp. v. Fireman's Fund Ins. Co.*, CV 20-11409-FDS, 2021 WL 3812535, at *5, 6 (D. Mass. Aug. 26, 2021) (granting motion to dismiss with prejudice: "Although 'physical' is not defined in the policy, taken as a whole, it is clear that the provisions do not provide coverage for financial or other intangible losses. Instead, there must be a 'physical' loss of or damage to a tangible object, such as the structure of a building.");

- *Spaghettini v. Fireman's Fund Ins. Co.*, SCV-266378, Slip Op. at *3 (Sup. Ct. Ca. Aug. 11, 2021) (granting demurrer: "[T]his Court finds that the presence of Covid-19 particles does not amount to 'distinct, demonstrable, physical alteration of the property.'");

- *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, No. 1:20-cv-02512, 2021 WL 3187521, at *4 (S.D. Ind. July 27, 2021) (granting motion to dismiss with prejudice: "'[D]irect physical loss' to property requires a harmful alteration in the appearance, shape, color, composition, or other material dimension of the property, excluding situations in which an intervening force plays some role.");

- *Crescent Hotels & Resorts, LLC v. Zurich Am. Ins. Co. and Fireman's Fund Ins. Co.*, No. 2021-02974, at *86 (Va. Cir. Ct. Fairfax County July 2, 2021) (transcript only) (granting demurrer: "[I]t is my view that [under] a plain reading of . . . the contract, that physical loss or damage is a phrase that is not ambiguous, that it's clear on its face, and it does not reach the circumstances that we have here where there's a presence of a virus.");

- *Nguyen v. Travelers Cas. Ins. Co. of Am.*, __ F. Supp. 3. __, No. 2:20-cv-00597-BJR, 2021 WL 2184878 (W.D. Wash. May 28, 2021) (granting motions to dismiss with prejudice Washington consolidated docket including eight COVID-19 based lawsuits against Fireman's Fund or its affiliates: "[T]his Court determines that COVID-19 does not cause the physical loss or damage to property required as a condition precedent to trigger coverage in all the relevant policies.");

- *Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*, 530 F. Supp. 3d. 74, 78 (D. Mass. 2021) (granting motion to dismiss with prejudice: "Taken

together, these terms require some enduring impact to the actual integrity of the property at issue. In other words, the phrase 'direct physical loss of or damage' does not encompass transient phenomena of no lasting effect, much less real or imagined reputational harm.");

- *Saddle Ranch Sunset, LLC v. Fireman's Fund Ins. Co.*, No. 20STCV36531, Minute Order, at *1 (Cal. Sup. Ct. Feb. 8, 2021) ("The Demurrer is sustained for failure to state Cause of Action.");

- *Island Hotel Properties, Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1326-27 (S.D. Fla. Jan. 11, 2021) (granting motion to dismiss with prejudice: "Because 'direct physical' modifies both 'loss' and 'damage,' . . . any 'interruption in business must be caused by some physical problem with the covered property' to be a covered loss." (quoting *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020));

- *Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, CV2011771SDWLDW, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) (granting motion to dismiss: "Here, Plaintiff has not alleged any facts that support a showing that its property was physically damaged. Instead, Plaintiff pleads that by forcing him to close his business, the Stay-At-Home Orders caused Plaintiff to lose income and incur expenses. This is not enough."); and

- *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 20-CV-03750-WHO, 2020 WL 6562332, at *3 (N.D. Cal. Nov. 9, 2020) (granting motion to dismiss with prejudice: "I will follow the overwhelming majority of courts that have determined that the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to' covered property as required under the Policy.").

### c. Courts nationwide have overwhelmingly rejected allegations like First and Stewart's.

Further, courts throughout the country have to date dismissed well over 500 similar COVID-19 coverage disputes.[2] As noted above, this Court recently affirmed dismissal of a similar claim under California law in *Mudpie*—rejecting the central argument about loss of use that First and Stewart makes here.

> Unlike the cases that Mudpie relies upon, Mudpie's complaint does not identify a "distinct, demonstrable, physical alteration of the property," and it does not allege that Mudpie was permanently dispossessed of its property. Instead, Mudpie alleges the Stay at Home Orders temporarily prevented Mudpie from operating its store as it intended, and urges us to interpret "direct physical loss of or damage to" to be synonymous with "loss of use." We cannot endorse Mudpie's interpretation because California courts have carefully distinguished "intangible," "incorporeal," and "economic" losses from "physical" ones.

*Mudpie*, 15 F.4th 892 (internal citations omitted). The same is true under Washington law as already explained. And the Sixth Circuit concurs.

> Whether one sticks with the terms themselves (a "direct physical loss of" property) or a thesaurus-rich paraphrase of them (an "immediate" "tangible" "deprivation" of property), the conclusion is the same. The policy does not cover this loss. The restaurant has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it. It still owns the restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use.

---

[2] *See* Covid Coverage Litigation Tracker, University of Pennsylvania School of Law, *available at* https://cclt.law.upenn.edu/ (as of December 7, 2021: 543 suits dismissed with prejudice).

*Santo's*, 15 F.4th at 403. As does the Eighth Circuit.

> The policy here clearly requires direct "physical loss" or "physical damage" to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property . . . . The policy cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical loss or damage.

*Oral Surgeons*, 2 F.4th at 1144. And the Eleventh Circuit recently reached the same

conclusion.

> Gilreath has alleged nothing that could qualify, to a layman or anyone else, as physical loss or damage. Here, the shelter-in-place order that Gilreath cites did not damage or change the property in a way that required its repair or precluded its future use for dental procedures. . . . [W]e do not see how the presence of [virus] particles would cause physical damage or loss to the property.

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, __ Fed. Appx.

__, 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (per curiam).

Hundreds of lower courts from across the country, which are far too numerous to list

here, also concur.

### 3. First and Stewart's arguments to the contrary are unavailing.

First and Stewart makes several arguments to the contrary. It contends that

temporary loss of use is sufficient to trigger coverage. *See, e.g.*, Brief at 12, 19, 21,

34, 58. More specifically, it argues that the presence of COVID-19 on its premises

caused damage to the surfaces and the uninsured "air" that impaired the "functional

use" of its hotel. *Id.* at 46-64. In other words, First and Stewart argues that, although

it neither lost the hotel itself nor access to the hotel, it could not use the hotel temporarily to the full extent it wished. First and Stewart also claims that the Policy's communicable disease coverage extension suggests an "acknowledgement" that viruses can cause direct physical loss or damage. *Id.* at 61-64. It also asserts, in the alternative, that the Policy language is ambiguous and that its interpretation is reasonable. *Id.* at 61.

### a. Temporary loss of patronage is not direct physical loss or damage.

First and Stewart speculates that the presence of COVID-19 virus particles in the air and on surfaces rendered its hotel "unsafe" and deprived it of the hotel's "functional use."[3] It argues that this loss of use is sufficient to establish direct physical loss. Yet it largely ignores the fact that multiple Washington cases have already expressly rejected that argument. *See, e.g.*, *Wolstein*, 97 Wn. App. at 204 (inability to use property is not direct physical loss or damage); *Seattle Tunnel*

---

[3] First and Stewart concedes on appeal that it is "not seeking recovery for damage to air." *See* Brief at 59. That makes sense because the Policy "does not insure any of the following property: . . . air . . . ." 2-ER-43. And, contrary to First and Stewart's arguments, the district court did not construe this lack of coverage as an "exclusion." *Id.* Instead, the court noted that the presence of the virus in the air cannot be direct physical loss or damage because air is not covered property. 1-ER-8.

Amici argue that "direct physical loss" means "loss of intended use." *See* United Policyholders Brief at 16. That standard is indistinguishable from First and Stewart's proposed standard and wrong for the same reasons.

*Partners*, 18 Wn. App. 2d at 621 ("[I]f a policy provides coverage for 'physical' loss, it does not provide coverage for loss of use unless that loss of use arises out of or as a result of the physical loss."). There is nothing about the COVID-19 pandemic or the government orders here that meaningfully distinguishes those holdings.[4]

Courts all over the country agree with Washington law on this point. As the Sixth Circuit explained in rejecting a similar argument, it "skates over the unrelenting imperative that the policy covers only 'physical' losses." *Santo's Italian Cafe*, 15 F.4th at 404. And, as noted above, this Court rejected the same argument in *Mudpie*. *Mudpie*, 15 F.4th 892 (loss of use is not direct physical loss or damage under California law); *accord Oral Surgeons*, 2 F.4th at 1144 ("The policy cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical loss or damage."). As the Sixth Circuit explained in detail, accepting First and Stewart's arguments here would expand coverage beyond anything contemplated by the Policy's language.

> If we accepted the [insured's] invitation and construed any loss of use
> to be a physical loss of property, that would create problems of its
> own. What if the pandemic or a worker shortage made it difficult for

---

[4] Notably, Washington (like the large majority of states) has never adopted anything similar to the "uninhabitability" standard set forth under New Jersey law in *Port Authority of New York and New Jersey v. Affiliate FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) that would permit a finding of physical loss absent tangible, physical damage or permanent dispossession. Regardless, as the district court correctly noted, First and Stewart would not meet that standard anyway because its hotel is and always has been habitable—a fact not in dispute. *First & Stewart*, 2021 WL 3109724, at *4.

the restaurant to hire cooks and waiters? Would that not prevent the restaurant from using the kitchen or offering in-person dining services? Or what if the State had taken no action in response to the pandemic, but most people had stayed home anyway for fear of catching COVID-19? Would that not prevent the restaurant from using the restaurant space as well?

*Santo's Italian Cafe*, 15 F.4th at 404; *accord Bridal Expressions LLC v. Owners Ins. Co.*, __ F. 4th __, No. 21-3381, 2021 WL 5575753, at *2 (6th Cir. Nov. 30, 2021) (per curiam) ("The company's inability to use the property in the same way as it did before the pandemic . . . does not satisfy the policy's language."). Indeed, adopting First and Stewart's interpretation would expand coverage to a wide range of scenarios that defy common sense.

> [T]he following scenarios would trigger insurance coverage under the [the insured]'s expansive view: (1) a city changes its maximum occupancy codes to lower the caps, meaning that a particular restaurant can no longer seat as many customers as it used to; (2) a city amends an ordinance requiring restaurants located in residential zones to cease operations between 1:00 a.m. and 5:30 a.m. to expand the window to 12:00 a.m. to 6:00 a.m.; (3) a city issues a mandatory evacuation order to all of its residents due to nearby wildfires (a consequence of this is that all businesses must suspend operations), but lifts the order three weeks later when the wildfires are extinguished without, fortunately, any destruction of property. The Court here agrees that to adopt [the insured]'s view would be to reach an overbroad view of "physical loss."

*Park 101 LLC v. Am. Fire & Cas. Co.*, No. 20-cv-00972-AJB-BLM, 2021 WL 2685188, at *5 (S.D. Cal. June 30, 2021).

And a court in the Southern District of New York used a particularly relatable analogy to explain why loss of use is not physical loss.

The idea that "loss of use" does not constitute a "direct physical loss of or damage to" property resonates in ordinary experience outside the context of insurance coverage. Say, for example, a teenager broke curfew, and his parents punished him by taking away the keys to his car. The teen undoubtedly lost the ability to use the car. However, we would not say that there had been a "direct physical loss of or damage to" the car. The teenager was precluded from driving it. But the car's physical condition remained unchanged, and its presence likely remained at the residence. Similarly, imagine a fisherman visits a public pond each day to cast his line. One morning he arrived and found that the pond was closed for fishing because a nearby town was hosting its annual swim race. Did the fisherman lose the use of the pond for the day? Yes. He could not enjoy the premises for his intended use (i.e., to fish). But could anyone reasonably conclude there was a "direct physical loss of or damage to" the pond because he could not fish? No. The condition of the pond was not altered physically.

*Michael Cetta, Inc. v. Admiral Indem. Co.*, 20 CIV. 4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020). So too with First and Stewart's hotel here.

In response, First and Stewart points to three recent Washington trial court decisions in the context of COVID-19—*Hill & Stout*, *Snoqualmie*, and *Perry Street*—for the proposition that a temporary "deprivation" of use of insured property is sufficient to trigger coverage. *See* Brief at 32-36.

*Hill & Stout* offers no help. Rather, that court expressly rejected First and Stewart's arguments.

The Court finds that, given their plain, ordinary and popular meaning, the coverage sentence, "[W]e will pay for **direct physical loss or damage** to covered property at premises," is not susceptible to two different but reasonable interpretations because the coverage language requires some external physical force that causes direct physical change to the properties. The Court does not find this Policy language

30

> ambiguous, and rejects Hill & Stout's argument equating "physical loss" of its property as "physical **deprivation** of its property."

*Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*, 2021 WL 4189778, at \*3 (Wash. Super. Ct. King Cnty. Sept. 9, 2021) (emphasis in original) (expressly noting approval of the district court's decision in *Nguyen*).

*Snoqualmie* and *Perry Street*, for their part, were incorrectly decided and are, of course, not binding on this Court. The *Snoqualmie* court incorrectly distinguished controlling Washington authorities and failed to consider—at all—the period of restoration and the necessity that damaged or lost property be repaired, rebuilt, or replaced. *Snoqualmie Ent. Auth. v. Affiliated FM Ins. Co.*, No. 21-2-03194-0 SEA, 2021 WL 4098938, at \*4-6 (Wash. Super. Ct. King Cnty. Sept. 2, 2021). The *Perry Street* court made the same error by failing to consider the period of restoration. And, unlike *Snoqualmie*, which at least incorrectly distinguished binding case law, *Perry Street* failed to even consider it. *Perry St. Brewing Co., LLC v. Mut. of Enumclaw Ins. Co.*, No. 20-2-02212-32, 2020 WL 7258116, at \*2-3 (Wash. Super. Ct. Spokane Cnty. Nov. 23, 2020). At bottom, both cases were decided incorrectly because, to paraphrase the Sixth Circuit in *Santo's*, they skated over the unrelenting Washington-law imperative that the policy covers only *physical* losses. *See Santo's Italian Cafe*, 15 F.4th at 404.

Further, both decisions misunderstood or misapplied the holding of *Nautilus Group, Inc. v. Allianz Glob. Risks US*, C11-5281BHS, 2012 WL 760940, at \*7 (W.D.

Wash. Mar. 8, 2012), a case First and Stewart also cites. *See* Brief at 30. The loss in *Nautilus* was the theft of personal property by an employee—that is, the permanent physical dispossession of property that required replacement. *Id.* at *7. *Nautilus* does not stand for the proposition that mere temporary loss of use is a physical loss. Here, there has been no allegation of permanent physical dispossession or disappearance such as by theft, nor any sort of total destruction. For obvious reasons, First and Stewart's voluntary decision to temporarily close its hotel because fewer people were traveling is not akin to having its hotel stolen by an employee or destroyed by fire.

First and Stewart's related complaint that the district court failed to give effect to the "or" in direct physical loss or damage is similarly incorrect. The district court specifically analyzed each term separately and at length in the *Nguyen* decision, which was incorporated into the decision at issue here. *See, e.g.*, *Nguyen*, 2021 WL 2184878, at *9-12. Further, it is undisputed that physical loss and physical damage have different meanings. But none of those meanings is "loss of use." As another court explained in rejecting the same argument:

> The Court must give effect to *all* terms in the context of the Policy language. "Loss" is modified by the terms "direct" *and* "physical." When "direct," "physical," and "loss" are read together with their ordinary meanings, the Court concludes that the Business Income (and Extra Expense) Coverage Form unambiguously covers an immediate material, perceptible harm that leads either to complete destruction or deprivation ("direct physical loss") or partial destruction ("direct physical damage").

32

*Equity Planning Corp. v. Westfield Ins. Co.*, 522 F. Supp. 3d 308, 319 (N.D. Ohio 2021) (emphasis in original); *accord Bluegrass Oral Health Center, PLLC v. Cincinnati Ins. Co.*, No. 1:20-cv-00120, 2021 WL 1069038, at *4 (W.D. Ky. Mar. 18, 2021) ("[I]n context, 'physical loss' would mean destruction or ruin produced by the forces or operation of physics. In this light, 'physical loss' would apply to property destroyed by some force, contrasted with 'physical damage' which would cover a lesser extent of harm short of destruction or ruin.").

Lastly, First and Stewart cites several out-of-state cases for the proposition that the partial, temporary nature of its loss of use is sufficient to establish a direct physical loss. But each of those cases involved actual physical harm to property requiring repair or replacement, not mere loss of use, or is distinguishable on other grounds. Further, they have all been widely rejected by COVID-19 coverage decisions.

- *Mellin v. N. Sec. Ins. Co.*, 115 A.3d 799, 805 (N.H. 2015) (pervasive odor of cat urine in condominium could not be successfully remediated; court found potential coverage only if there was a "distinct and demonstrable alteration of the insured property");

- *Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32 (Ind. Super. Nov. 30, 2007) (coverage opinion is dicta; court held doctrine of "mend the hold" prevented insurer from changing position on coverage; never been followed by a single court, rejected by several Indiana courts);

- *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co.*, 2007 WL 464715, *8 (D. Or. Feb. 7, 2007) (involved "physical change in the furnace resulting from a release of lead particles");

- *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, 2005 WL 600021, *4-5 (N.Y. Sup. Ct. Mar. 4, 2004) (extensive World Trade Center debris persisted after cleaning; unconventional policy expressly covered "loss of use" of property); and

- *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 373 (E.D. Va. 2020) (outlier COVID-19 coverage case rejected by more than 30 citing authorities, including every other COVID-19 coverage decision in the Eastern District of Virginia).

### b. The presence of COVID-19 does not cause direct physical loss or damage to property.

In any event, the mere presence of COVID-19 virus particles sitting atop a surface is insufficient to trigger coverage. "Common sense" shows that "the pandemic impacts human health and human behavior, not physical structures." *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 884 (S.D. W. Va. 2020). As another district court construing the same Fireman's Fund Policy explained, "the Policy requires 'direct physical loss or damage *to* property,' not merely a physical substance *on* property." *Circle Block*, 2021 WL 3187521 at *7 (italics in original).

As hundreds of courts nationwide have acknowledged, the presence of COVID-19 virus particles on property does not alter the physical nature of property in a way that would give rise to coverage. *See, e.g.*, *Gilreath*, 2021 WL 3870697, at *2 ("[W]e do not see how the presence of [COVID-19] particles would cause

34

physical damage or loss to the property."); *Assocs. in Periodontics, PLC v. Cincinnati Ins. Co.*, No. 2:20-cv-171, 2021 WL 1976404, at *6 (D. Vt. May 18, 2021) (The "COVID-19 pandemic did not cause physical damage or loss to covered property" because the "virus posed a threat to people" only, "such danger is short-lived," and the virus ultimately leaves inanimate "property and its environment unscathed."); *100 Orchard St. LLC v. Travelers Indem. Ins. Co. of Am.*, No. 20-CV-8452 (JMF), 2021 WL 2333244, at *1 (S.D.N.Y. June 8, 2021) ("[W]hile the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself.") (emphasis in original). First and Stewart likewise failed to plead facts that explain how the virus physically harms property so as to require repair or replacement.

### (1) Risk of infection to humans is not property damage.

First and Stewart also appears to conflate the temporary presence of virus particles—and the potential risk of infection to humans—with direct physical loss or damage to property. *See, e.g.*, Brief at 60. Although the presence of a person infected with COVID-19 might affect the health of people within close proximity, it does not physically damage or destroy property. The property Policy does not insure against the risk of harm to humans. As a court in the Southern District of New York explained in rejecting the same argument, "while the presence of COVID-19 [virus

particles] may render property potentially harmful to people, it does not constitute harm to the property itself." *100 Orchard*, 2021 WL 2333244, at *1.

Put plainly, the virus does not pose a risk of injuring inanimate objects. Almost two years into the pandemic, no one has ever seen physical property damage caused by COVID-19 in our homes, for instance, despite the alleged ubiquity of the virus. Nor could anyone reasonably argue that COVID-19 rendered our homes uninhabitable or even "unsafe" for their "functional use," as First and Stewart alleges in conclusory fashion. Commercial property is no different. Common sense and experience tell us that. *See Iqbal*, 556 U.S. at 663-64. To accept First and Stewart's argument is to accept that virtually all property has been physically lost or damaged and required repair or replacement. But the indisputable reality demonstrates the opposite. COVID-19 poses no more threat to property than the common cold, which is to say none. *Dino Drop, Inc. v. Cincinnati Ins. Co.*, 2021 WL 2529817, at *7 (E.D. Mich. June 21, 2021) ("[T]he presence of COVID-19 at the premises is analogous to the presence of virus particles causing influenza or the common cold."). Acknowledging this obvious reality is not ignoring science or usurping the role of the expert witness as First and Stewart and amici assert. It is, instead, the only conclusion to which *Twombly*/*Iqbal*'s gatekeeping requirement can reasonably lead.

Amici National Independent Venue argues that the district court (and hundreds of others nationwide) usurped the role of expert witnesses by applying

*Twombly*'s requirement of common sense to the Policy language. *See* National Brief at 11-14. But National's foundational premise is incorrect. These cases do not turn on "evolving science." They turn on contractual interpretation. They involve applying straightforward policy terms whose meanings are well understood to common-sense, observable facts. Whether the virus lives for three hours or 28 days or is transmissible only person-to-person or via fomites is ultimately irrelevant to the coverage question for the reasons already explained.[5]

A final obvious flaw in First and Stewart's logic is highlighted by the fact that widespread vaccination is likely to render COVID-19 far less dangerous to humans than pathogens that are more commonplace. If this Court were to accept First and Stewart's illogical theory, it would mean that property supposedly physically lost or damaged could be "repaired" by mass vaccination of *people*, while the property itself remained physically unchanged. It would also mean that the duration of the period

---

[5] National also argues that new scientific studies show cleaning might be harder than was first thought, *id.* at 26-28, and that efforts to disinfect property is a "damages" question not relevant to coverage. Both of these arguments ignore the text of the Policy. As explained below, cleaning is not repair or replacement. And even if National is correct, the property remains structurally sound and at worst, infectious until the virus expires naturally for lack of a host for a slightly longer period of time. The same is true for other viruses like cold and flu. The property has still not sustained direct *physical* loss or damage. National's second point was addressed above. Repair and replacement is central to understanding what "physical" means in the Policy. As the Sixth Circuit explained in rejecting the same argument: "Plaintiff has not alleged any problem with the building. There is nothing to repair, rebuild, or replace that would allow the resumption of in-person dining operations." *Santo's Italian Cafe*, 15 F.4th at 402. So too here.

of restoration would be dependent on community efforts to eliminate the spread of COVID-19 and not on the diligence of First and Stewart to repair or replace its property. Such a conclusion is not supported by a plain-meaning interpretation of the Policy. *Cf. George Gordon Enterps., Inc. v. AGCS Marine Ins. Co.*, No. 21STCV02950, Slip Op. at *8 (Cal. Super. Ct. L.A. Cnty. June 1, 2021) (dismissing with prejudice: "if fully vaccinated individuals can now enter onto [the insured]'s real property and utilize [the insured]'s personal property, [the insured] has not pled what physical change occurred to its real and personal property which enabled such patronage to resume").

#### (2) Property that merely needs to be cleaned has not been damaged because cleaning is not repair, rebuilding, or restoration.

An item or structure that merely needs to be cleaned has not suffered "loss" or "damage" which is both "direct" and "physical." *See, e.g.*, *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 871-72 (11th Cir. 2020); *accord Universal Image Productions, Inc. v. Fed. Ins. Co.*, 475 Fed. App'x 569, 574 (6th Cir. 2012) ("cleaning . . . with hot water and 'Lysol type, cleaning, household cleaning things'" does not "constitute physical loss or damage."). As one court explained

> Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

*Uncork & Create*, 498 F. Supp. 3d at 883–84.

In fact, the only reason to "clean" property on which the COVID-19 virus is suspected to be present is to inactivate the virus as a threat to humans—a process that also occurs naturally through the passage of time. But, as already explained, any threat the virus poses to humans does not equal direct physical loss or damage to property or the threat thereof. *See, e.g.*, *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, __ F. Supp. 3d __, No. 1:20-cv-1136, 2021 WL 1600831, at *6 (W.D.N.Y. Apr. 22, 2021) ("[The COVID-19 virus] presents a mortal hazard to humans, but little or none to buildings which remain intact and available for use once the human occupants no longer present a health risk to one another."); *R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, 8:20-CV-2323-T-30AEP, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021) ("COVID-19 impacts human health and human behavior. COVID-19 does not impact physical structures, other than to require additional cleaning and sanitizing of those structures."); *Oral Surgeons*, 2 F.4th at 1144 ("Property that has suffered physical loss or physical damage requires restoration."); *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, No. RDB-20-2892, 2021 WL 1400891, at *11 (D. Md. Apr. 14, 2021) ("Arguments that the surfaces at its premises needed to be cleaned cannot qualify as restoration."); *Moody v. Hartford Fin. Grp., Inc.*, No. 20-2856, 2021 WL 135897, at *6 (E.D. Pa. Jan. 14, 2021) ("Nor would coverage for actual or threatened coronavirus contamination make sense in connection with the

period of restoration, because cleaning surfaces cannot reasonably be described as repairing, rebuilding, or replacing.").

### c. First and Stewart's communicable-disease argument is irrelevant.

First and Stewart argues that the Policy's communicable disease coverage extension, "is an express recognition that [a] virus is a 'covered cause of loss' that can satisfy the 'direct physical loss or damage' coverage trigger under the Business Interruption Coverage." Brief at 62. First and Stewart argues that, because communicable disease coverage provides for reimbursement to repair, rebuild, or replace property that has been damaged or destroyed by a virus, the Policy acknowledges that a virus can cause property damage or destruction.

This argument misses the point. The question here is whether First and Stewart's well-pleaded, non-conclusory factual allegations, viewed through the lens of common sense and experience, plausibly allege coverage under the Policy. *Iqbal*, 556 U.S. at 663-64. The question is not whether some hypothetical virus could ever damage or destroy property. As already explained, common sense and almost two years of shared experience demonstrates that COVID-19 does not. *See Dino Drop*, 2021 WL 2529817, at *7 ("[T]he presence of COVID-19 at the premises is analogous to the presence of virus particles causing influenza or the common cold."). First and Stewart's well-pleaded allegations suggest nothing to the contrary.

### d.    The language is not ambiguous.

First and Stewart argues, in the alternative, that the Policy language is ambiguous and that its own interpretation is reasonable. Brief at 61. An ambiguity exists only when a clause is "on its face . . . fairly susceptible to two different interpretations, both of which are reasonable." *Quadrant*, 154 Wn. 2d at 171. First and Stewart's interpretation, which requires the Court to (1) insert "of use" into the Policy, (2) delete the word "physical," and (3) ignore the period of restoration, is not reasonable for all the reasons explained above. *Id.* ("[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists."); accord *Hill & Stout*, 2021 WL 4189778, at *3 (language at issue here "is not susceptible to two different but reasonable interpretations;" accordingly "[t]he Court does not find this Policy language ambiguous . . . .").

### e.    First and Stewart's remaining arguments are meritless.

First and Stewart lobs several additional arguments that merit little response. First, it argues that the district court adopted and applied "federal common law." Brief at 39-40. That argument is plainly incorrect. The court's detailed and thorough analysis of Washington authority in its opinions in the consolidated matters and this case speaks for itself. In any event, it comes as no surprise that courts nationwide

applying similar contractual interpretation principles would find the meaning of the policy language consistent from jurisdiction to jurisdiction.

Second, First and Stewart accuses the district court of "following the herd." *Id.* at 40. This criticism is both incorrect and unpersuasive. It was entirely proper for the district court to consider well-reasoned decisions interpreting similar facts and law, which are necessarily persuasive authority.

Third and finally, First and Stewart criticizes the district court's citation to Couch on Insurance. For support, it cites only an article recently published ***by its own lawyer*** in an ABA journal—a transparent piece of advocacy despite the gilding of publication. Brief at 40-41. Couch remains a widely respected and long-relied-upon secondary source on insurance law. First and Stewart also argues that Couch's author has "conceded" in a subsequent article that the trend in this area of law is to recognize loss of use as direct physical loss or damage. Brief at 43. The cited article does not say that. Instead, the author merely analyzed the Third Circuit's *Port Authority* decision and subsequent cases. The "trend" the author notes is not to the sort of free-for-all "loss of use" First and Stewart urges here. The article notes that, although still very much a minority position, some states have moved toward recognizing that physical intrusion, coupled with uninhabitability and actual costs incurred to repair, rebuild, or replace, can sometimes trigger direct physical loss. As noted above, Washington law expressly does not recognize the uninhabitability

42

standard. And it would not help First and Stewart here anyway because it has neither suffered uninhabitability nor incurred actual costs to repair, rebuild, or replace damaged or lost property.

## C. There are other, independent grounds to affirm on certain coverages.

As noted above, all of the coverages First and Stewart cite require it to have suffered direct physical loss or damage to property or provide a limit on recovery to harm resulting therefrom. Because COVID-19 does not cause direct physical loss or damage to property, the Policy affords no coverage. Additionally, there are other independent grounds on which to affirm on various coverages as explained below. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) ("[W]e may affirm on any ground supported by the record . . . .").

### 1. There is no Civil Authority coverage here because there is no causal link and because no civil authority has "prohibited" access to the hotel.

In addition to requiring direct physical loss or damage to property, civil authority coverage requires a causal nexus and complete prohibition of access. First and Stewart pleaded neither.

#### a. There is no causal link.

First and Stewart has failed to plausibly plead that direct physical loss or damage to property within one mile of any of its insured locations *caused* the government to issue its social distancing orders. Plausible facts establishing causation are required. *See Dickie Brennan & Co., Inc. v. Lexington Insurance Co.*,

636 F.3d 683, 686-87 (5th Cir. 2011) (The "policy requires proof of a causal link between prior damage and civil authority action."); *Nw. Selecta, Inc. v. Guardian Ins. Co., Inc.*, CV 20-1745 (FAB), 2021 WL 2072613, at *7 (D.P.R. May 24, 2021) (civil authority order must be "directed at the operation of a specific business").

Because First and Stewart failed to plausibly plead facts showing the required causal link, there is no civil authority coverage here. *Dickie Brennan*, 636 F.3d at 686-87; *accord Lafayette Bone & Joint Clinic*, 2021 WL 1740466, at *4 ("[T]he executive orders were not issued due to direct physical loss of or damage to the property."); *Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, CV 20-2295, __ F. Supp. 3d __, 2021 WL 1614812, at *12 (E.D. La. Apr. 26, 2021) ("Like in *Dickie Brennan*, the Closure Orders were preventative and lack the requisite nexus with prior property damage."). Further, First and Stewart has never pleaded that the government orders *required* it to close its hotel because, of course, they did not.

### b. Access was not prohibited.

Further, Civil Authority coverage is unavailable because no civil authority *prohibited* access to the hotel. "Prohibit" means to "to forbid [access] by authority or command." *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248, 2003 WL 21145725 (5th Cir. 2003). "The clause requires complete prohibition of access." *Lafayette Bone & Joint*, 2021 WL 1740466, at *4. There is no allegation that access to the hotel was ever prohibited by the government orders. *See also Nw.*

44

*Selecta*, 2021 WL 2072613, at *7 (no coverage where civil authority order did not prohibit access to businesses). Indeed, as noted above, the government order permitted hotels and restaurants to remain open.

### 2. Business Access coverage does not apply because there is no causal link and because access to the hotel was not impaired or obstructed.

Business Access coverage has similar requirements, and First and Stewart's claim suffers from similar flaws.

### a. No causal link.

Business Access coverage also requires a nexus between off-site direct physical loss or damage and an impairment or obstruction to access of the hotel. That is, direct physical loss or damage within one mile of the hotel must have led to an impairment or obstruction of access. 2-ER-55. First and Stewart did not plead any such loss or damage within one mile of the hotel, nor did it explain how or why it led to an impairment or obstruction of access. *Cf. Dickie Brennan*, 636 F.3d at 687 (causal link required). Further, as noted above, the government orders permitted the hotel and its restaurants to remain open as essential businesses. First and Stewart made a business decision to close them.

### b. Access was not impaired or obstructed.

First and Stewart did not plead that access to the hotel was physically obstructed or impaired at any time, nor that the suspension of operations was caused by such obstruction or impairment. To the contrary, First and Stewart was allowed

45

to remain open so it could serve essential customers. It voluntarily chose to close down the hotel to better serve its own economic interests. Accordingly, First and Stewart failed to plead facts that establish a plausible claim for Business Access coverage.

### 3. Communicable Disease coverage does not apply because there was no communicable disease event and because First and Stewart alleges no covered damages.

First and Stewart's claims for Communicable Disease coverage requires a "communicable disease event" and that it suffer covered damages. Neither occurred here.

#### a. No communicable disease event.

A "communicable disease event" is defined as "an event in which a public health authority has ordered that *a location* be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease *at such location*." Policy 2-ER-89 (emphasis added). Here, First and Stewart has not alleged that any order resulted from an outbreak at the hotel or that the hotel was ordered to be "evacuated, decontaminated or disinfected." To the contrary, there is no dispute the hotel was deemed an essential business and permitted to remain open.

Further, "public health authority" is narrowly defined in the Policy as a "government authority having jurisdiction over your operations relative to health and hygiene standards necessary for the protection of the public." 2-ER-96. But First

and Stewart has identified no such order. Accordingly, there has been no communicable disease event.

### b. No covered damages.

Communicable Disease coverage pays for a narrow set of "necessary costs" of physical loss or damage directly caused by a communicable disease event identified in the Communicable Disease provision, such as charges to (a) tear out and replace property to gain access, (b) repair or rebuild damaged or destroyed property, and (c) other mitigation costs associated with property damage. 2-ER-58-59. First and Stewart does not allege that it has incurred any of these costs, which makes sense because it has not suffered a communicable disease event or any physical loss or damage to property.

## D. The Policy's virus exclusion bars all loss or damage caused by a virus.

Even if First and Stewart were able to demonstrate coverage, its loss or damage would be excluded by the virus exclusion. That provision, which is "Applicable to all Coverages," provides that Fireman's Fund

> will not pay for [any coverage] for any loss, damage, or expense caused directly or indirectly by or resulting from any of the following excluded causes of loss:. . . Mortality, death by natural causes, disease, sickness, any condition of health, bacteria, or **virus**.

3-ER-44-45 (emphasis added). First and Stewart affirmatively pleaded that COVID-19 is a virus and that its alleged damages arose from the presence of COVID-19. *See, e.g.*, 2-ER-300 ("This action arises out of an insurance coverage dispute . . .

over First and Stewart's losses arising from the SARS-CoV-2 virus . . . ."). Thus, it cannot recover for any of the loss or damage it seeks.

Other courts have held the identical exclusion in the same Fireman's Fund policy form bars the same claims First and Stewart makes here. *See, e.g.*, *Boulevard Carroll*, 2020 WL 7338081, at *2 ("In addition, the Policy clearly excludes coverage for damage, loss or expense arising from a virus."); *Marina Pacific*, 20SMCV00952, Slip Op. at *9 ("This provision expressly excludes coverage of any direct physical loss or damage resulting from a virus; it is beyond dispute that COVID-19 is a virus.").

## VI.   CONCLUSION

For the reasons detailed above, the district court did not err. Accordingly, Fireman's Fund respectfully requests that this Court affirm the district court's order and judgment and award costs in its favor.

Dated: December 8, 2021

Respectfully submitted,

*/s/ Anthony Todaro*
Anthony Todaro
Joseph Davison
**DLA Piper LLP (US)**
701 Fifth Ave, Suite 6900
Seattle, Washington 98104
(206) 839-4800
anthony.todaro@dlapiper.com
joseph.davison@dlapiper.com

Brett Solberg
**DLA Piper LLP (US)**
1000 Louisiana, Suite 2800
Houston, Texas 77079
(713) 425-8482
brett.solberg@dlapiper.com

*Counsel for Defendant - Appellee*
*Fireman's Fund Insurance Company*

## Certificate of Compliance for Briefs

**9th Cir. Case Number** _____ **21-35637** _____

I am the attorney or self-represented party.

**This brief contains 12,117 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Date: December 8, 2021           */s/ Anthony Todaro* _____
                                       Anthony Todaro

                                       *Counsel for Defendant - Appellee*
                                       *Fireman's Fund Insurance Company*

**Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s)** _____ **21-35637** _____

The undersigned attorney or self-represented party states the following:

[  ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[x] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

In addition to the related cases set forth in First and Stewart's Brief, Fireman's Fund notes that the following appeals involving the same or similar policy language under Washington law have also been filed. All but *Neighborhood Grills* are consolidated in this Court under the lead case number 21-35495.

- No. 21-35495; *Worthy Hotels, Inc., et al. v. Fireman's Fund Ins. Co., et al.*

- No. 21-35511; *Vita Coffee, LLC, et al v. Fireman's Fund Ins. Co., et al.*

- No. 21-35523; *Weimac, LLC, et al v. Fireman's Fund Ins. Co., et al.*

- No. 21-35498; *Naccarato Restaurant Group Inc, et al v. Fireman's Fund Ins. Co., et al.*

- No. 21-35646; *ES Restaurant Group, Inc., et al v. Fireman's Fund Ins. Co., et al.*

- No. 21-35753; *Neighborhood Grills Management, et al v. National Surety Corporation*

*/s/ Anthony Todaro*
Anthony Todaro

*Counsel for Defendant - Appellee*
*Fireman's Fund Insurance Company*

## **Certificate of Service**

I hereby certify that on December 8, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Anthony Todaro
Anthony Todaro

*Counsel for Defendant - Appellee*
*Fireman's Fund Insurance Company*