# No. 21-35637

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————————

FIRST AND STEWART HOTEL OWNER, LLC,
a Delaware limited liability company,
*Plaintiff-Appellant,*

v.

FIREMAN'S FUND INSURANCE COMPANY,
a California corporation,
*Defendant-Appellee.*

———————————

*On Appeal from the United States District Court for the Western District of Washington (Seattle),*
*Case No. 2:21-cv-00344-BJR-DLR • Honorable Barbara J. Rothstein, U.S. District Judge*

## REPLY BRIEF OF PLAINTIFF-APPELLANT

JOSEPH D. JEAN
SCOTT D. GREENSPAN
BENJAMIN D. TIEVSKY
PILLSBURY WINTHROP
SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
joseph.jean@pillsburylaw.com
scott.greenspan@pillsburylaw.com
benjamin.tievsky@pillsburylaw.com

CHRISTOPHER S. MARKS
MALIKA JOHNSON
ALICE C. SERKO
TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle, WA 98101
Telephone: (206) 889-5150
cmarks@tktrial.com
mjohnson@tktrial.com
aserko@tktrial.com

*Attorneys for Plaintiff-Appellant,*
*First and Stewart Hotel Owner, LLC*



# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 5

I.     FFIC IGNORES THE EXPRESS DESIGNATION OF "COMMUNICABLE DISEASE" AS A "COVERED CAUSE OF LOSS" ................................................. 5

II.    FFIC MISREPRESENTS PRECEDENT AND MISCHARACTERIZES F&S's ALLEGATIONS REGARDING PRESENCE OF CORONAVIRUS ...................... 7

    A.    FFIC Disingenuously Cites Caselaw with no Allegations of Physical Intrusion ...................................... 8

        1.    Washington Authorities Cited by FFIC are Distinguishable from, and Support a Finding of Coverage for, F&S's Claims ..................................... 8

        2.    FFIC's Description of Federal Court of Appeals' Precedent is Misleading ......................................... 11

        3.    FFIC's Remaining Caselaw is Unpersuasive .......... 12

    B.    F&S's Allegations Regarding Presence of Coronavirus at the Hotel Trigger Coverage ................... 16

        1.    Courts Credit Allegations Similar to F&S's ............ 16

        2.    FFIC Posits a Strawman Complaint in Place of F&S's Well-Pled Allegations ................................... 18

    C.    "Period of Restoration" Does Not Alter the Coverage Trigger ............................................................ 22

    D.    FFIC Misrepresents F&S's Criticism of *Couch on Insurance* ................................................................ 27

III.   FFIC IGNORES THE "SLOWDOWN" COVERAGE ................ 28

i

# TABLE OF CONTENTS
## (continued)

**Page**

IV. GOVERNMENT ORDERS, ISSUED IN RECOGNITION OF CORONAVIRUS' PHYSICAL DAMAGE TO PROPERTY, DEPRIVED F&S OF PHYSICAL USE OF ITS PROPERTY ...................................... 30

V. F&S STATES A CLAIM UNDER THE POLICIES' EXTENSIONS OF COVERAGE ................................ 33

VI. THE MORTALITY AND DISEASE EXCLUSION DOES NOT APPLY .................................... 34

CONCLUSION ......................................... 38

CERTIFICATE OF COMPLIANCE ...................................... 39

CERTIFICATE OF SERVICE................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*10012 Holdings, Inc. v. Sentinel Ins. Co.*,
__ F.4th __, 2021 WL 6109961 (2d Cir. Dec. 27, 2021) ...................... 18

*Aerojet Gen. Corp. v. Transport Indem. Co.*,
948 P.2d 909 (Cal. 1997) ....................................................... 22

*Am. Best Food, Inc. v. Alea London, Ltd.*,
229 P.3d 693 (Wash. 2010) .................................................. 33

*Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*,
673 N.W.2d 65 (Wis. 2004) ................................................. 36

*Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*,
530 F. Supp. 3d 74 (D. Mass. 2021) ..................................... 13

*Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.*,
No. SCV-268104 (Cal Super. Ct. Sept. 8, 2021) ................................. 14

*Anderson & Middleton Lumber Co. v. Lumbermen's Mut. Cas. Co.*,
333 P.2d 938 (Wash. 1959) ........................................... 23, 26

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ............................................. 18

*Blvd. Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*,
No. CV2011711SDWLDW, 2020 WL 7338081 (D.N.J. Dec.
14, 2020) ............................................................................. 13

*Boffo Cinemas LLC v. Fireman's Fund Ins. Co.*,
No. 37-2021-5179 (Cal. Super. Ct. Aug. 27, 2021) .............................. 13

*Borton & Sons, Inc. v. Travelers Ins. Co.*,
99 Wn. App. 1010, 2000 WL 60028 (Wash. Ct. App. 2000) .................. 8

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

<u>Cases</u>

*Brighton Collectibles, LLC v. Certain Underwriters at Lloyd's London*,
798 F. App'x 144 (9th Cir. 2020) .......................................... 37

*Camper v. State Farm Fire & Cas. Co.*,
No. C20-5283 TLF, 2021 WL 1922976
(W.D. Wash. May 13, 2021) .................................................. 21

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
500 F. Supp. 3d 565 (E.D. Tex. 2021) ..................................... 1, 6, 7, 17

*Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*,
No. 1:20-cv-02512-JPH-MJD, 2021 WL 3187521
(S.D. Ind. July 27, 2021) ...................................................... 14

*Crescent Hotels & Resorts, LLC v. Zurich Am. Ins. Co. & Fireman's Fund Ins. Co.*,
No. 2021-02974 (Va. Cir. Ct. July 2, 2021) ............................... 14

*Downs Ford, Inc. v. Zurich Am. Ins. Co.*,
No. 3:20-cv-08595-BRM-ZNQ, 2021 WL 1138141 (D.N.J. Mar. 25, 2021) ...................................................... 13

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins.*,
506 F. Supp. 3d 360 (E.D. Va. 2020) ..................................... 17

*Fujii v. State Farm Fire & Cas. Co.*,
857 P.2d 1051 (Wash. Ct. App. 1993) .................................... 9, 31

*Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*,
522 F. Supp. 3d 1279 (N.D. Ga. 2021), *aff'd*, No. 21-11046,
2021 WL 3870697 (11th Cir. 2021) ...................................... 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

<u>Cases</u>

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
No. 2:12-cv-04418 (WHW)(CLW), 2014 WL 6675934
(D.N.J. Nov. 25, 2014) .................................................................... 24, 26

*Hampshire House Corp. v. Fireman's Fund Ins. Co.*,
No. CV 20-11409-FDS, 2021 WL 3812535 (D. Mass. Aug.
26, 2021) ........................................................................................... 13

*Hill & Stout PLLC v. Mut. of Enumclaw Ins. Co.*,
No. 20-2-07925 SEA, 2020 WL 6784271 (Wash. Super. Ct.
Nov. 13, 2020) ................................................................................... 33

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*,
512 F. Supp. 3d 1323 (S.D. Fla. Jan. 11, 2021) ................................. 13

*Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*,
98 So.3d 74 (Fla. Dist. Ct. App. 2012) ........................................... 6, 37

*Marina Pac. Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*,
No. 20SMCV00952 (Cal. Super. Ct. Oct. 5, 2021) ............................. 14

*Mellin v. N. Sec. Ins. Co., Inc.*,
115 A.3d 799 (N.H. 2015) .................................................................. 17

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
15 F.4th 885 (9th Cir. 2021) .............................................................. 11

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
487 F. Supp. 3d 834 (N.D. Cal. 2020), *aff'd*, 15 F.4th 885
(9th Cir. 2021) ................................................................................... 12

*Nautilus Grp., Inc. v. Allianz Global Risks US*,
No. C11-5281BHS, 2012 WL 760940
(W.D. Wash. Mar. 8, 2012) ........................................................... 32, 35

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

<u>Cases</u>

*NeCo, Inc. v. Owners Ins. Co.*,
    520 F. Supp. 3d 1175 (W.D. Mo. 2021) ................................................. 27

*Neer v. Fireman's Ins.*,
    692 P.2d 830 (Wash. 1985) ................................................... 32

*Nevers v. Aetna Ins. Co.*,
    546 P.2d 1240 (Wash. Ct. App. 1976) ..................................... 9

*Novant Health, Inc. v. Am. Guar. & Liab. Ins. Co.*,
    No. 1:21-CV-309, 2021 WL 4340006
    (M.D.N.C. Sept. 23, 2021) ............................................. 17, 20

*Olympic S.S. Co. v. Centennial Ins. Co.*,
    811 P.2d 673 (Wash. 1991) ......................................... 4, 7, 15

*Or. Auto. Ins. Co. v. Salzberg*,
    535 P.2d 816 (Wash. 1975) ......................................... 16, 22

*Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
    No. 15-cv-01932, 2016 WL 3267247 (D. Or. June 7, 2016),
    *vacated pursuant to settlement*, No. 15-cv-01932,
    2017 WL 1034203 (D. Or. Mar. 6, 2017) ...................................... 20, 24

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
    2 F.4th 1141 (8th Cir. 2021) ......................................... 11, 12

*Perry St. Brewing Co., LLC v. Mut. Of Enumclaw Ins. Co.*,
    No. 20-2-02212-32, 2020 WL 7258116 (Wash. Super. Ct.
    Nov. 23, 2020) ................................................................. 32

*Pez Seafood DTLA, LLC v. Travelers Indem. Co.*,
    514 F. Supp. 3d 1197 (C.D. Cal. 2021) ......................................... 33, 34

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

<u>Cases</u>

*Port Authority of New York and New Jersey v. Affiliate FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002) ................................................................29

*PS Bus. Mgmt. v. Fireman's Fund Ins. Co.*,
No. 21-1229, 2021 WL 4989870 (E.D. La. Oct. 27, 2021) ..................14

*Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*,
882 P.2d 703 (Wash. 1994) ................................................................29

*Ross Stores, Inc. v. Zurich Am. Ins. Co.*,
No. RG20-084158, 2021 WL 3700659
(Cal. Super. Ct. July 13, 2021) ..........................................................37

*Saddle Ranch Sunset, LLC v. Fireman's Fund Ins. Co.*,
No. 20STCV36531 (Cal. Super. Ct. Feb. 8, 2021) ..............................13

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
15 F.4th 398 (6th Cir. 2021) ..............................................................11

*Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Cos.*,
No. 217-2020-CV-00309, 2021 WL 4029204 (N.H. Super. Ct.
June 15, 2021) ....................................................................................17

*Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*,
492 P.3d 843 (Wash. Ct. App. 2021) ........................................... passim

*Snoqualmie Entm't Auth. v. Affiliated FM Ins. Co.*,
No. 21-2-03194-0 SEA, 2021 WL 4098938 (Wash. Super.
Ct. Sept. 2, 2021) ..........................................................................31, 32

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ..............................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

<u>Cases</u>

*Spaghettini v. Fireman's Fund Ins. Co.*,
   No. SCV-266378 (Cal. Super. Ct. Aug. 11, 2021) ............................... 14

*State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C.*,
   174 P.3d 1175 (Wash. Ct. App. 2007).................................................. 34

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
   478 F. Supp. 3d 794 (W.D. Mo. 2020).................................................. 16

*Villella v. Pub. Employees Mut. Ins. Co.*,
   725 P.2d 957 (Wash. 1986) ..................................................................... 8

*Vision One, LLC v. Phila. Indem. Ins. Co.*,
   276 P.3d 300 (Wash. 2012) ...................................................................... 8

*W. Am., Inc. v. Aetna Cas. & Sur. Co.*,
   915 F.2d 1181 (8th Cir. 1990)............................................................... 26

*W. Fire Ins. Co. v. First Presbyterian Church*,
   437 P.2d 52 (Colo. 1968) ............................................................. 1, 9, 17

*Wash. Mut. Bank v. Commonwealth Ins. Co.*,
   133 Wn. App. 1031, 2006 WL 1731318
   (Wash. Ct. App. 2006) .............................................................................. 8

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
   499 F. Supp. 3d 670 (N.D. Cal. 2020).................................................. 13

*Wolstein v. Yorkshire Ins. Co., Ltd.*,
   985 P.2d 400 (Wash. Ct. App. 1999)........................................... 9, 11, 31

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Rules and Regulations

Federal Rules of Civil Procedure
Rule 12(b)(6) ........................................................................ 19

Other Authorities

B. Ostrager et al., *Handbook on Ins. Coverage Disputes*
Section 1.01[b] (20th ed. 2020) ........................................... 36

Nat'l Ins. Ass'n of Ins. Commissioners, *Business
Interruption/BusinessOwner's Policies (BOP)*,
https://content.naic.org/cipr_topics/topic_business_interru
ptionbusinessowners_policies_bop.htm (Dec. 9, 2020) ....................... 21

*Repair*, MERRIAM-WEBSTER, https://www.merriam-
webster.com/dictionary/repair ............................................. 26

Richard P. Lewis et al. *Business Income Insurance Disputes*
Section 5.02[J] (2d ed. 2020) ............................................. 26

Steven Plitt et al., *Couch on Ins.* Section 167:18 (3d ed. 2021) .. 26, 27, 28

Steven Plitt, *Direct Physical Loss in All-Risk Policies:
The Modern Trend Does Not Require Specific Physical
Damage*, Alteration, Claims J. (Apr. 15, 2013),
https://amp.claimsjournal.com/magazines/idea-
exchange/2013/04/15/226666.htm ....................................... 28

**INTRODUCTION**

Fireman's Fund Insurance Company's ("FFIC") Answering Brief ("Opp.") suffers from three critical flaws, each of which is an independent basis for reversal in favor of First and Stewart Hotel Owner, LLC ("F&S").

*First*, FFIC cannot demonstrate F&S's interpretation of the Policies is unreasonable, i.e., that the Policies' Communicable Disease Coverage is an express recognition that virus is a "covered cause of loss"—meaning the presence of a communicable disease satisfies the Policies' coverage trigger. Unable to muster a legitimate alternative interpretation of the relevant Policy language, FFIC argues that "common sense" demonstrates the presence of SARS-CoV-2 ("Coronavirus") and the disease it causes, COVID-19, cannot cause physical loss or damage (Opp., 40). But that is not good enough.

As one court has already found, physical loss or damage is sufficiently pled where Coronavirus "was actually present and actually damaged the property," and the policy "expressly covers loss and damage caused by 'communicable disease.'" *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565, 569 (E.D. Tex. 2021). Any

1

finding to the contrary renders the Policies' Communicable Disease Coverage illusory. Indeed, if this coverage requires physical loss or damage, but a communicable disease like COVID-19 cannot cause physical loss or damage, as FFIC asserts, then why did FFIC collect premiums for this coverage?

*Second*, FFIC inappropriately continues to frame F&S's claim as a mere "loss of use" claim, arguing F&S's losses were caused solely by government orders. But no matter how many times FFIC repeats its "loss of use" rhetoric, rife with citations to caselaw addressing solely government order-related losses, it cannot change the crux of F&S's well-pled Amended Complaint ("Complaint"): Coronavirus was present at the Thompson Seattle Hotel (the "Hotel"), in the air and on surfaces, damaging the property and rendering the Hotel unsafe and unfit, in whole or in part, for its intended uses.

*Third*, FFIC disregards the Policies' coverage for a "slowdown" of F&S's operations. This provision renders impotent the district court's attempt to distinguish *Port Authority* and the other toxic/hazardous/noxious substance cases as requiring an "all-encompassing loss" (that is, a complete shutdown of operations) equated

with physical damage.  F&S need not show such an "all-encompassing" loss to recover under its Policies.  Only a "slowdown" is required.  FFIC's failure to address this coverage is significant.

These three issues distinguish F&S's case from most other Coronavirus insurance coverage cases, and thus render FFIC's decision-tallying exercise, by which it gathers numerous Washington authorities and "500 cases from 37 other states" (Opp., 11), irrelevant.  Indeed, Washington courts merely require the presence of an external force on insured property to trigger coverage.  *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 492 P.3d 843, 856 n.16 (Wash. Ct. App. 2021) (holding coverage is triggered "when the loss of use occurred because of a *physical effect* on the insured property").[1]  And that is exactly what F&S alleged in its Complaint.

FFIC's other arguments, including "Period of Restoration," require F&S to allege that "property had to be repaired or rebuilt," (Opp., 19), miss the mark.  "Period of Restoration" governs the quantum of coverage in specific scenarios, and simply does not determine whether

---

[1] Emphasis is added unless noted; internal quotation marks and citations omitted unless noted.

3

coverage has been triggered in the first place. But either way, F&S sufficiently alleged property damaged by communicable disease was "repaired" within the meaning of that term.

Furthermore, notwithstanding that the heart of the Complaint alleges physical loss or damage to insured property caused by Coronavirus, FFIC also fails to articulate any persuasive argument why the Washington decisions finding "physical loss" due to *government shutdown orders* were incorrectly decided (Opp., 31).

Finally, if the Policies' Mortality and Disease Exclusion (the "M&D Exclusion") were construed to apply to losses caused by a communicable disease, the Communicable Disease Coverage is illusory, as there is no carve-out in the M&D Exclusion for this coverage, or any other policy language suggesting the Communicable Disease Coverage is an exception to the M&D Exclusion. FFIC's post-loss interpretation thus violates Washington law. *Olympic S.S. Co. v. Centennial Ins. Co.*, 811 P.2d 673, 680 (Wash. 1991) (rejecting insurers' interpretation that would render coverage "illusory").

## ARGUMENT

## I. FFIC IGNORES THE EXPRESS DESIGNATION OF "COMMUNICABLE DISEASE" AS A "COVERED CAUSE OF LOSS"

FFIC dedicates less than a page to address the Policies' express recognition of "communicable disease" as a "covered cause of loss" that causes physical loss or damage (Opp., 40). In its cursory response, FFIC does not address any of F&S's caselaw, let alone the Policies' coverage language. Instead, FFIC merely argues "common sense" dictates Coronavirus cannot damage property. (*Id.*)

But FFIC's self-serving view of "common sense" does not control over the Policies' terms. Here, the Policies broadly define "covered cause of loss" as any "risk[] of direct physical loss or damage not excluded or limited" by the Policies. 2-ER-89.[2] The Policies' "Extensions of Coverage" include "Communicable Disease Coverage." 2-ER-58-59. Under this coverage, FFIC will pay for "costs incurred to: . . . [r]epair or rebuild Property Insured *which has been damaged or destroyed <u>by</u> the communicable disease*," *id.*, defined to include a "virus," 2-ER-89. *These* Policies could not be clearer that communicable disease

---

[2] Other than limits and sublimits, the Policies are identical. 1-ER-5 n.2. Citations are to the 2019-2020 Policy.

causes physical damage.  The inclusion of this coverage in the Policies demonstrates virus/disease is a "covered cause of loss" sufficient to cause "direct physical loss or damage" to the Hotel and other property, and virus/disease are not excluded.

This is precisely what the Eastern District of Texas found in *Cinemark*.  There, the policy—like F&S's Policies—provided additional coverages for losses caused by "communicable disease."  In evaluating whether the policyholder stated a claim, the court held:

> Unlike *Selery* [a case cited by insurer], Cinemark alleges that COVID-19 was actually present and actually damaged the property by changing the content of the air.  Cinemark's Policy is much broader than the one in *Selery* and expressly covers loss and damage caused by 'communicable disease.'  Both parties agree 'communicable disease' encompasses COVID-19.

*Cinemark,* 500 F. Supp. 3d at 569.

Other courts have likewise recognized an affirmative grant of coverage for a specified peril renders that peril a "covered cause of loss." *Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So.3d 74, 75-76 (Fla. Dist. Ct. App. 2012) (finding "collapse" is a "covered cause of loss" and not barred or limited by exclusions where "collapse" included under "Additional Coverages").

6

Ignoring this caselaw, FFIC argues "common sense" dictates a different result. But as courts have recognized, the specific policy language and facts of each case matter. *Cinemark*, 500 F. Supp. 3d at 569 (recognizing policy contained "broader" coverage language).

Callously equating a deadly disease that has killed millions with the common cold, FFIC conclusorily states "COVID-19 does not" damage property (Opp., 40). But if a highly pervasive and contagious deadly virus does not damage property as a matter of "experience" and "common sense," *id.*, then what virus does? FFIC's argument that Coronavirus cannot cause physical loss or damage to property renders the Policies' Communicable Disease Coverage illusory—and gives FFIC a windfall in collected premiums proscribed by Washington law. *Olympic S.S. Co.*, 811 P.2d at 680 (rejecting insurers' interpretation that would render coverage "illusory").

## II. FFIC MISREPRESENTS PRECEDENT AND MISCHARACTERIZES F&S'S ALLEGATIONS REGARDING PRESENCE OF CORONAVIRUS

FFIC takes liberties with its description of caselaw and with its characterizations of F&S's allegations—all of which support reversal.

### A. FFIC Disingenuously Cites Caselaw with no Allegations of Physical Intrusion

### 1. Washington Authorities Cited by FFIC are Distinguishable from, and Support a Finding of Coverage for, F&S's Claims

FFIC collects precedent for the proposition that "[m]ere economic harm or loss of use is insufficient" to trigger coverage (Opp., 16). But that is not what F&S alleges.

FFIC admits none of this precedent involves external forces affecting insured property as alleged by F&S. Rather, FFIC's cases involve mere loss of use. *See Seattle Tunnel*, 492 P.3d at 855 (finding, on summary judgment, no coverage for mere "loss of use" due to construction delays and corporate designee testified no damage to tunnel); *Villella v. Pub. Employees Mut. Ins. Co.*, 725 P.2d 957, 960 (Wash. 1986); *Borton & Sons, Inc. v. Travelers Ins. Co.*, 99 Wn. App. 1010, 2000 WL 60028, at *5 (Wash. Ct. App. 2000); *Wash. Mut. Bank v. Commonwealth Ins. Co.*, 133 Wn. App. 1031, 2006 WL 1731318, at *4 (Wash. Ct. App. 2006) (same, where "[n]o one disputes that there was no actual direct physical loss of or damage to the property"); *Vision One, LLC v. Phila. Indem. Ins. Co.*, 276 P.3d 300, 311 (Wash. 2012) (finding,

after jury trial, "soft costs" due to delay not "physical" loss); *Nevers v. Aetna Ins. Co.*, 546 P.2d 1240, 1241 (Wash. Ct. App. 1976).[3]

F&S does not seek recovery for "[m]ere economic harm or loss of use" untethered to causal physical loss or damage (Opp., 26-33). Rather, it seeks recovery for losses caused by the presence of an external force (i.e., Coronavirus) that physically altered the air and surfaces in its Hotel and at other qualifying property, rendering the property unfit for its intended uses. (Section II.B.1., *infra*)—exactly what communicable disease as a covered cause of loss envisions.

F&S's allegations, coupled with the unique policy language at issue, trigger coverage under Washington law. Indeed, in *Seattle Tunnel*, the court collected cases (many of which were cited by F&S in its Opening Brief) finding coverage "when the loss of use occurred because of a *physical effect* on the insured property." 492 P.3d at 857 n.16 (citing *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968)). The *Seattle Tunnel* court rejected coverage only because

---

[3] *Fujii v. State Farm Fire & Cas. Co.*, 857 P.2d 1051 (Wash. Ct. App. 1993) and *Wolstein v. Yorkshire Ins. Co., Ltd.*, 985 P.2d 400 (Wash. Ct. App. 1999) are similarly distinguishable (Opening Br., 37-39).

the policyholder's losses were caused by "decisions they made," and "were *not the result of any external event*." *Id.* at 857 n.18.

Further, the builder's risk policy in *Seattle Tunnel* covered losses for "direct physical loss, damage or destruction (*hereinafter referred to as 'Damage'*)" to property. 492 P.3d at 855. That the policy in *Seattle Tunnel* specifically defined "direct physical loss, damage or destruction" as "Damage" is a far cry from F&S's Policies, which cover both "loss" and "damage." FFIC could have collectively defined the Policies' coverage trigger as "Damage," but didn't. FFIC is stuck with its own language and should not be permitted to construe "loss" and "damage" to mean the same thing, rendering one of those terms superfluous. *See id.* at 851 ("It would make little sense for 'property' to mean the TBM [tunnel boring machine] if 'item' also means the TBM.").

Finally, the *Seattle Tunnel* court relied on caselaw construing the insuring agreement in standard general liability policies applying to third-party liability for damages arising from "property damage." *Id.* at 855-56. Doing so here would be inappropriate because, as noted, all-risk first-party property policies and third-party liability policies are different. (Opening Br., 50).

10

Consequently, FFIC's caselaw stands in stark contrast to F&S's Complaint and Policies. Unlike the policyholders in the aforementioned cases, F&S sufficiently alleged its Hotel was damaged and rendered unsafe for its intended uses due to the presence of Coronavirus. 3-ER-304 ¶15; 3-ER-304-05 ¶17; 3-ER-305 ¶¶18-19; 3-ER-311 ¶38; 3-ER-311-12 ¶39; 3-ER-326-27 ¶¶84-85; 3-ER-399 ¶137. In other words, the Hotel was in an "initial satisfactory state that was changed by some external event into an unsatisfactory state," *Wolstein*, 985 P.2d at 408, thus triggering coverage.

## 2. FFIC's Description of Federal Court of Appeals' Precedent is Misleading

FFIC relies on recently decided cases by several Courts of Appeals (including this Court), arguing these cases "affirmed dismissal of [] similar claim[s]" (Opp., 25). But the claims are not similar. Rather, these cases involved the sole question whether government shut down orders themselves—*not the presence of Coronavirus*—constitute physical loss or damage. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 888 (9th Cir. 2021) (California law) (noting policyholder only alleged losses from government orders); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021) (Ohio law); *Oral*

*Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 n.2 (8th Cir. 2021) (Iowa law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 1279, 1287 (N.D. Ga. 2021) (Georgia law) ("Notably, there is no allegation that [the policyholder] had a confirmed case of the virus in its offices."), *aff'd*, No. 21-11046, 2021 WL 3870697 (11th Cir. 2021).

Thus, these cases *support coverage for F&S.* Indeed, as several courts suggested, *had the policyholders alleged the presence of Coronavirus on their property*, coverage would have been triggered. *Oral Surgeons*, 2 F.4th at 1144 (recognizing "physical contamination" of property may trigger property coverage); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 841 n.7 (N.D. Cal. 2020) ("Had Mudpie alleged the presence of COVID-19 in its store, *the Court's conclusion about an intervening force would be different.*"), *aff'd*, 15 F.4th 885 (9th Cir. 2021).

### 3. FFIC's Remaining Caselaw is Unpersuasive

FFIC boasts of the "over 500 similar COVID-19 coverage disputes" that were dismissed (Opp., 25.) But in approximately 300 of those cases the policyholders either (i) did not allege the presence of

virus on the premises, or (ii) alleged the presence of virus in mere conclusory fashion. *E.g.*, *Blvd. Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, No. CV2011711SDWLDW, 2020 WL 7338081, at \*2 (D.N.J. Dec. 14, 2020) (no allegations of virus on premises); *Boffo Cinemas LLC v. Fireman's Fund Ins. Co.*, No. 37-2021-5179, \*2 (Cal. Super. Ct. Aug. 27, 2021); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1326-27 (S.D. Fla. Jan. 11, 2021).[4]

More than 200 of these dismissals involved application of broad virus exclusions not at issue in this case. *E.g.*, *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 3:20-cv-08595-BRM-ZNQ, 2021 WL 1138141, at \*4 (D.N.J. Mar. 25, 2021).

Other cases cited by FFIC either did not involve the Communicable Disease Coverage at issue here (*Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*, 530 F. Supp. 3d 74, 76 n.3 (D. Mass. 2021)), or contained little to no reasoning regarding the dismissal of the claims. *Saddle Ranch Sunset, LLC v. Fireman's Fund Ins. Co.*, No.

---

[4] *Hampshire House Corp. v. Fireman's Fund Ins. Co.*, No. CV 20-11409-FDS, 2021 WL 3812535, at \*6 (D. Mass. Aug. 26, 2021) ("'presumed'" threat of virus "has no physical effect on the property"); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 499 F. Supp. 3d 670, 674 (N.D. Cal. 2020).

20STCV36531 (Cal. Super. Ct. Feb. 8, 2021) (summary order); *Crescent Hotels & Resorts, LLC v. Zurich Am. Ins. Co. & Fireman's Fund Ins. Co.*, No. 2021-02974, Transcript, *86-87 (Va. Cir. Ct. July 2, 2021) ("I simply disagree that [virus] creates a physical loss or damage.").

Accordingly, the supposed 500 "similar" COVID-19 insurance claims are not "similar" to F&S's claim at all.

Finally, FFIC cites a handful of cases that rejected claims for coverage under policies similar to the Policies at issue here. However, those courts purported to apply California,[5] New York,[6] and Indiana law,[7] finding the substantive law of these states required "physical alteration" and tangible "damage." *See Marina Pac. Hotel & Suites*, *8. There is no such requirement under Washington law. *E.g.*, *Seattle*

---

[5] *Marina Pac. Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, No. 20SMCV00952, *8 (Cal. Super. Ct. Oct. 5, 2021); *Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.*, No. SCV-268104, *9 (Cal Super. Ct. Sept. 8, 2021); Spaghettini v. Fireman's Fund Ins. Co., No. SCV-266378, *10 (Cal. Super. Ct. Aug. 11, 2021) (California law).

[6] *PS Bus. Mgmt. v. Fireman's Fund Ins. Co.*, No. 21-1229, 2021 WL 4989870, *3 (E.D. La. Oct. 27, 2021) (New York law).

[7] *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, No. 1:20-cv-02512-JPH-MJD, 2021 WL 3187521, at *7 (S.D. Ind. July 27, 2021) (Indiana law).

*Tunnel*, 492 P.3d at 857 n.16 (coverage is triggered "when the loss of use occurred because of a *physical effect* on the insured property").

Moreover, none of these courts properly considered communicable disease as a "covered cause of loss." That is, by finding COVID-19 incapable of causing physical loss or damage, these courts rendered the Policies' Communicable Disease Coverage illusory in violation of Washington law. *See Olympic S.S. Co.*, 811 P.2d at 680. The Communicable Disease Coverage expressly refers to property "*which has been damaged or destroyed <u>by</u> the communicable disease.*" 2-ER-59.

FFIC's post-loss interpretation involves circular reasoning. FFIC argues F&S must allege "physical loss or damage to property" to trigger the Communicable Disease Coverage (Opp., 47). Yet, FFIC also argues COVID-19 "impacts human health and human behavior, not physical structures," and so it can never cause physical loss or damage. (*Id.*, 34). *But FFIC's flawed reasoning would apply to every communicable disease.* Under FFIC's logic, no communicable disease could ever trigger coverage, rendering the Communicable Disease Coverage illusory. (Part I., *supra*). And it is the Communicable Disease Coverage itself that demonstrates virus is a covered cause of loss for purposes of

15

numerous other coverages under the Policies. Any other reading would give FFIC an impermissible windfall. *Or. Auto. Ins. Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975) (rejecting interpretation that would "be tantamount to a questionable windfall for the insurer").

Neither FFIC, the district court, nor any of the aforementioned cases addressed this critical issue and, for that reason, none is persuasive here.

## B. F&S's Allegations Regarding Presence of Coronavirus at the Hotel Trigger Coverage

### 1. Courts Credit Allegations Similar to F&S's

There is a reason why FFIC attempts to blur the lines between F&S's unique claims and many other policyholders' claims based solely on government orders: courts evaluating claims like F&S's have found well-pled allegations of virus on the premises sufficient to trigger coverage.

Indeed, numerous courts have found the presence of Coronavirus (i.e., an external physical force) damages property and may render property unsafe for its intended use, thus triggering coverage. *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800-01 (W.D. Mo. 2020); (Opening Br., 55-57 (collecting cases)). This is especially apt

where, as here, the Policies designate communicable disease as a covered cause of loss capable of causing damage. 2-ER-58-59; *Cinemark*, 500 F. Supp. 3d at 569.

FFIC's contention that pre-Coronavirus precedent evaluating insurance claims involving toxic/hazardous/noxious substances has "been widely rejected by COVID-19 coverage decisions" (Opp., 33) is false. Numerous courts have applied this line of precedent, finding the presence of Coronavirus (like the presence of a harmful substance) damages property and renders it unsafe and unfit for its intended uses. *Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Cos.*, No. 217-2020-CV-00309, 2021 WL 4029204, at *10 (N.H. Super. Ct. June 15, 2021) (applying *Mellin v. N. Sec. Ins. Co., Inc.*, 115 A.3d 799 (N.H. 2015) to Coronavirus-related losses); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins.*, 506 F. Supp. 3d 360, 375 (E.D. Va. 2020) (applying *First Presbyterian Church* to Coronavirus-related losses).[8] Indeed, the

---

[8] FFIC's designation of *Elegant Massage* as an "outlier" (Opp., 34) is belied by other courts' reliance on it. *See, e.g.*, *Novant Health, Inc. v. Am. Guar. & Liab. Ins. Co.*, No. 1:21-CV-309, 2021 WL 4340006, at *3 (M.D.N.C. Sept. 23, 2021) (citing *Elegant Massage* and holding allegations of Coronavirus on premises sufficient to withstand dismissal).

Second Circuit, citing to the same toxic/hazardous/noxious caselaw relied on by F&S, acknowledged that "particulates like asbestos, odors, and noxious fumes" cause physical damage to property and are consistent with a "physical event" within the meaning of a "physical loss or damage" business interruption coverage trigger. *10012 Holdings, Inc. v. Sentinel Ins. Co.*, __ F.4th __, 2021 WL 6109961, at *3 (2d Cir. Dec. 27, 2021) (complaint relied solely on government orders and failed to allege a physical event).

### 2. FFIC Posits a Strawman Complaint in Place of F&S's Well-Pled Allegations

To attempt to avoid applicable toxic/hazardous/noxious substance precedent, FFIC mischaracterizes F&S's Complaint, arguing "F&S would not meet that standard anyway because its hotel is and always has been habitable—a fact not in dispute" (Opp., 28 n.4); and ("F&S alleged only intangible, economic harm caused by the pandemic and the government's response to it.") (*Id.*, 21).

But FFIC's mischaracterizations do not control—the Complaint controls. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

This flaw plagues the entirety of FFIC's brief: FFIC posits a strawman complaint and requests dismissal of *that strawman complaint*. But a court's duty is to analyze the complaint before it and determine whether those allegations, not the defendant's interpretation of those allegations, are sufficient. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (holding if parties advance two alternative plausible explanations, "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)").

Here, far from conclusory allegations (Opp., 21), F&S alleged physical loss or damage to its Hotel with detailed factual allegations, including but not limited to:

- Due to the presence of Coronavirus and F&S's inability to operate its Hotel safely, F&S closed the Hotel entirely on or about March 19, 2020 (3-ER-311-12 ¶¶38-39; 3-ER-333-34 ¶110);

- Due to the presence of Coronavirus at the Hotel, as evidenced by F&S's COVID-19+ employees, it is likely "transmission of the Coronavirus occurred at" the Hotel (3-ER-309 ¶31(1));

- Scientific studies show Coronavirus is highly contagious and, once airborne, infectious particles can travel twenty feet or more and remain suspended for *indefinite periods of time* (3-ER-320-22 ¶¶72-75), and air conditioning itself can spread Coronavirus through a building over 183 feet (*id.*);

- No amount of routine surface cleaning could remove the aerosolized Coronavirus suspended in the air at F&S's property, rendering the Hotel dangerous (3-ER-304 ¶15, 3-ER-311-12 ¶¶38-39); and

- Given the pervasiveness and contagious nature of Coronavirus, no amount of cleaning or ventilation intervention will prevent a person infected with Coronavirus from re-introducing the virus onto the premises (3-ER-330 ¶98).[9]

FFIC's argument that "COVID-19 harms people, not inanimate objects" (Opp., 12) ignores the long line of precedent involving toxic/hazardous/noxious substances. For six decades, courts have found these substances cause physical loss or damage to insured property precisely because they harm the people within them—rendering such property unsafe for its intended uses. *See, e.g.*, *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-cv-01932, 2016 WL 3267247, at *4-9 (D. Or. June 7, 2016) ("poor air quality caused by the wildfire

---

[9] FFIC's argument that Coronavirus dissipates "naturally through the passage of time" (Opp., 39) would require the Court to determine scientific facts at the pleading stage, which it may not do. Putting aside that Coronavirus fomites may remain infectious for days after exposure (3-ER-323-25 ¶¶77, 79-80), the consistent reintroduction of the virus onto insured property renders cleaning or dissipation ineffective. *Novant Health*, 2021 WL 4340006, at *2 (allegations that presence of Coronavirus "'is not temporary'" and is "'sustained through any occupation of the property'" sufficient to state a claim).

20

smoke"), *vacated pursuant to settlement*, No. 15-cv-01932, 2017 WL 1034203 (D. Or. Mar. 6, 2017); (Opening Br., 47-48 (collecting cases)).

FFIC's argument that if F&S's claims were covered, "then virtually every piece of property in the world has been physically lost or damaged" (Opp., 12), is a desperate, transparent plea by FFIC for this Court to ignore the Policies' language due to the purported potential for insurer insolvency if policyholders prevail in any Coronavirus insurance cases.

In fact, only a tiny fraction of property policies even *potentially* provide coverage for Coronavirus-related losses because: (1) 83% of them, unlike the Policies, have express virus exclusions;[10] and (2) most have suit limitation provisions requiring policyholder suits be brought within 1-2 years of the first date of physical loss or damage—provisions that Washington law enforces. *Camper v. State Farm Fire & Cas. Co.*, No. C20-5283 TLF, 2021 WL 1922976, at *3 (W.D. Wash. May 13,

---

[10] *See* Nat'l Ins. Ass'n of Ins. Commissioners, *Business Interruption/BusinessOwner's Policies (BOP)*, https://content.naic.org/cipr_topics/topic_business_interruptionbusiness owners_policies_bop.htm (Dec. 9, 2020).

2021).  And *even fewer* expressly cover communicable disease as a "covered cause of loss."

In any event, cries of insolvencies do not allow a court to relieve insurers of their contractual coverage obligations.  *Aerojet Gen. Corp. v. Transport Indem. Co.*, 948 P.2d 909, 932 (Cal. 1997) (refusing to rewrite policy based on "public policy considerations" and enforcing policy as written).  What's more, relieving FFIC of its obligations when it charged premiums for Communicable Disease Coverage would prejudice F&S and deliver FFIC a windfall.  *See Salzberg*, *supra*.

## C.  "Period of Restoration" Does Not Alter the Coverage Trigger

FFIC relies heavily on "Period of Restoration" to inappropriately rewrite the Policies' coverage trigger.  FFIC claims F&S must allege "property had to be repaired or rebuilt or the physically lost property had to be replaced" to trigger coverage in the first instance (Opp., 19).  FFIC is wrong.

First, "Period of Restoration," when it applies at all, is a time limitation only on the recoverable damages *after* a covered cause of loss (here communicable disease or any other kind of physical loss or damage to insured property).  "Period of restoration means *the period of*

22

*time* that begins immediately *after* the time of direct physical loss or damage caused by or resulting from a covered cause of loss to property...."  2-ER-95.

The Business Interruption insuring agreement's use of the temporal "during the period of restoration" also supports F&S's interpretation:

> [W]e will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations *during the period of restoration* arising from direct physical loss or damage to property at a location . . . caused by or resulting from a covered cause of loss.

2-ER-43.

F&S's interpretation is also consistent with long-settled Washington law that treats the period of restoration as a duration of time measurement.  *Anderson & Middleton Lumber Co. v. Lumbermen's Mut. Cas. Co.,* 333 P.2d 938, 942 (Wash. 1959).  Nothing in Washington law supports FFIC's post-loss interpretation and attempted re-write of the Policies.  All "Period of Restoration" does is limit the amount of damages collectible to a reasonable period of time required to restore a business to its normal operations.

Second, FFIC is relying on "Period of Restoration" to impose a structural alteration requirement as an additional condition for coverage. But its position was rejected long before Coronavirus. For decades pre-Coronavirus, courts consistently rejected insurers' attempts to use such provisions to impose a structural alteration requirement, holding that toxic/hazardous/noxious substances that can be removed by cleaning or dissipation do cause physical loss or damage when those substances sufficiently impair a property's functional use. *See, e.g.*, *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418 (WHW)(CLW), 2014 WL 6675934, at *2 (D.N.J. Nov. 25, 2014) (ammonia constitutes physical loss or damage; *rejecting* insurer's argument "'physical loss or damage' necessarily involves '*a physical change or alteration to insured property requiring its repair or replacement*'"); *Or. Shakespeare*, 2016 WL 3267247, at *6 ("poor air quality caused by the wildfire smoke" is physical loss or damage; *rejecting* insurer's argument period of restoration requires "structural repairs").

Third, "Period of Restoration" operates as a time measurement limitation *only* where damage to property is *capable* of being

repaired/replaced/rebuilt so that the insurer does not have to pay for additional business income loss if the policyholder is not progressing reasonably fast. Indeed, the Policies' "Period of Restoration" language qualifies that the period ends on the earlier of:

> (1) The date when such property at the location ***should be*** repaired, rebuilt, or replaced with reasonable speed and like kind and quality; or

> (2) The date when business is resumed at a new permanent location.

2-ER-95.

Here, FFIC contends Coronavirus can be removed by simple cleaning or dissipation (Opp., 38-39). In contrast, F&S alleged Coronavirus cannot be removed from surfaces via routine cleaning and cannot be effectively removed from the air at all. 3-ER-327-30 ¶¶88-98. This is a fact dispute incapable of resolution on a motion for judgment on the pleadings ("MJOP").

Due to its pervasive and contagious nature, Coronavirus is constantly reintroduced into public spaces by the presence of infected persons. This renders any cleaning procedures (or potential dissipation) futile. 3-ER-330 ¶98. In fact, contrary to FFIC's argument (Opp., 12,

38-39)[11] courts have found cleaning or dissipation of substances—such as ammonia, carbon monoxide or smoke—sufficient "repairs" within the broad meaning of period of restoration. *See Gregory Packaging*, 2014 WL 6675934, at \*3 (holding facility unfit for occupancy "until the ammonia was sufficiently dissipated").[12]

Finally, Washington Supreme Court caselaw for the past sixty years and insurance treatises authored by policyholder and insurer attorneys all agree the duration of the restoration period and the quantum of covered damages are issues of fact for the jury to resolve. *See Anderson*, 333 P.2d at 942; Richard P. Lewis et al. *Business Income Insurance Disputes* § 5.02[J] (2d ed. 2020); 10A Steven Plitt et al., *Couch on Ins.* § 167:18 (3d ed. 2021); *see also W. Am., Inc. v. Aetna Cas. & Sur. Co.*, 915 F.2d 1181, 1183 (8th Cir. 1990).

---

[11] FFIC argues "[c]leaning is neither repair nor replacement," but relies largely on cases decided on summary judgment after fact and expert discovery, and ignores the many toxic/hazardous/noxious substance cases that hold to the contrary.

[12] Neither "repaired" nor "replaced" is defined in the Policies; as evidenced by *Gregory Packaging*, neither requires physical alteration to property by its plain meaning. "Repair" means "*to restore to a sound or _healthy_ state.*" *Repair*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/repair.

F&S's understanding of the Policies is also consistent with the Business Interruption insuring agreement, which distinguishes factual issues from the coverage trigger. The coverage trigger is "direct physical loss or damage" to property. Factual issues surrounding the amount of the recovery are raised by the language that precedes the coverage trigger, including: (i) "actual" loss sustained; (ii) "necessary" extra expenses; and (iii) "during" the period of restoration. These factual issues are reached only after direct physical loss or damage caused by a covered cause of loss.

Thus, "Period of Restoration" is a time measuring device that creates factual issues over its end date (and whether and when "repair" was possible) incapable of resolution on a MJOP. *NeCo, Inc. v. Owners Ins. Co.*, 520 F. Supp. 3d 1175, 1184 (W.D. Mo. 2021) (holding "[d]iscovery will ultimately show" extent of policyholder's restoration efforts).

## D. FFIC Misrepresents F&S's Criticism of *Couch on Insurance*

FFIC argues *Couch on Insurance* remains a "respected" source, and that Couch's author did not repudiate his position as enunciated in the treatise (Opp., 42).

27

F&S never argued *Couch* was not a respected authority; rather, it highlighted the "*Couch* test" for physical loss or damage was flawed, as the authors failed to consider the overwhelming majority of decisions supporting the loss of use test—a fact FFIC fails to refute. (Opening Br., 41-42).

And, contrary to FFIC's contention, *Couch*'s lead author—Steven Plitt—*did acknowledge courts are trending away from the "physical alteration" test toward "loss of use"* and yet never corrected the *Couch* test's misstatement of law in the treatise:

> The modern trend signals that courts are not looking for physical alteration, but for loss of use. This is trend of where the law is going.

Steven Plitt, *Direct Physical Loss in All-Risk Policies: The Modern Trend Does Not Require Specific Physical Damage*, Alteration, Claims J. (Apr. 15, 2013), https://amp.claimsjournal.com/magazines/idea-exchange/2013/04/15/226666.htm.

## III. FFIC IGNORES THE "SLOWDOWN" COVERAGE

FFIC ignores the Policies' coverage for "slowdown" of operations. 2-ER-98. This is crucial, as the district court distinguished F&S's claim from other toxic/hazardous/noxious substance claims because

Coronavirus "does not cause the all-encompassing loss *Port Authority*[13] equated with physical damage"—that is, damage severe enough to render the property completely useless (i.e., a complete shutdown).  1-ER-10-11.  But F&S need not allege an "all-encompassing loss."  The Policies provide coverage for loss of business income sustained "due to the necessary Suspension of" operations, (2-ER-43), with "Suspension" defined as "the *slowdown* or cessation of [] operations, *or that a part or all of the described premises is rendered untenable* [sic]."  2-ER-98.

The district court's holding thus rendered the Policies' "slowdown" coverage meaningless, violating Washington's well-settled rule that all policy provisions be given effect.  *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 727 (Wash. 1994).  FFIC's failure to address this issue is telling, and reversal on this basis alone is appropriate.

---

[13] *Port Authority of New York and New Jersey v. Affiliate FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002).

## IV. GOVERNMENT ORDERS, ISSUED IN RECOGNITION OF CORONAVIRUS' PHYSICAL DAMAGE TO PROPERTY, DEPRIVED F&S OF PHYSICAL USE OF ITS PROPERTY

F&S alleges its losses were caused, in part, by government-imposed restrictions on F&S's use of its Hotel. 3-ER-313 ¶¶44-45; 3-ER-336-37 ¶¶118-119, 121.[14] While FFIC argues that "[m]ere economic harm or loss of use is insufficient" to trigger coverage (Opp., 16), that is not what occurred here.

Rather, as alleged, the government orders were issued in *recognition* of the dangers that Coronavirus poses to property. 3-ER-335-37 ¶¶117-19, 122. Indeed, Governor Inslee's March 16, 2020 order recognized Coronavirus was "affecting life, health, property or the public peace," and was thus issued to "help preserve and maintain life, health, property or the public peace[.]" 3-ER-336 ¶118 n.100.

The context in which government orders were issued, coupled with F&S's unique Communicable Disease Coverage, is what separates

---

[14] However, as noted in the Opening Brief, F&S closed its Hotel *before the issuance of the government orders* because of the damage caused by COVID-19. *Compare* 3-ER-313 ¶45, *with* 3-ER-336 ¶¶118-19. The district court failed to credit this allegation when it found "all that is required for Plaintiff to return to full working order is for the Governor to lift the decrees and restrictions." 1-ER-11.

F&S's claim from a mere "loss of use" claim. The government orders were not issued in a vacuum—they were issued in recognition of the damage and unsafe property conditions created by COVID-19—exactly what FFIC charged premiums to cover under the Policies at issue here. (Opening Br., 11-12; 32-36). Thus, F&S's losses in this regard were not caused by a mere "inability to use property," (Opp., 27)—they were caused by widespread property damage due to the presence of a communicable disease (i.e., a "covered cause of loss").

Recognizing this, courts have distinguished the mere "loss of use" caselaw relied on by FFIC. *Snoqualmie Entm't Auth. v. Affiliated FM Ins. Co.*, No. 21-2-03194-0 SEA, 2021 WL 4098938, at *5 (Wash. Super. Ct. Sept. 2, 2021) (distinguishing *Wolstein*, *Fujii*, and *Seattle Tunnel*, reasoning these cases "did not address the types of losses caused by the COVID-19 closure orders and Tribal resolutions in the context of the policy language at issue").

Furthermore, considering relevant dictionary definitions of the term "loss," F&S's proffered interpretation is, at minimum, reasonable. *Id.* at *5 (finding coverage triggered when policyholder is "deprived of the ability to physically use, operate, or manipulate its properties");

*Perry St. Brewing Co., LLC v. Mut. Of Enumclaw Ins. Co.*, No. 20-2-02212-32, 2020 WL 7258116, at *3 (Wash. Super. Ct. Nov. 23, 2020) (citing *Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012)).

*Nautilus* is also instructive here. There, the court rejected the insurer's argument—like FFIC's argument—that "direct physical loss or damage" requires the insured property to be "physically altered." *Id.* at *6. That *Nautilus* involved theft of insured property is irrelevant. The policyholder knew where its property was located and was trying to get it back. *Id.* at *2-3. There was no indication the property was permanently lost. *Id.* Thus, FFIC's contention that *Nautilus* involved "permanent" dispossession of property (Opp., 32) is simply inaccurate.

Accordingly, *Snoqualmie* and *Perry Street*'s holdings—government orders depriving a policyholder of the physical use of its property constitutes "physical loss"—are supported by Washington law. *See Neer v. Fireman's Ins.*, 692 P.2d 830, 832 (Wash. 1985) ("Washington has adopted as a definition of loss, loss of use or function"). At minimum, these divergent judicial interpretations of the term "loss" demonstrate the coverage language is ambiguous—requiring a finding of coverage.

*See, e.g.*, *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 698-99 (Wash. 2010).[15]

## V.  F&S STATES A CLAIM UNDER THE POLICIES' EXTENSIONS OF COVERAGE

With respect to its claims under the Policies' Extensions of Coverage, F&S relies on the allegations in its Complaint.

Contrary to FFIC's argument, the Civil Authority coverage does not require a "*complete* prohibition of access" (Opp., 43) to covered property.  *E.g.*, *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 514 F. Supp. 3d 1197, 1206-07 (C.D. Cal. 2021) (finding complete prohibition is not required).

FFIC's other contention, there was no "causal nexus" between the loss or damage caused by Coronavirus and government orders, is belied by the plain language of the government orders issued around the

---

[15] FFIC argues "*Hill & Stout* offers no help" to F&S because the court rejected coverage for government orders at the *summary judgment stage* (Opp., 30-31).  But this case is not at the summary judgment stage—it is at the pleading stage.  Also, the judge originally assigned to *Hill & Stout* found that government orders constituted physical loss.  *See Hill & Stout PLLC v. Mut. of Enumclaw Ins. Co.*, No. 20-2-07925 SEA, 2020 WL 6784271, at *3 (Wash. Super. Ct. Nov. 13, 2020).  If anything, the difference in opinions amongst these jurists demonstrates further ambiguity, favoring F&S.  *Am. Best Food*, 229 P.3d at 698-99.

country (and in Washington). *E.g.*, *id.* at 1206 (holding "the Orders were caused, at least in part, by these losses: 'This Order is given because, among other reasons, the COVID-19 virus . . . is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time'").[16]

## VI. THE MORTALITY AND DISEASE EXCLUSION DOES NOT APPLY

FFIC raises the Policies' M&D Exclusion—mislabeling it a "virus exclusion"—arguing the exclusion precludes coverage (Opp., 47-48). But FFIC fails to meet its heavy burden of showing the M&D Exclusion applies. *State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C.*, 174 P.3d 1175, 1178-79 (Wash. Ct. App. 2007).

First, the plain language of the M&D Exclusion provides it applies to losses associated with *death*: "Mortality, *death by* natural causes, disease, sickness, any condition of health, bacteria, or virus." 2-ER-44-45. Indeed, an average policyholder reading this exclusion would construe the excluded "losses" to be related to death arising from some

---

[16] For the same reasons, F&S sufficiently alleges Business Access coverage, which merely requires access to insured property be "*impaired* or obstructed." 2-ER-55. F&S's arguments regarding the Policies' Communicable Disease Coverage are set forth, *supra*.

illness contracted by an individual, and F&S has not alleged any loss based on a death at its Hotel.

Thus, contrary to FFIC's contention, the M&D Exclusion is not an all-encompassing "virus" exclusion (Opp., 47). FFIC could have easily drafted such an exclusion had it wanted to exclude losses caused by a virus. But it did not (instead, it affirmatively provided coverage for communicable disease). Indeed, when FFIC wanted to exclude something unequivocally in the Policies, it did so. *E.g.*, 2-ER-132 ("Fungus whether or not caused by or result from an accident.").[17]

Furthermore, if other losses due to virus besides "Mortality and Disease" were not otherwise covered, "then this provision would be unnecessary." *Nautilus*, 2012 WL 760940, at *7 (if theft was not a covered risk, policy would not have excluded theft by employees). Consequently, a reasonable interpretation is the Policies cover physical loss or damage due to virus, so long as the loss is not the mortality and disease of an individual. *Id.*

---

[17] Additionally, had FFIC wanted to exclude losses caused by virus, the 2006 Insurance Services Office's Virus Exclusion—titled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA"—was available to FFIC. FFIC's failure to adopt this Exclusion is telling.

Second, and more importantly, the M&D Exclusion cannot be enforced here because it would nullify the Policies' Communicable Disease Coverage. There is no language in the Policies that harmonizes the conflict between FFIC's post-loss reading of the M&D Exclusion and the actual text of the Communicable Disease Coverage (discussed, *supra*), which *explicitly* recognizes property can be "damaged or destroyed by the communicable disease." 2-ER-58-59. For instance, COVID-19 is unquestionably a "communicable disease" (and, thus, a covered cause of loss under the Policies); yet, the Communicable Disease Coverage does not contain any provision insulating it from the M&D Exclusion—which FFIC argues precludes F&S's losses. Nor does the M&D Exclusion contain any carve-out for the Communicable Disease Coverage—which is precisely where exceptions to exclusions must appear. *See* B. Ostrager et al., *Handbook on Ins. Coverage Disputes* § 1.01[b] (20th ed. 2020) (quoting *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004) ("An exception pertains only to the exclusion clause within which it appears")).

Thus, the M&D Exclusion is in direct conflict with the Communicable Disease Coverage, and this conflict must be construed in

favor of coverage. *Ross Stores, Inc. v. Zurich Am. Ins. Co.*, No. RG20-084158, 2021 WL 3700659, at *11 (Cal. Super. Ct. July 13, 2021) (holding "Contamination exclusion" ambiguous and did not bar coverage for Coronavirus-related losses, where policy had "Communicable Disease Response," "Decontamination Costs," and "Interruption by Communicable Disease," but Contamination Exclusion contained no carve-out for these coverages); *Kings Ridge Cmty.*, 98 So.3d at 79 (finding ambiguity where the exclusions "directly contradict and conflict with the coverage provided in the collapse coverage").

An overbroad exclusion that swallows affirmative coverages is simply unenforceable. *See Brighton Collectibles, LLC v. Certain Underwriters at Lloyd's London*, 798 F. App'x 144, 145-46 (9th Cir. 2020) (rejecting interpretation of exclusion that would render "the policies' express coverage . . . 'practically meaningless'").

## CONCLUSION

The judgment below should be vacated, the order dismissing

F&S's claims reversed, and this case remanded for further proceedings.

Date: December 29, 2021

/s/ Christopher S. Marks
Christopher S. Marks

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Joseph D. Jean, Esq.
Scott D. Greenspan, Esq.
Benjamin D. Tievsky, Esq.
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000

TANENBAUM KEALE, LLP
Christopher S. Marks, Esq.
Malika Johnson, Esq.
Alice C. Serko, Esq.
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
Telephone: (206) 889-5150

*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 21-35637

I am the attorney or self-represented party.

**This brief contains** 6,993 **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Christopher S. Marks*  **Date** December 29, 2021
                    Christopher S. Marks

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system:

Date: December 29, 2021

/s/ Christopher S. Marks
Christopher S. Marks

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Joseph D. Jean, Esq.
Scott D. Greenspan, Esq.
Benjamin D. Tievsky, Esq.
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000

TANENBAUM KEALE, LLP
Christopher S. Marks, Esq.
Malika Johnson, Esq.
Alice C. Serko, Esq.
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
Telephone: (206) 889-5150

*Attorneys for Plaintiff-Appellant*